IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BNSF RAILWAY COMPANY,
a Delaware Corporation,

        Plaintiff,

vs.                                                      No. CIV 06-1076 MCA/LFG

LAFARGE SOUTHWEST, INC., a New Mexico
Corporation and wholly owned subsidiary of
LAFARGE NORTH AMERICA, INC., a
Maryland Corporation, THE ESTATE OF
ROBERT J. VALENCIA and THE ESTATE
OF CAROL E. DURAN,

        Defendants.

and

STELLA R. VALENCIA, individually, and as
Personal Representative of the Estate of Robert J.
Valencia, JOHN KELLY VALENCIA, DESEREE
RICHELLE VALENCIA, STEPHANIE ESTELLE
VALENCIA, and LILLIAN S. VALENCIA,

        Counter-Claimants/Cross-Claimants,
        and Third-Party Plaintiffs,

vs.

BNSF RAILWAY COMPANY, a
Delaware Corporation and THE
ESTATE OF CAROL E. DURAN,

        Counter-Defendants/Cross-Defendants,

and

MIKE TAFT, d/b/a TAFT CONSTRUCTION, and EL PASO
CORPORATION, d/b/a EL PASO NATURAL GAS CO.,

        Third-Party Defendants.

1

and

LAFARGE SOUTHWEST, INC.

                Third-Party Plaintiff,

  vs.

EMPLOYERS MUTUAL CASUALTY COMPANY,
and HUB INTERNATIONAL SOUTHWEST
AGENCY LIMITED,

                Third-Party Defendants,

and

DARLENE COLEMAN, Personal Representative of
the Estate of Carol Duran,

                Cross-Defendant.

and

DARLENE COLEMAN, Individually and as Personal
Representative under the New Mexico Wrongful Death
Act of the ESTATE OF CAROL DURAN, deceased,
GREG GUTIERREZ and MATTHEW RAY DURAN,
Individually,

                Plaintiffs,

  vs.

BNSF RAILWAY COMPANY, LAFARGE SOUTHWEST,
INC., and JOHN DOE, Personal Representative of the
ESTATE OF ROBERT J. VALENCIA,

                Defendants.[1]

---

[1]The parties were asked to agree upon a caption that correctly identifies the parties and their positions and to use that same caption in all future filings. [Doc. 232, fn 1.]

## **MEMORANDUM OPINION AND ORDER**

### **Introduction**

THIS MATTER is before the Court on the Valencia Claimants' (Stella R. Valencia, John Kelly Valencia, Deseree Richelle Valencia, Stephanie Estelle Valencia and Lillian S. Valencia) Motion to Compel, filed April 3, 2008. [Doc. 199.] The motion is fully briefed. [Doc. Nos. 200, 213, 218, 230.][2] After careful consideration of the pleadings, attachments and pertinent law, the Court denies the motion, as described herein.

### **Background**

This is a case involving wrongful death and property damage claims arising out of a November 1, 2006 collision between a BNSF train and a dump truck loaded with gravel. The collision occurred at a rural railroad grade crossing near Rio Puerco, New Mexico. The dump truck driver, Carol E. Duran, an independent contractor for Lafarge Southwest, Inc. ("Lafarge"), and Robert J. Valencia, an employee of Lafarge, suffered fatal injuries in the collision. BNSF sued Lafarge and the Estates of Duran and Valencia contending their negligence and negligence *per se* caused property damage to BNSF. The personal representatives of Duran and Valencia, as well as certain family members, entered cross-claims and counter-claims for wrongful death and loss of consortium.[3] [Joint Status Report, pp. 2-3.]

---

[2] On May 8, 2008, the Court denied as moot BNSF's motion to strike the earlier filed certificate of completion related to this Motion to Compel. [Doc. 233.]

[3] This is only a partial summary of the parties and claims involved in this case.

## **Discovery Dispute**

The subject of this discovery dispute is an interrogatory served by the Valencia Claimants on BNSF Railway Company ("BNSF"). In the interrogatory, the Valencia Claimants attached three medical releases and asked BNSF to have its engineer, Marlin V. Ray ("Ray") sign the releases and return them to the Valencia Claimants, so that they could obtain Ray's medical records. [Doc. 199, Ex. A.] Ray was an engineer on the train at the time of the fatal collision.

