**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

BNSF RAILWAY COMPANY,

    Plaintiff,                                        CIVIL NO. 06-1076 MCA/LFG

vs.

LAFARGE SOUTHWEST, INC.; STELLA
R. VALENCIA, Personal Representative of the
Estate of Robert J. Valencia; and GREGORY
MARTINEZ and DARLENE COLEMAN,
Personal Representatives of the Estate of
Carol E. Duran,

    Defendants.
========================================

STELLA R. VALENCIA, individually, and as
Personal Representative of the Estate of Robert J.
Valencia, JOHN KELLY VALENCIA, DESIREE
RICHELLE VALENCIA, STEPHANIE ESTELLE
VALENCIA, and LILLIAN S. VALENCIA,

    Counter Claimants/Cross-Claimants/
    Third-Party Plaintiffs,

vs.

BNSF RAILWAY COMPANY, and DARLENE
COLEMAN, Personal Representative of the
Estate of Carol E. Duran,

    Counter-Defendants/Cross-Defendants,

MIKE TAFT, d/b/a Taft Construction;
and EL PASO NATURAL GAS COMPANY

    Third-Party Defendants.
========================================

LAFARGE SOUTHWEST, INC.

    Third-Party Plaintiff/Cross-Plaintiff

vs.

DARLENE COLEMAN, individually, and as Personal Representative of the Estate of Carol E. Duran; GREG GUTIERREZ and MATTHEW RAY DURAN, individually,

    Plaintiffs,

vs.

BNSF RAILWAY COMPANY; LAFARGE SOUTHWEST, INC.; STELLA VALENCIA, Personal Representative of the Estate of Robert J. Valencia; MIKE TAFT, d/b/a Taft Construction; and EL PASO NATURAL GAS CO.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *The Valencia Parties' Motion for Summary Judgment for Dismissal of BNSF Railway Company's Complaint, for Lack of Jurisdiction* [Doc. 351], filed August 7, 2008; *The Duran Parties' Motion for Summary Judgment on Certain Claims for Property Damages by BNSF Railway Company* [Doc. 359], filed August 7, 2008; and *The Duran Parties' Motion to Strike the Deposition Testimony of David Renteria* [Doc. 370], also filed August 7, 2008. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court will deny *The Valencia Parties' Motion for Summary Judgment for Dismissal of BNSF*

2

*Railway Company's Complaint, for Lack of Jurisdiction*; grant in part and deny in part *The Duran Parties' Motion for Summary Judgment on Certain Claims for Property Damages by BNSF Railway Company*; and grant *The Duran Parties' Motion to Strike the Deposition Testimony of David Renteria*.

## I. BACKGROUND

This action arises from a fatal collision between a freight train operated by Plaintiff BNSF Railway Company and a dump truck that was being driven by decedent Carol Duran. On November 1, 2006, Ms. Duran, a contractor for Defendant Lafarge Southwest, Inc., was delivering gravel to a construction site adjacent to railroad tracks when, at the direction of her supervisor, Lafarge employee and decedent Robert Valencia, she stopped her truck on the tracks in order to speak with him. Both Ms. Duran and Mr. Valencia were killed as a result of the 8,000 foot-long, 13 million pound train having struck Ms. Duran's fully loaded truck.

Two days later, on November 3, 2006, BNSF filed a *Complaint for Property Damage* against the estates of Ms. Duran and Mr. Valencia and Lafarge Southwest, Inc., alleging that it sustained property damage in an amount in excess of $75,000 as a proximate result of the negligent acts and omissions of Ms. Duran and Mr. Valencia. [See generally Doc. 1]. On November 16, 2006, BNSF amended its complaint to add a cause of action for negligence per se and on January 22, 2007, filed its *Second Amended Complaint for Property Damage*. [Docs. 3, 13].

On February 5, 2007, the Valencia parties[1] filed a wrongful-death counterclaim against BNSF, alleging that as a proximate result of BNSF's actions, Mr. Valencia sustained damages in connection with the following:

> (1) reasonable expenses of necessary medical care and treatment;
> (2) pain and suffering experienced between the time of injury and death;
> (3) funeral expenses;
> (4) lost earnings and lost earning capacity and value of lost household services;
> (5) the value of life, apart from earning capacity;
> (6) aggravating circumstances attending the alleged wrongful act;
> (7) loss of enjoyment of life;
> (8) emotional distress to his wife, children, and mother;
> (9) loss of consortium with his wife, children, and mother; and
> (10) loss of guidance and counseling and close familiar relationship with his children.