BNSF objected to the interrogatory as improper. First, it stated that an interrogatory cannot be used to request production of documents, i.e., signed medical releases. Second, BNSF objected because Ray is not a party to this case. [*See* Doc. 71.] Third, BNSF objected on behalf of Ray stating that Ray's medical records with his medical providers were privileged, confidential and private. Further, BNSF argued that the medical releases were improper because they were unlimited in scope and time. BNSF also explained that it already produced Ray's entire BNSF medical file (comprised of about 100 pages spanning his career with the railroad). Thus, the Valencia Claimants have those records in their possession and have questioned Ray about the records during his deposition. Finally, BNSF objected on grounds of relevancy, arguing that the request does not meet the heightened relevancy standard for private non-party medical records and that any probative value of obtaining Ray's private medical records is outweighed by his privacy and confidentiality interests. [Doc. 199, Ex. A, p. 3.]

The parties attempted to resolve this discovery dispute before asking for intervention by the Court. For example, the Valencia Claimants agreed to limit the request for medical records to the "same time span" of medical records already produced by BNSF, i.e., from 1996 to November 30,

Case 1:06-cv-01076-MCA-LFG   Document 237   Filed 05/09/08   Page 5 of 12

2006. [Doc. 199, Ex. B.] The Valencia Claimants agreed to use the records only in reference to this case and to return them upon final resolution of the lawsuit.

The Valencia Claimants further explained that they only learned of some of the medications that were being taken by Mr. Ray when they deposed him on October 11, 2007. For example, they learned that Ray was taking: Vyotrin, Nexium, Avapro, Amboclipine and Atenol, all of which have side effects that might shed light on Ray's medical and psychological condition at the time of the collision. They assert that Ray's medical condition on the date in question is highly relevant as to what actions he and the train crew did or did not take prior to the accident.

The Valencia Claimants also found BNSF's objection baseless in view of the fact that BNSF had already produced some of the requested medical records from the same private physicians without redactions or objection. [*See* Doc. 39.] Moreover, the Valencia Claimants observed that BNSF had conducted extensive discovery concerning the past medical records and medical history of Valencia and Duran who were both killed in relation to the collision. [Doc. 200, p. 3.]

BNSF stood by its objections and answer to the interrogatory and added that a 10-year limitation was not acceptable. [Doc. 199, Ex. C.] In its opposition brief, BNSF argued that the Valencia Claimants sought "extraordinary relief" in requesting the Court to compel "a party to force a non-party's signature on medical record releases for use in litigation." [Doc. 213, p. 3.] Moreover, even if the Valencia Claimants had properly submitted the document request under Rule 34, rather than Rule 33 in the form of an interrogatory, there is no basis under Rule 34 to compel a non-party's signature.

In additional to the procedural flaws, BNSF further asserted that the private medical records of a non-party should be protected because they are confidential, personal records. Thus, they are

protected from disclosure by the rules of civil procedure, the physician-patient privilege, and HIPAA. [Doc. 213, pp. 5-9.]

## **Analysis**

### I.      **Procedure for Requesting Document From Non-Party**

BNSF is correct in that the Valencia Claimants' request for signed medical authorization forms typically is not made through a Rule 33 interrogatory. Interrogatories are written questions requiring written answers or objections, as opposed to production of documents. *See* Fed. R. Civ. P. 33. In contrast, Rule 34 authorizes requests for documents. Fed. R. Civ. P. 34(a). Thus, to the extent that the Valencia Claimants requested documents, the request should have been made in accordance with Rule 34 rather than Rule 33.

However, even if the Court were to consider the Valencia Claimants' request to have been brought under Rule 34, that rule authorizes documents requests that are made to parties to a lawsuit. Fed. R. Civ. P. 34. It is undisputed that Mr. Ray is not a party to this lawsuit.

Thus, the proper avenue of requesting medical records from Mr. Ray, a non-party, would have been through the use of a Rule 45 subpoena. A subpoena may be used to obtain documents from a non-party. Fed. R. Civ. P. 45(a); P.S. ex rel. Nelson v. The Farm, Inc., 2008 WL 185801 at *1 (D. Kan. Jan. 18, 2008).