[Doc. 15 at 11]. Mr. Valencia's widow seeks to recover damages based upon:

> (1) Mr. Valencia's pain and suffering;
> (2) loss of consortium shared between husband and wife;
> (3) loss of enjoyment of life shared with Mr. Valencia;
> (4) lost earnings and lost earning capacity and value of lost household services;
> (5) the value of life, apart from earning capacity;
> (6) aggravating circumstances attending the alleged wrongful act;
> (7) emotional distress; and
> (8) loss of enjoyment of life.

[Id.].

---

[1] This group of litigants includes the estate of Robert Valencia and individual relatives of Mr. Valencia and is referred to here as "the Valencia parties."

On February 26, 2007, the Duran parties[2] filed a wrongful-death counterclaim against BNSF, seeking recovery of the following non-exhaustive list of damages:

> (1) reasonable expenses of medical care and treatment;
> (2) lost earnings
> (3) pain and suffering;
> (4) loss of enjoyment of life;
> (5) value of life;
> (6) loss of consortium with children; and
> (7) punitive damages

[Doc. 21 at 13].

On August 7, 2008, the Valencia parties filed *The Valencia Parties' Motion for Summary Judgment for Dismissal of BNSF Railway Company's Complaint, for Lack of Jurisdiction* ("the Jurisdiction Motion") [Doc. 351], in which the Duran parties join. [See Doc. 371]. The Jurisdiction Motion incorporates by reference and adopts all arguments set forth in *The Duran Parties' Motion for Summary Judgment on Certain Claims for Property Damages by BNSF Railway Company* ("the Property Damage Motion") [Doc. 359].

In the Jurisdiction Motion, the Valencia parties argue that subject matter jurisdiction does not exist in this Court because "BNSF at the time of the filing of their initial Complaint and Initial Disclosures in this case had no evidentiary basis to allege an amount equal to $75,000, the minimum jurisdictional amount. . . ." [Doc. 351 at 6]. The Jurisdiction Motion is considered together with the Property Damage Motion because in the Property Damage Motion, the Duran parties argue that BNSF has failed to show with reasonable certainty the

---

[2] This group of litigants includes the estate of Carol Duran and individual relatives of Ms. Duran and is referred to here as "the Duran parties."

amount of damages it believes it has sustained in the following categories: labor-mechanical damages; loss-of-opportunity damages; store expense charges; labor-transportation damages; lease costs; and material costs. [See generally Doc. 359]. The Duran parties also assert that BNSF is unable to provide a sufficient explanation as to how it calculated its total damages amount of nearly $200,000.[3] In the Jurisdiction Motion, the Valencia parties maintain that "[t]aking away Loss of Opportunity, Labor Mechanical damages, Store Expense Charges, Labor Transportation Claims, Material Costs and Lease Costs brings the damage claim of BNSF below $75,000." [Doc. 351 at 7].

## II. ANALYSIS

### A. *The Valencia Parties' Motion for Summary Judgment for Dismissal of BNSF Railway Company's Complaint, for Lack of Jurisdiction* **[Doc. 351]**

"'Federal courts are courts of limited jurisdiction; they must have a statutory basis for their jurisdiction.'" Nicodemus v. Union Pacific Corp., 318 F.3d 1231, 1235 (10th Cir. 2003) (*quoting* Morris v. City of Hobart, 39 F.3d 1105, 1111 (10th Cir.1994)). In this case, BNSF contends that jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332, which provides, in pertinent part, that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States. . . ." 28 U.S.C. § 1332(a)(1).

---

[3] In the "Recap of All Charges" that is attached as an exhibit to the Duran parties' Property Damage Motion, BNSF assesses its total damages for the November 1, 2006 crossing accident as $198,906.13. [See Doc. 359; Exh. D].