> Rule 45 sets forth the appropriate procedure to compel a non-party to produce documents, which is to serve them a subpoena in accordance with Rule 45. "It is only after the individuals or entities object on grounds of privilege or otherwise fail to produce the documents pursuant to subpoena that the Court will consider a motion requesting (1) the Court compel the entity to produce the documents pursuant to Rule 45; or (2) compel the party to execute appropriate releases pursuant to the Court's general powers to enforce its own order."

Id. (internal citation omitted). Once served with a Rule 45 subpoena requesting the production of documents from a non-party, the responding person is authorized to submit written objections to the request. Fed. R. Civ. P. 45(c)(2)(B). In addition, on a timely-filed motion, the issuing court must quash or modify a subpoena if it requires disclosure of privileged or other protected matter "if no exception or waiver applies" or if the subpoena subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A)(iii and iv).

While the Valencia Claimants did not make a proper request for the medical releases from non-party Ray through a Rule 45 subpoena, the Court presumes that the Valencia Claimants may now proceed to do so. In order to expedite this matter and to reduce the need for additional lengthy motion practice, the Court will address BNSF's remaining substantive objections to the request.[4] Should the Valencia Claimants proceed by way of a Rule 45 subpoena, BNSF or Mr. Ray should consider the need for additional objections based on the Court's rulings set out below.

## II.     Physician-Patient Privilege

"Rule 501 of the Federal Rules of Evidence provides that state law supplies the rule of decision on privilege in diversity cases." Frontier Refining Inc. v. Gorman-Rupp Company, Inc., 136 F.3d 695, 699 (10th Cir. 1998). New Mexico Rule of Evidence set forth a general rule of privilege for confidential physician-patient communications. SCRA 11-504(B). An exception to the privilege exists where the communications are relevant to an issue of the physical, mental or emotional condition of the patient "in any proceeding in which the patient relies upon the condition as an element of the patient's claim or defense . . . ." SCRA 11-504(D)(3).

---

[4]The Court's rulings, however, do not obviate the need for the Valencia Claimants to proceed with a proper Rule 45 subpoena.

In this diversity case, BNSF filed claims alleging, in part, negligence on the part of the truck driver. According to the Valencia Claimants, BNSF "has done extensive discovery regarding the past medical records and medical history of Robert Valencia and Carol Duran (the dump truck driver) to determine what their medical condition(s) were on the date of this incident." [Doc. 200, p. 3.] The Valencia Defendants have asserted counter- and cross-claims of negligence on the part of other parties, e.g., BNSF and the train crew. Thus, there is no question that the medical condition of the train engineer or crew, who were in control of the train at the time of the collision, would be at issue and "reasonably calculated to lead to the discovery of admissible evidence." It follows that BNSF will rely on the engineer's condition as an element of its defense to counter- or cross claims of negligence brought by other parties. Accordingly, under 11-504(D)(3), there is no privilege as to doctor-patient communications relevant to Mr. Ray's physical, mental or emotional condition.

In addition, even if the physician-patient privilege prohibited production of the signed medical authorizations and Mr. Ray's medical records, the Court concludes that the privilege was waived by BNSF's earlier production of many pages of Mr. Ray's unredacted medical records. [*See, e.g.,* Doc. 200, Exs. 4, 5.] Moreover, Mr. Ray, without objection, answered multiple questions about his medical records, medical treatment, diagnoses, healthcare providers, medications and medical condition during his deposition. [Doc. 200, Ex. 2, pp. 18-29, 34-37.] Thus, the Court concludes that even if the requested authorization forms and related medical records were protected by a privilege,

that privilege was waived. The requested medical authorizations for Mr. Ray's medical records, would be subject to production under a properly served Rule 45 subpoena.[5]

### III.  Privacy, Confidentiality and Relevancy

BNSF argues that the records at issue also should be protected from disclosure because they are confidential, personal records. There is no question that an individual has privacy interests that may be protected with respect to confidential medical information. However, for the reasons stated *supra*, the Court finds that BNSF and Mr. Ray waived any objections as to concerns of privacy and confidentiality due to the prior production of medical records and extensive deposition testimony about medical records and treatment. *See* Anaya v. CBS Broadcasting, Inc., 2007 WL 2219394 at *6 (D.N.M. Apr. 30, 2007) (recognizing voluntary waiver of confidential communications in context of attorney-client privilege).