The United States Supreme Court has explained that

> [t]he rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-289 (1938). The party invoking federal jurisdiction "bear[s] the burden of establishing that the requirements for the exercise of diversity jurisdiction are present." Martin v. Franklin Capital Corp., 251 F.3d 1284, 1290 (10th Cir. 2001).

Amount in controversy ordinarily is determined from the face of the complaint. See Martin, 251 F.3d at 1290; see also Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995). However, if the complaint fails to allege an amount in controversy in excess of the jurisdictional minimum, "a defendant's compulsory counterclaim may supply the jurisdictional amount for plaintiff's claim without either party being disadvantaged thereby." Geoffrey E. Macpherson, Ltd. v. Brinecell, Inc., 98 F.3d 1241, 1245 n.2 (10th Cir. 1996) (*citing* 14A CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3706, at 115-17 (1985)).

A compulsory counterclaim is defined as

> any claim that—at the time of its service—the pleader has against an opposing party if the claim . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and . . . does not require adding another party over whom the court cannot acquire jurisdiction.

Fed.R.Civ.P. 13(a).  Unlike a permissive counterclaim, which *may* be stated against an opponent, a compulsory counterclaim *must* be stated at the time specified by the Rule.  The reasoning behind the idea that the amount of a compulsory counterclaim may be considered for amount-in-controversy purposes was expressed by the Third Circuit, which has explained that

> [w]here the circumstances surrounding a plaintiff's claim require a defendant to assert a counterclaim under Rule 13(a), defendant's claim is part of the controversy set forth in the plaintiff's complaint. *The complaint initiates the legal action, but it is not the totality of the controversy. It is merely the portion of the controversy for which plaintiff seeks relief. However, the substance of the controversy extends to any compulsory counterclaim brought under Rule 13(a).*

Spectacor Mgt. Group v. Brown, 131 F.3d 120, 122 (3rd Cir. 1997) (emphasis added). Additionally, "if the jurisdictional amount requirement serves any salutary function it is to measure the substantiality of the claim. We believe that the substantiality of the claim can best be gauged by reference to what is actually at stake in the litigation rather than by strict reference to plaintiff's claim for relief."  Id. (*quoting* 1A JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, ¶ 0.167[8] (2d ed. 1991)).

In this case, after BNSF served its *Second Amended Complaint for Property Damage*, the Duran and the Valencia parties both filed counterclaims in which they maintain that BNSF is liable for the wrongful deaths of Carol Duran and Robert Valencia. [See Doc. 15 at 7-14; Doc. 21 at 5-11].  Additionally, the Duran parties assert a cross-claim against the Valencia estate on the basis of Robert Valencia's alleged negligence, and the Valencia parties

8

assert a cross-claim against the Duran estate, arguing that Carol Duran's negligence was the proximate cause of the victims' deaths. [Doc. 15 at 14-16; Doc. 21 at 11-12]. As the wrongful-death counterclaims arise out of the same occurrence that is the subject matter of the *Second Amended Complaint for Property Damage*,[4] they are compulsory and should be considered to form "the substance of the controversy" in this case. See Spectacor, 131 F.3d at 122. Among other categories of damages, both counterclaims assert the claiming parties' entitlement to (1) lost earnings and lost earning capacity; (2) damages reflecting "the value of life;" (3) funeral expenses; and (4) damages reflecting the aggravating circumstances of the occurrence here. [See Docs. 15, 21]. Thus, given the substance of the entire controversy here, the Valencia parties have not demonstrated to a legal certainty that the jurisdictional minimum has not been met. Accordingly, *The Valencia Parties' Motion for Summary Judgment for Dismissal of BNSF Railway Company's Complaint, for Lack of Jurisdiction* will be denied.