Even if the Court determined there were no waiver, the Court would still conclude that the medical authorization forms and related medical records, would be subject to production (if requested through a proper Rule 45 subpoena). Liberal discovery rules utilized in federal courts were designed to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958) (*citing* Hickman v. Taylor, 329 U.S. 495, 501 (1947)).

The Court also recognizes that discovery is not without limits. Koch v. Koch Indus., Inc., 203 F.3d 1202, 1238 (10th Cir.), *cert. denied,* 531 U.S. 926 (2000). The Court must properly

---

[5] Should the Valencia Claimants proceed by way of a proper Rule 45 subpoena, the request for medical records will be limited to a three-year period before the collision and will include a one-month period after the collision. Indeed, even the three years may be stretching the limits. Mr. Ray's medications at the time of the accident are certainly relevant. The medications he was taking years before that date hardly seem important.

balance a party's request for information with an opposing party's right of privacy and right to be free from unwarranted or intrusive inquiries into private matters. *See, e.g.,* Griswold v. Connecticut, 381 U.S. 479, 484 (1965). Specifically, the Court considers whether the discovery is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). In addition, the Court examines the "burden or expense of the proposed discovery" and whether it "outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). *See also* Burka v. U.S. Dep't of Health & Human Services, 87 F.3d 508, 517 (D.C. Cir. 1996).

Here, the Court finds that the discovery sought is not unreasonably cumulative or duplicative and that the Valencia Claimants cannot obtain the requested information without the signed authorization forms. Any burden to BNSF is outweighed by the likely benefit, considering the needs of this case and the claims and counterclaims. In other words, the Court determines that the medical records of Mr. Ray have equal potential relevance to the question of alleged negligence as compared with the medical records of Valencia and Duran which BNSF has requested and obtained.

A party is not allowed to assert a claim for damages, obtain the medical information it needs to support its claim and then seek to prevent the other side from obtaining similar medical information when that party asserts a similar counterclaim for damages. This would prevent the party of an opportunity to evaluate its claim for settlement, or alternatively, to be prepared to meet the proofs at trial.

Finally, the Court determines that the requested information (ultimately, Mr. Ray's medical records) has probative value to the claims and counterclaims in this case, as well as to the defenses asserted by the parties. This does not mean that the evidence will be admissible at trial. That determination is for the trial judge to make. This Court's determination simply means that the requested information, if sought through a proper Rule 45 subpoena, is discoverable. Thus, if BNSF asserts the same objections it set out in response to the Rule 33 interrogatory, they will be overruled.

## IV. HIPAA

BNSF also argues that HIPAA regulations preclude production of the signed authorization forms or medical records. "HIPAA regulations do not create a federal physician-patient privilege." *See* Cutting v. United States, 2008 WL 1775278 at *2 (D. Colo. Apr. 14, 2008) (federal question case) (*citing* Northwestern Memorial Hosp. v. Ashcroft, 362 F.3d 923, 926 (7th Cir. 2004)). In other words, HIPAA regulations do not trump the rules of civil procedure with respect to discovery obligations or questions of relevance. The Court already determined that no privilege applies under the circumstances of this case or that it was waived. Thus, the production of the authorization forms or medical records are governed by standards relating to "relevance and confidentiality commonly addressed in civil lawsuit." Id. The Court decided *supra* that the information sought is relevant and privacy or confidentiality interests will not protect the records from disclosure.

Moreover, similar to matters discussed by the court in Cutting, the confidentiality of Mr. Ray's medical records, may be addressed through an appropriate Protective Order.[6]   *See also*

---

[6] If the parties have not already done so, they should prepare and submit the Court an appropriate proposed Protective Order.

Thomas v. Hickman, 2007 WL 4302974 at *10 (E.D. Ca. Dec. 6, 2007) (rejecting position that HIPAA barred discovery; adequate protective order would permit discovery).

      IT IS THEREFORE ORDERED that the Valencia Claimant's motion to compel is denied, but that they may seek the same information through a Rule 45 subpoena.

                                            */s/ Lorenzo F. Garcia*
                                            Lorenzo F. Garcia
                                            Chief United States Magistrate Judge