### B.   *The Duran Parties' Motion for Summary Judgment on Certain Claims for Property Damages by BNSF Railway Company* **[Doc. 359]**

Arguing that BNSF has failed to show a reasonable certainty and sufficient basis for certain claimed damages, the Duran parties have moved for summary judgment with respect to the following: labor-mechanical damages; loss-of-opportunity damages; labor-

---

[4] The Valencia parties do not appear to believe otherwise, as evidenced by the jurisdictional statement in their First Amended Counterclaim that their "counterclaims . . . are brought pursuant to 28 U.S.C. § 1367 as supplemental jurisdiction of this Court as the claims are so related to the claims in the Complaint that they form the same case or controversy under Article III of the United States Constitution." [Doc. 91 at 3-4].

transportation damages; store expense charges; lease costs; and material costs. [Doc. 359 at 12-15]. According to the Duran parties, BNSF's Rule 30(b)(6)[5] witness on damages, Mary Jo Struttman, testified to a number of new damages amounts and categories that were not included in BNSF's initial disclosures, without providing any material support or being able to explain how BNSF arrived at its calculations. [Id. at 12; see also Doc. 457 at 3-4 ("[T]he Duran parties are clearly entitled to a reasonable explanation of where BNSF's numbers/calculations are coming from and a sufficient evidentiary basis in order to determine the amount of damages BNSF has incurred.")].

"[D]amages that are based on conjecture, speculation, or guesswork are not recoverable." Brown v. Presbyterian Healthcare Servs., 101 F.3d 1324, 1330 (10th Cir. 1996). Instead, damages must have a sufficient evidentiary basis, though they need not be calculated with mathematical certainty. See Archuleta v. Jacquez, 704 P.2d 1130, 1134 (N.M.App. 1985). "The lack of certainty that will prevent a recovery is uncertainty as to the fact of damages, and not as to the amount." Wirth v. Commercial Res., Inc., 630 P.2d 292, 296 (N.M.App. 1981). Accordingly, "'[w]here it is made to appear that some loss has been suffered, it is proper to let the jury determine what the loss is from the best evidence the nature of the case admits.'" Rainbow Travel Serv., Inc. v. Hilton Hotels Corp., 896 F.2d 1233, 1239 (10th Cir. 1990) (*quoting* Hardesty v. Andro Corp.-Webster Div., 555 P.2d 1030

---

[5] Rule 30(b)(6) of the Federal Rules of Civil Procedure provides a method by which a litigant may take the deposition of a public or private corporation through a natural person who can speak for the corporation. See 8A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2103 (2d ed. 1995).

(Okla.1976)).

In the instant case, the Duran parties do not deny that BNSF sustained damages, or even necessarily that the claimed amounts represent the actual damages incurred. [See Doc. 457 at 4 ("The Duran Parties generally do not deny that these are the damages that BNSF claims to have incurred.")]. Rather, the Duran parties appear to argue that Ms. Struttman has calculated damages amounts significantly different from those presented in BNSF's initial disclosures, without sufficiently explaining how she calculated or reached her numbers. The Court is not persuaded by this argument (except with respect to BNSF's claimed store expense charges), however, since there appears to exist a measure of damages by which a jury may ultimately reach actual monetary figures. See Rainbow Travel Serv., Inc., 896 F.2d at 1239 (upon proof of loss, jury may determine extent of loss "from the best evidence the nature of the case admits"):

(1) **Labor-mechanical damages**:

Ms. Struttman multiplied the rate of pay for the laborers in question by hours worked. [See Doc. 423; Exh. 2, Struttman depo. at 48-53; Exh. 1A at 3 (listing, among other things, category of laborer, hours worked, and rate of pay)].

(2) **Loss-of-opportunity damages**:

Ms. Struttman testified that calculating loss-of-opportunity damages is a function of multiplying horsepower by out-of-service-hours by cost-per-horsepower hour. [Id.; Exh. 2,

Struttman depo. at 86-89; see also Exh. 1A at 34].

(3) **Store expense charge**:

Ms. Struttman was unable to testify as to what, exactly, is the basis for BNSF's 12% store expense charge. BNSF's counsel has described this charge as being "akin to the overhead or administrative costs that would have been charged by a third-party repair shop," [see Doc. 423 at 17], but Ms. Struttman could only explain it as "a standard that BNSF has developed over the years to account for the expense of storing and having available material to put on a locomotive." [Id.; Exh. 2, Struttman depo. at 151]. She testified to having "no knowledge" of the actual basis for the 12% figure, or from where that number comes. [Id., Exh. 2, Struttman depo. at 151].

(4) **Labor-transportation damages**:

These damages (*i.e.*, the cost of transporting the damaged locomotive to the repair shop) were calculated as set out in the "Recap of All Charges" that Ms. Struttman prepared and shows that to reach a figure of $5,045.25, BNSF multiplied the damaged locomotive's weight in tons (210) by miles to repair shop (775) by rate per ton mile ($0.031). [Id.; Exh. 1A at 22].

(5) **Lease costs**:

Ms. Struttman testified that BNSF leases its locomotives, and that its lease cost is a fixed expense BNSF pays "whether we're running our freight or not." [Id.; Exh. 2, Struttman depo. at 166]. The damaged locomotive was out of service for 41 days. To reach a lease-cost damages amount of $8671.50, BNSF multiplied 41 by $211.50 (the per-day lease cost). [Id.; Exh. 1E].

(6) **Material costs**:

The Duran parties are correct when they say that, when added together, the cost of materials set forth on BNSF's Parts and Materials sheet totals $14,771.10, not $15,330. 895, as claimed by BNSF(Exhibit E to Doc. 359). [Doc. 359 at 14 and Exh. E, "Parts and Materials"). The Duran parties do not, however, challenge the *fact* that BNSF has incurred materials charges. As the parties agree, BNSF is not required to calculate its damages with mathematical certainty. See Archuleta, 704 P.2d at 1134.

Once a party has established the fact of damages, it is proper to let the jury determine what the loss is from the best evidence the nature of the case admits. Transpower Constructors, a Div. of Harrison Intern. Corp. v. Grand River Dam Auth., 905 F.2d 1413, 1416 (10th Cir. 1990) (applying Oklahoma law). The evidence need not support a mathematically precise measure of damages; instead, a reasonable approximation of the loss

will suffice. Id. In this case, the fact—if not the precise amount—of BNSF's damages is apparent with respect to all of the above-described damages categories *except* the 12% store expense charge, for which Ms. Struttman had "no knowledge" as to that figure's basis or from where that number came. [See Doc. 423; Exh. 2, Struttman depo. at 151]. Accordingly, *The Duran Parties' Motion for Summary Judgment on Certain Claims for Property Damages by BNSF Railway Company* will be granted with respect to BNSF's claimed store expense charge only, and otherwise denied.

### C.     *The Duran Parties' Motion to Strike the Deposition Testimony of David Renteria* [Doc. 370]

In this motion, the Duran parties seek to strike the Rule 30(b)(6) deposition of BNSF employee, David Renteria, and prevent him from testifying at trial, on grounds that (1) Ms. Struttman was the only properly designated Rule 30(b)(6) witness; (2) Mr. Renteria is being offered merely to fill holes in the existing and binding damages testimony provided by Ms. Struttman; and (3) Mr. Renteria is in no position to offer such testimony. [See generally Doc. 370].

Rule 30(b)(6) provides, in pertinent part, that

> [i]n its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify . . . The persons designated must testify about information known or reasonably available to the organization.

Fed.R.Civ.P. 30(b)(6). Because in a Rule 30(b)(6) deposition there is no distinction between the corporation and its representative, the representative testifies on behalf of the corporation, presents the corporation's position on the topic or topics in question, and holds the corporation accountable. See E.E.O.C. v. Thorman & Wright Corp., 243 F.R.D. 421, 425 (D.Kan. 2007). Once a party designates, with reasonable particularity, the topics for examination, "[t]he corporation[] then must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable and *binding* answers on behalf of the corporation." Starlight Intern. Inc. v. Herlihy, 186 F.R.D. 626, 638 (D.Kan. 1999) (emphasis added). The representative is the voice of the corporation, and "[u]nless it can prove that the information was not known or was inaccessible, a corporation cannot later proffer new or different allegations that could have been made at the time of the 30(b)(6) deposition." Rainey v. Am. Forest and Paper Ass'n, Inc., 26 F.Supp.2d 82, 94 (D.D.C. 1998).

In this case, the Duran parties maintain that "Mr. Renteria [is] being offered to fill holes in the existing and binding corporate testimony already provided by BNSF through Mary Jo Struttman. . . ." [Doc. 370 at 4]. The Court agrees. On June 19, 2008, Ms. Struttman, as BNSF's corporate representative, and thus "the voice" of BNSF, see Rainey, 26 F.Supp.2d at 94, testified as to the damages BNSF allegedly sustained in the categories set forth in Section II.B. above (*i.e.*, labor-mechanical; loss-of-opportunity; store expenses; labor-transportation; lease costs; and material costs). Ms. Struttman calculated a grand total in the amount of $198,906.13. [Doc. 359; Exh. D, "Recap of all Charges"]. Thereafter, on

July 21, 2008, in response to a deposition notice merely resetting date and time, BNSF presented Mr. Renteria as a second Rule 30(b)(6) damages witness. [Doc. 370; Exh. E, Renteria depo. at 17]. As is relevant here, Mr. Renteria testified that he brought with him to the deposition

> a recap [of] charges, to give a grand total of the charges. And that includes the locomotives—the damage to the locomotives, the locomotive transportation to the shop, monthly minimum mileage for the locomotives, locomotive loss of use/opportunity. Locomotives lease cost and train/locomotive delay and related crew expenses. And the grand total of all those charges is $198,906.13.

[Id.; Exh. E, Renteria depo. at 18]. To the extent that Mr. Renteria's testimony repeats that of Ms. Struttman, it is cumulative and need not be allowed. See Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 244 F.3d 189, 193 (1st Cir. 2001) (district court was not plainly wrong to disallow, pursuant to Fed.R.Civ.P. 26(b)(2), witness testimony offered under Rule 30(b)(6) where the request for it was, among other things, "belated, duplicative and cumulative," and where the asking party "merely ha[d] 'hope' that the [requested] testimony . . . w[ould] contradict the testimony of the [corporate] representatives already deposed."). Additionally, BNSF candidly presents Mr. Renteria to testify as to damages-related matters "on which Ms. Struttman had no knowledge." [Doc. 405 at 2]. However, it was not Mary Jo Struttman as *the individual person*, Mary Jo Struttman, who testified on June 19, 2008; instead, it was Mary Jo Struttman as *the voice of BNSF* who was sworn to give "complete, knowledgeable and binding answers on behalf of the corporation." Starlight Intern. Inc., 186 F.R.D. at 638. BNSF's position on damages was heard through Mary Jo Struttman on June

16

19, 2008. BNSF may not now present David Renteria in an effort to supplement Ms. Struttman's testimony with what it apparently believes is Mr. Renteria's "helpful" testimony. See Shaffer v. ACS Gov't Servs., Inc., 454 F.Supp.2d 330, 338 (D.Md. 2006). Accordingly, *The Duran Parties' Motion to Strike the Deposition Testimony of David Renteria* will be granted.

### III. CONCLUSION

For the foregoing reasons, the Court will deny *The Valencia Parties' Motion for Summary Judgment for Dismissal of BNSF Railway Company's Complaint, for Lack of Jurisdiction*; grant in part and deny in part *The Duran Parties' Motion for Summary Judgment on Certain Claims for Property Damages by BNSF Railway Company*; and grant *The Duran Parties' Motion to Strike the Deposition Testimony of David Renteria*.

**IT IS, THEREFORE, ORDERED** that *The Valencia Parties' Motion for Summary Judgment for Dismissal of BNSF Railway Company's Complaint, for Lack of Jurisdiction* [Doc. 351] is **DENIED;**

**IT IS FURTHER ORDERED** that *The Duran Parties' Motion for Summary Judgment on Certain Claims for Property Damages by BNSF Railway Company* is **GRANTED IN PART and DENIED IN PART;**

**IT IS FURTHER ORDERED** that *The Duran Parties' Motion for Summary Judgment on Certain Claims for Property Damages by BNSF Railway Company* is **GRANTED** with respect to BNSF's claimed store expense charge only;

**IT IS FURTHER ORDERED** that *The Duran Parties' Motion for Summary Judgment on Certain Claims for Property Damages by BNSF Railway Company* is **DENIED** in all other respects;

**IT IS FURTHER ORDERED** that *The Duran Parties' Motion to Strike the Deposition Testimony of David Renteria* [Doc. 370] is **GRANTED**.

**SO ORDERED** this 3rd day of November, 2008, in Albuquerque, New Mexico.

_____
 **M. CHRISTINA ARMIJO**
 United States District Judge