# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

BNSF RAILWAY COMPANY,

       Plaintiff,                               CIVIL NO. 06-1076 MCA/LFG

vs.

LAFARGE SOUTHWEST, INC.; STELLA
R. VALENCIA, Personal Representative of the
Estate of Robert J. Valencia; and GREGORY
MARTINEZ and DARLENE COLEMAN,
Personal Representatives of the Estate of
Carol E. Duran,

       Defendants.
==========================================

STELLA R. VALENCIA, individually, and as
Personal Representative of the Estate of Robert J.
Valencia, JOHN KELLY VALENCIA, DESIREE
RICHELLE VALENCIA, STEPHANIE ESTELLE
VALENCIA, and LILLIAN S. VALENCIA,

       Counter Claimants/Cross-Claimants/
       Third-Party Plaintiffs,

vs.

BNSF RAILWAY COMPANY, and DARLENE
COLEMAN, Personal Representative of the
Estate of Carol E. Duran,

       Counter-Defendants/Cross-Defendants,

MIKE TAFT, d/b/a Taft Construction;
and EL PASO NATURAL GAS COMPANY

       Third-Party Defendants.
==========================================

LAFARGE SOUTHWEST, INC.

      Third-Party Plaintiff/Cross-Plaintiff

vs.

DARLENE COLEMAN, individually, and as Personal
Representative of the Estate of Carol E. Duran; GREG
GUTIERREZ and MATTHEW RAY DURAN, individually,

      Plaintiffs,

vs.

BNSF RAILWAY COMPANY; LAFARGE SOUTHWEST,
INC.; STELLA VALENCIA, Personal Representative of the
Estate of Robert J. Valencia; MIKE TAFT, d/b/a Taft
Construction; and EL PASO NATURAL GAS CO.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *The Duran Parties' Motion for Summary Judgment on the Negligence of Mike Taft d/b/a/ Taft Construction and El Paso Natural Gas Co.* [Doc. 361]; *EPNG's Motion for Summary Judgment on Negligence* [Doc. 373]; *EPNG's Motion for Summary Judgment on Punitive Damages* [Doc. 374]; and *EPNG's Motion for Summary Judgment on the Public Status of Laguna Tribal Road Route 548* [Doc. 375], all of which were filed August 7, 2008. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies the Duran parties' motion; grants El Paso Natural Gas' (EPNG) summary-judgment motion on negligence; denies as moot EPNG's summary-judgment motion on punitive damages; and

denies as moot EPNG's motion regarding the public status of Laguna Tribal Road Route 548.

## I. BACKGROUND

This action arises from a fatal collision between an eastbound freight train operated by Plaintiff BNSF Railway Company (BNSF) and a commercial dump truck that was being driven by decedent Carol Duran. At the time of the accident, Ms. Duran was an independent commercial truck driver under contract with Defendant/Third-Party Plaintiff Lafarge Southwest, Inc. (Lafarge). Lafarge is a supplier of construction materials, such as concrete, cement, gravel, and aggregate.

On November 1, 2006, Ms. Duran was delivering a load of gravel on behalf of Lafarge to a construction site owned by EPNG. EPNG had contracted with Taft Construction (Taft) to, among other things, install a Capstone cathodic protection station along one of EPNG's pipelines to prevent corrosion. To access the area where the station was being constructed, vehicles and people were required to cross of a set of railroad tracks. On November 1, 2006, Ms. Duran was crossing the tracks at milemarker 14. Milemarker 14 is approximately one-half mile from the location of the cathodic protection station. It is undisputed that, prior to November 1, 2006, deliveries were made by crossing at milemarker 9.

Decedent Robert Valencia was employed by Lafarge as a gravel salesman. On November 1, 2006, Mr. Valencia was stationed at the railroad tracks for the purpose of directing materials deliveries. Gerardo Ortiz is a commercial truck driver who was delivering a load of base course to the site in question on that day. As Mr. Ortiz approached,

3

Mr. Valencia signaled to him in a manner that caused Mr. Ortiz to believe he was being asked to stop his truck on the tracks.  For safety reasons, Mr. Ortiz did not stop on the tracks but, instead, crossed over before stopping.  According to Mr. Ortiz, he had no problem crossing the tracks.  Once across, Mr. Ortiz looked back and saw Ms. Duran approaching.

As Ms. Duran approached, Mr. Valencia signaled at her in the same manner as he had signaled at Mr. Ortiz.  Ms. Duran accordingly stopped on the crossing.  Mr. Valencia then came to Ms. Duran's driver-side window to speak with her.   For at least 43 seconds, Ms. Duran remained, in her truck, on the tracks.  Both Ms. Duran and Mr. Valencia were killed as a result of the BNSF train colliding with Ms. Duran's fully loaded truck.  It is undisputed that the crossing at which Ms. Duran and Mr. Valencia were struck is located on land that is within the Laguna Indian Reservation.

On November 3, 2006, BNSF filed a *Complaint for Property Damage* against the estates of Ms. Duran and Mr. Valencia (as well as Lafarge), alleging that it sustained property damage in an amount in excess of $75,000 as a proximate result of the negligent acts and omissions of Ms. Duran and Mr. Valencia. [See generally Doc. 1].  On November 16, 2006, BNSF amended its complaint to add a cause of action for negligence *per se* and on January 22, 2007, filed its *Second Amended Complaint for Property Damage*.  [Docs. 3, 13].

On November 1, 2007, the Valencia parties[1] filed their *First Amended Counterclaim and Cross Claim and Third Party Complaint*, alleging, *inter alia*, that EPNG and Taft[2]

> [were] negligent in their supervision of the construction site including, but not limited to failing to provide a safe place to work, instructing trucks to access the job site over the railroad tracks, failing to arrange a safe crossing for the trucks coming to [t]his job site, failing to provide safe parking and stopping areas for big trucks to safety [sic] cross without having to stop on or near the tracks, failing to arrange for safe crossing with the railroad, failure to have radio communication with trucks and signal them to insure no trucks would be on or near the crossing as a train approached, failing to provide a spotter and guard person to keep the tracks clear of danger and failing to coordinate with BNSF to provide safe crossing.

[Doc. 91 at 11].

On March 3, 2008, the Duran parties[3] filed their *First Amended Complaint for Wrongful Death*, in which they assert, among other things, that Taft and EPNG were negligent in failing to

> (1) implement safe entrance and exit procedures for deliveries to the construction site;
> (2) design and implement safe procedures for commercial traffic crossing railroad tracks to service the construction site;

---

[1]  This group of litigants includes the estate of Robert Valencia and individual relatives of Mr. Valencia and is referred to here as "the Valencia parties."

[2]  By *Order* entered October 3, 2008, all claims brought by the Duran and Valencia parties against Taft Construction were dismissed with prejudice as a result of the parties having "equitably resolved their differences by compromise. . . ." [Doc. 486 at 2].  That *Order* therefore moots all claims brought by the Duran and Valencia parties against Taft.  That *Order* does not, however, release, discharge, diminish or otherwise affect the Duran and Valencia Duran parties' claims against BNSF and EPNG.

[3]  This group of litigants includes the estate of Carol Duran and individual relatives of Ms. Duran and is referred to here as "the Duran parties."

(3) provide safe parking and stopping areas for delivery trucks and other commercial traffic;
(4) communicate with delivery trucks and commercial traffic;
(5) provide Carol Duran with adequate directions and instructions as to how to enter and exit the construction site;
(6) properly hire, train, and supervise their agents and employees;
(7) have a guard or spotter to keep a proper lookout for oncoming trains;
(8) ensure that tracks are clear of equipment and vehicles providing services to its construction site; and
(9) provide a safe workplace.

[Doc. 160 at 10-11].

EPNG now moves for summary judgment with respect to the Duran and Valencia parties' negligence claims, arguing that EPNG owed Carol Duran and Robert Valencia no duty of care because (1) it was not foreseeable that Ms. Duran would have voluntarily stopped her truck on the train tracks, and (2) there is no policy reason supporting the imposition of a duty.  EPNG also contends that its alleged failure "to instruct and direct [Mr.] Valencia and [Ms.] Duran[] on matters of common knowledge that they both already knew [did not] proximately cause the accident." [Doc. 373 at 4].

Conversely, the Duran parties seek entry of summary judgment in their favor, maintaining that, for various reasons set forth more fully below, "[n]o reasonable trier of fact could conclude that [EPNG was] *not* negligent." [Doc. 361 at 10 (emphasis added)].

## II. ANALYSIS

### A. Standard of Review: Fed.R.Civ.P. 56 and the Role of Summary Judgment in a Negligence Action

Summary judgment under Fed.R.Civ.P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed.R.Civ.P. 56(e).  Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."  Id.  Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

When, as here (at least with regard to the Duran parties' motion), the movant is also the party bearing the burden of persuasion with regard to the claim on which a summary judgment is sought, the movant must show that the record as a whole satisfies each essential element of its case and negates any affirmative defenses in such a way that no rational trier of fact could find for the non-moving party.  See  19 Solid Waste Dep't Mechanics v. City of Albuquerque, 156 F.3d 1068, 1071 (10th Cir.  1998); Newell v. Oxford Mgmt., Inc., 912 F.2d 793, 795 (5th Cir. 1990); United Missouri Bank of Kansas City, N.A. v. Gagel, 815 F.

Supp. 387, 391 (D.Kan. 1993).  The admissions in a party's answer to a complaint are binding for purposes of determining whether the movant has made such a showing.  <u>See</u> <u>Missouri Housing Dev. Comm'n v. Brice</u>, 919 F.2d 1306, 1314-15 (8th Cir. 1990). Similarly, the Court may consider any undisputed material facts set forth in the motion papers which are deemed admitted by operation of D.N.M. LR-Civ.56.1.  <u>See</u> <u>LaMure v.</u> <u>Mut. Life Ins. Co. of N.Y.</u>, 106 F.3d 413, 1997 WL 10961, at *1 (10th Cir. 1997) (unpublished disposition); <u>Smith v. E.N.M. Med. Ctr.</u>, 72 F.3d 138, 1995 WL 749712, at *4 (10th Cir. 1995) (unpublished disposition); <u>Waldridge v. Am. Hoechst Corp.</u>, 24 F.3d 918, 920-24 (7th Cir.1994) (approving use of local rule similar to D.N.M. LR-Civ. 56.1(b)).

Apart from these limitations, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment.  Rather, the Court assumes the admissible evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all admissible evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  <u>See</u> <u>Hunt v. Cromartie</u>, 526 U.S. 541, 551-52 (1999).

## B. The Elements of a Negligence Claim

"Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages." <u>Herrera</u> <u>v. Quality Pontiac</u>, 73 P.3d 181, 185-186 (N.M. 2003).  Thus, while the ultimate determination of a party's negligence generally is a question of fact for the jury, such a

8

determination is dependent upon the existence of a duty, which, in turn, is a question of law for the Court to decide.  Id.  Indeed, it is the Court's responsibility to "determine *as a matter of law* whether a particular defendant owes a duty to a particular plaintiff."  Calkins v. Cox Estates, 792 P.2d 36, 39 (N.M. 1990) (emphasis in original).

"Conduct that falls below a standard of care does not alone support liability." Johnstone v. City of Albuquerque, 145 P.3d 76, 80 (N.M.App. 2006).  Instead,

> [a] plaintiff must show that defendant's actions constituted a wrong against him, not merely that defendant acted beneath a required standard of care and that plaintiff was injured thereby. He must show that a relationship existed by which defendant was legally obliged to protect the interest of plaintiff. This concept limits liability for negligent conduct—a potential plaintiff must be reasonably foreseeable to the defendant because of defendant's actions.

Calkins, 792 P.2d at 39.  In other words, foreseeable plaintiffs are those within the "zone of danger" created by the defendant's conduct.  Id. at 38.

In addition to the *plaintiff* being foreseeable, the *injury* must also be foreseeable.  See Johnstone, 145 P.3d at 80.   "Foreseeable" injuries do not include "every injury that might possibly occur."  Van de Valde v. Volvo of Am. Corp., 744 P.2d 930, 932 (N.M.App. 1987). Instead, a foreseeable injury is an injury that "one might objectively and reasonably expect, 'not merely what might conceivably occur.'"  Johnstone, 145 P.3d at 80 (*quoting* Van de Valde, 744 P.2d at 932).  Stated differently—but familiarly—"[p]roof of negligence in the air, so to speak, will not do."  Palsgraf v. Long Island R. Co., 162 N.E. 99, 99 (N.Y. 1928).

Still, foreseeability in and of itself is not the sole determinant of duty, "since a person's duty to another is also tempered by policy considerations." Johnstone, 145 P.3d at 80. To be sure, "[i]n New Mexico, policy also determines duty." Blake v. Pub. Serv. Co. of New Mexico, 82 P.3d 960, 962 (N.M.App. 2003) (citing Torres v. State, 894 P.2d 386, 389 (1995)). Thus, "[d]etermining whether a duty exists in a particular case is a two-step procedure. First, [the Court] must consider foreseeability as to a particular plaintiff and a particular harm. If foreseeability exists, [the Court] then consider[s] public policy to determine whether imposing a duty is supported by law." Lessard v. Coronado Paint & Decorating Ctr., Inc., 168 P.3d 155, 166 (N.M.App. 2007); see also Calkins, 792 P.2d at 40 ("The determination of duty in any given situation involves an analysis of the relationship of the parties, the plaintiff's injured interests and the defendant's conduct; it is essentially a policy decision based on these factors that the plaintiff's interests are entitled to protection.").

"[I]t is the particular domain of the legislature, as the voice of the people, to make public policy." Torres, 894 P.2d at 389 (considering public policy, in the form of state statutes and case law, with respect to governmental liability for the acts and omissions of law enforcement officers). Importantly, policy "is not set by the personal predilections of individual judges[; i]t is based on community moral norms and policy views, tempered and enriched by experience, and subject to the requirements of maintaining a reliable, predictable, and consistent body of law. . . ." Sanchez v. San Juan Concrete Co., 943 P.2d 571, 574-575 (N.M.App. 1997). Legal precedent, in the form of both case law and statutory authority, provides "[t]he principal source for guidance in" determining whether sound policy

10

considerations support the imposition of a duty.  See id. at 575 (considering public policy,

in the form of state statutes and case law, to determine whether vehicle entrustor owed any

duty to intoxicated entrustee); see also Blake, 82 P.2d at 963.

### 1. Whether EPNG owed Carol Duran and Robert Valencia a duty of care

In its summary-judgment motion on negligence, EPNG argues, in pertinent part, that

it owed Ms. Duran and Mr. Valencia no duty of care because (1) it could not have foreseen

that a commercial truck driver such as Ms. Duran would have voluntarily stopped her truck

on railroad tracks; and (2) no policy reason supports imposing on EPNG a duty to have

instructed Ms. Duran and Mr. Valencia on matters that, as commercially licensed truck

drivers, they both were charged with knowing (i.e., that numerous statutes, regulations, and

driving standards prohibit the stopping or parking of vehicles on railroad tracks). [Doc. 373

at 4].  By contrast, it is the position of the Duran and Valencia parties that (1) Ms. Duran and

Mr. Valencia were foreseeable as plaintiffs; (2) injury as a result of crossing the railroad

tracks in order to reach the cathodic protection station construction site was foreseeable;

(3) EPNG owed a landowner's duty of care to Ms. Duran and Mr. Valencia as business

invitees; (4) EPNG undertook a duty to provide suitable access to the site by taking steps to

repair the road leading to the crossing at which the collision occurred; and (5) EPNG was

under a duty to inform BNSF that vehicles would be using the crossing to access the EPNG

construction site. [Doc. 361 at 8-10; Doc. 406 at 15-17, 21-24; Doc. 465 at 5-7].

### a. Duty: Foreseeability

It is undisputed that, in order to reach the site at which EPNG's cathodic protection station was being built, "persons and vehicles had to cross a set [of] railroad tracks." [Doc. 373 at 5; Doc. 406 at 5].  As a consequence, contend the Duran and Valencia parties,[4] the crossing at which Ms. Duran and Mr. Valencia were struck "was a necessary and essential part of the job site." [Doc. 406 at 5].[5]  The Duran and Valencia parties have directed the Court to no legal authority for this proposition; instead, they cite as support the deposition testimony of EPNG representative Thomas Hutchins.  However, Mr. Hutchins' testimony does not assist the Duran and Valencia parties on this point because Mr. Hutchins did not actually say (nor was he expressly asked whether) "crossing the railroad tracks was part of the construction project." [Id. at 13].  The cited excerpt of Mr. Hutchins' deposition testimony reads as follows:

> Q:    On this CPS project, El Paso Natural Gas employees and contractors needed to cross over a railroad track, in order to perform the work on the CPS project?
> A:    That's correct.
> Q:    Okay. And so crossing the railroad track *was related to*

---

[4]  The Valencia parties have joined and adopted the arguments set forth in *The Duran Parties' Response in Opposition to EPNG's Motion for Summary Judgment on Negligence*. [See Doc. 422].

[5]  See also Doc. 406 at 6 (disputing that the *railroad tracks* were not part of the job site because "[a]ccessing the job site . . . required crossing the tracks.  Thus, it was . . . a necessary and essential part of the job site."); id. at 7 (disputing that the *crossing* was not part of the job site because "[a]ccessing the job site . . . required crossing the tracks. . . . Thus, it was . . . a necessary and essential part of the job site."); id. at 13 ("[C]rossing the railroad tracks was part of the construction project."); Doc. 465 at 6 (because "the only way to access [the] construction project was to cross over an active railroad track . . . the railroad tracks were part of the construction project.").

the project?

A:      That's correct.

[Doc. 406; Exh. J, Hutchins depo. at 112 (emphasis added)].

That the location of the collision may not have been a part of EPNG's job site, however, does not necessarily relieve EPNG of responsibility as a landowner, since "'the location of the accident is not relevant to the question of duty.'" Bober v. New Mexico State Fair, 808 P.2d 614, 619 (N.M. 1991) (quoting Calkins, 792 P.2d at 43 ("In determining whether [the alleged tortfeasor] acted reasonably or breached [its] duty, it may be relevant to the jury that the injury occurred off the premises. However, the location of the accident is not relevant to the question of duty.")).  To be sure, "'[h]arm that is caused, in whole or in part, by an activity or condition on particular premises cannot be viewed as unforeseeable as a matter of law merely because it happens to manifest itself beyond the property line.'" Id. (quoting Udy v. Calvary Corp., 780 P.2d 1055, 1059-60 (Ariz.App.1989)).  In this case, EPNG ordered from Lafarge the gravel that Ms. Duran was delivering on November 1, 2006, and also understood that to access its cathodic protection station construction site it was necessary to cross a set of railroad tracks.  Accordingly, the Court cannot say as a matter of law that EPNG could not have foreseen that Lafarge employees (such as Mr. Valencia) and those working on behalf of Lafarge (such as Ms. Duran) would be working on or around the railroad crossing.[6]

_____

[6] EPNG argues that, because all previous deliveries had been made by crossing at milemarker 9, EPNG could not have foreseen that Ms. Duran would subsequently have attempted to cross at milemarker 14.  Notwithstanding the precise location of the crossing, the Court, again, cannot say as a matter of law that EPNG could not have foreseen that workers

Still, both plaintiff *and* injury must be foreseeable, and this Court can find nothing in the record to suggest that EPNG should have foreseen that injury was likely to result from crossing the railroad tracks at milemarker 14.  See Johnstone, 145 P.3d at 80 (describing a "foreseeable" injury as an injury that one might objectively and reasonably expect, not merely what might conceivably occur.).  Although the Duran parties cite the deposition testimony of EPNG representative James Hughes in support of their position that "[t]he road condition at the crossing was not well maintained[,] requiring trucks to traverse the tracks slowly[,]"[7] Mr. Hutchins did not say this. [See Doc. 406 at 10; id.; Exh. A at 24; see also Doc. 361 at 4].  Instead, the cited and relied-upon portion of Mr. Hutchins testimony reads as follows:

> Q:    Describe what you discussed with Rick Baird about this project.
>
> A:    We discussed the maintenance of the El Paso right-of-way road so we could get Taft's equipment into the area.  And Taft agreed to order the rock, gravel, fill dirt, all the necessary materials for the project.
> And then, of course, setting the actual—the actual setting of the generator itself.  And that was pretty much Taft's scope of work.
>
> Q:    What role did El Paso Natural Gas Company have in this job?
>
> A:    Our alliance contractors are expected to uphold all of El Paso's safety policies, work policies, and code of conduct on our pipeline and our plant facilities.

[Doc. 406; Exh. A, Hughes depo. at 24].  Additionally, Gerardo Ortiz testified that he crossed

---

making deliveries for and to it would be traversing the tracks in question.

[7]  Ms. Duran did not just cross the tracks slowly—she stopped on them.

14

the tracks on November 1, 2006 just ahead of Ms. Duran, and that he had no problem in doing so. [Doc. 373; Exh. G, Ortiz depo. at 44]. The Duran parties have not demonstrated that the crossing was not well-maintained such that "[t]he road condition at the crossing" caused Ms. Duran to have to stop on the tracks.

Instead, Ms. Duran stopped her truck on the tracks in response to signaling from Mr. Valencia, which Mr. Ortiz, who had proceeded over the tracks just ahead, testified he understood as a request to stop. [See Doc. 373 at 6, ¶ 19; Doc. 406 at 8, ¶ 19]. While it is reasonably foreseeable that a vehicle parked or stopped on railroad tracks will eventually be struck by an oncoming train, see Grimes v. Norfolk Southern Ry. Co., 116 F.Supp.2d 995, 1007 (N.D.Ind. 2000), it is not reasonably foreseeable that a driver will park or stop her vehicle on those tracks if conditions do not force her to stop there, see Abdo v. Trek Transp. Co., Inc., 582 N.E.2d 247, 252 (Ill.App. 1991) ("property owners have the right to expect that drivers will not violate their statutory duties");[8] see also Lujan v. Reed, 434 P.2d 378, 383 (N.M. 1967) ("The general rule of law is that a person who is placed in a position of peril is required to use all diligence to extricate himself therefrom. . . ."). Indeed, other courts have held that, where a condition of land poses no danger absent the independent, negligent act of another, injury is not a reasonably foreseeable result of that condition. Ziemba v. Mierzwa, 566 N.E.2d 1365, 1369 (Ill. 1991). Thus, while Ms. Duran and Mr. Valencia may have been reasonably foreseeable to EPNG as plaintiffs, the Court cannot say that, under the

---

[8] As explained more fully below, traffic laws in New Mexico expressly provide that "[a] person shall not . . . drive onto the railroad-highway grade crossing *and stop*. . . ." N.M. STAT. ANN. § 66-7-341(B)(2) (emphasis added).

circumstances, the resulting injuries were reasonably foreseeable as well.

## b. Duty: Policy Considerations

Even if EPNG should reasonably have foreseen injury to Ms. Duran and Mr. Valencia, determining the existence of a duty of care requires the Court to consider both foreseeability *and* whether public policy supports the imposition of a duty.  See  Lessard, 168 P.3d at 166. And, as previously explained, policy is "determined with reference to legal precedent, statutes, and other principles comprising the law."  Calkins, 792 P.2d at 39; see also W.P. KEETON, D.B. DOBBS, R.E. KEETON & D.G. OWEN, PROSSER AND KEETON ON THE LAW OF TORTS § 37 at 236 (5th ed. 1984) ("[W]hether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant . . .  is entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the [C]ourt.").  Thus, this Court now turns to existing legal precedent to determine whether policy considerations support the imposition of a duty upon EPNG under the circumstances present here.  See Sanchez, 943 P.2d at 575 ("The principal source for guidance in [determining policy and, thus, duty] is legal precedent.").

It is undisputed that, on the day of the accident in question, "[Carol] Duran stopped on the tracks, apparently on instructions from [Robert] Valencia. . . ." [Doc. 373 at 6, ¶ 19; Doc. 406 at 8, ¶ 19; Doc. 422 at 3, ¶ 8; see also Doc. 91 at 4, ¶ 14 ("Carol Duran stopped her 1989 Freightliner on the dirt road on the railroad track at the crossing."); Doc. 160 at 5, ¶ 21 ("As Carol Duran approached the crossing, Robert Valencia directed her to stop.")].

16

However, traffic laws in New Mexico expressly provide that "[a] person shall not . . . drive onto the railroad-highway grade crossing *and stop*. . . ." N.M. STAT. ANN. § 66-7-341(B)(2) (emphasis added).[9]  Moreover, it is undisputed that the crossing at issue is located on land within the Laguna Indian Reservation. [See Doc. 375 at 3 ("The railroad crossing where the November 1, 2006 collision took place is on land within the Laguna Indian Reservation.")]. The Pueblo of Laguna Traffic Code similarly provides, in pertinent part, that "[n]o person shall stop, stand or park a vehicle . . . [w]ithin fifty (50) feet of the nearest rail or railroad crossing. . . ." [Doc. 363; Att. B to Exh. 10 (Gilbert Platero depo.)].[10]  Finally, federal regulations applicable to the driving of commercial motor vehicles over railroad tracks state that the driver of such a vehicle, after stopping, looking, and listening for approaching trains, "may drive the commercial motor vehicle across the tracks in a gear that permits the commercial motor vehicle to *complete the crossing* without a change of gears."  49 C.F.R. § 392.10(a).[11, 12] Accordingly, tribal, state, and federal regulations specific to the vehicular

---

[9]  Had Ms. Duran not been killed in the accident, she could have been assessed a $10.00 penalty for having committed a railroad-highway grade crossing violation, a misdemeanor offense.  See  N.M. STAT. ANN. § 66-8-116(B) (listing a violation of § 66-7-341 as a $10.00 "penalty assessment misdemeanor," but providing that "[t]he term 'penalty assessment misdemeanor' does not include a violation that has caused or contributed to the cause of an accident resulting in injury or death to a person.").

[10]  Gilbert Platero's testimony is the subject of a motion to strike, [see Doc. 369], which the Court will consider in a separate *Order*.

[11]  Part 392 has been adopted by the New Mexico Department of Public Safety.  See NMAC 18.2.3.12.

[12]  Likewise, the "Railroad Crossings" section of the *New Mexico Commercial Driver License Manual* cautions: "Never permit traffic conditions to trap you in a position where you have to stop on the tracks." [Doc. 373; Exh. H at 2-39, ¶ 2.12].

crossing of railroad tracks clearly place on the driver at least some obligation to ensure he can accomplish a safe crossing.

Additionally, it is undisputed that both Ms. Duran and Mr. Valencia held commercial drivers' licenses. In New Mexico, it is assumed that drivers will obey the law. See NMRA, Civ. UJI 13-1206.[13] The law provides that "[a] person shall not . . . drive onto the railroad-highway grade crossing *and stop*. . . ." N.M. STAT. ANN. § 66-7-341(B)(2) (emphasis added). To do so amounts to a misdemeanor offense. See N.M. STAT. ANN. § 66-8-116. But on November 1, 2006, Ms. Duran stopped her trucks on the tracks, apparently at the instruction of Mr. Valencia. [See Doc. 373 at 6, ¶ 19; Doc. 406 at 8, ¶ 19]. Notwithstanding the Duran parties' assertion that "[t]he road condition at the crossing was not well maintained[,] requiring trucks to traverse the tracks slowly[,]" there is no evidence in the record that Ms. Duran was forced by a condition of the crossing to stop on the tracks. There is, for example, no allegation or suggestion that Ms. Duran had reached the tracks only to realize *then* that conditions prevented her from completing her crossing. Again, Gerardo Ortiz, who crossed the tracks just ahead of Ms. Duran, testified that he had no problem crossing the tracks and that the reason he disregarded Mr. Valencia's direction to stop on them is that "you're not supposed to stop there." [Doc. 373; Exh. G, Ortiz depo. at 62].

---

[13] Instruction 13-1206 provides that "[a] driver has the right to assume that other *drivers will obey the law* unless the driver sees, or by the exercise of ordinary care should have seen, that the driver of the other vehicle will not obey the law or is unable to avoid a collision." NMRA, Civ. UJI 13-1206 (emphasis added).

18

Persuasive authority cautions against imposing a duty of care upon a landowner where the allegedly dangerous condition poses no risk absent the independent negligent act of a motor vehicle driver violating his own standard of care.  Ziemba v. Mierzwa, 566 N.E.2d 1365, 1369 (Ill. 1991).  The reason is that, in such cases, the landowner, whose land is not shown to be in and of itself dangerous, is not in the best position to prevent injury—the driver is in the best position to prevent injury.  Id.; see also Largosa v. Ford Motor Co., 708 N.E.2d 1219, 1223 (Ill.App. 1999) (no duty owed to passing motorists who, though they did not set foot on defendant's property, had become distracted as a result of watching defendant's bungee-jumping operation from highway adjacent to defendant's business, as "motorists . . . were in the best position to avoid accidents by operating their vehicles with care.").  Thus, as in Ziemba (and Largosa), "the usual justification for imposing landowner liability is not present in this case." Ziemba, 566 N.E.2d at 1223.

### c. Duty: Voluntary Undertaking

The Duran parties have not pled a breach-of-contract claim. [See generally Doc. 160]. However, in their instant summary-judgment motion they assert that "EPNG was under contract to provide Lafarge drivers' [sic] with 'suitable approaches to point of delivery." [Doc. 361 at 4].  The Duran parties further contend that EPNG and Taft jointly agreed to improve the dirt road leading to the crossing at which Ms. Duran and Mr. Valencia were struck and "[i]n fact . . . spread road base around the railroad crossing prior to Taft beginning work on the project." [Id.].  It is the position of the Duran parties that "[t]he undisputed facts establish that EPNG assumed the responsibility to provide Lafarge drivers with suitable and

safe access to its job site. It affirmatively represented that it would improve the road to a

point that it would be safe and passable for Lafarge deliveries." [Doc. 465 at 7].  Finally, the

Duran parties maintain that "[a]ccording to David Fortis from BNSF, the railroad should

have been notified of EPNG's use of the crossing especially since it was being used for

heavy equipment. Had the railroad been notified, safety precautions, including flagging,

would have been required or provided." [Doc. 361 at 5-6].

"Under the assumed duty doctrine, a party may assume duties of care by voluntarily

undertaking to render a service[, and w]hen a party assumes duties, that party is liable for

physical harm resulting from the failure to exercise reasonable care.  Wark v. United States,

269 F.3d 1185, 1189 (10th Cir. 2001) (internal quotations omitted).  However,

> [f]or the doctrine to apply, the plaintiff must show that the
> defendant: (1) through its affirmative acts or through a promise
> to act, undertook to render a service that was reasonably
> calculated to prevent the type of harm that befell the plaintiff;
> and either (2) that the plaintiff relied on the defendant to
> perform the service; or (3) that defendant's undertaking
> increased plaintiff's risk.

Id.

In this case, any claim that EPNG assumed the responsibility of repairing the road or

the area leading to the crossing in question must fail, since the undisputed facts demonstrate

that the road that EPNG undertook to repair was not the road leading to the railroad crossing

but, instead, its own right-of-way access road, which was located approximately 100 yards

west of the railroad tracks.  Both James Hughes (EPNG's representative) and Marcus

Ordonez (an employee of Lafarge) so testified. [See Doc. 424; Exh. E, Hughes depo. at 63

and Exh. G, Ordonez depo. at 21-22].[14, 15]  Taft representative Rick Baird similarly testified

that Taft "did no work on the railroad crossing." [Id.; Exh. D, Baird depo. at 25; see also id.;

Exh. C "Taft's Amended Answers to Valencia Interrogatories" at 5 ("Taft . . . did not repair,

maintain, or do any other kind of work to the crossing in question.  Taft . . . employee

Richard Baird helped [EPNG] employees spread road base on the [EPNG] easement. . . .")].

Finally, the Duran parties have presented no evidence tending to show that EPNG was

under a duty—or later assumed a duty—to "notif[y BNSF] of the activity at their crossing

[such that BNSF could] have insisted upon a flagman at the crossing." [Doc. 361 at 3].

When David Fortis was questioned on the topic, he testified that the railroad would have

liked to have received notice *from Lafarge* that *Lafarge employees* were going to be working

in the area of the crossing. [Doc. 361; Exh. 6, Fortis depo. at 98-99].  It is for these reasons

---

[14]  When questioned, Mr. Hughes testified, "I helped spread base on El Paso right-of-way road, not at the railroad crossing itself . . . that would be west of the railroad crossing on El Paso right of way.  On El Paso easement, we should say." [Doc. 424; Exh. E, Hughes depo. at 63].

[15]  Mr. Ordonez testified:

Q:      Where was the work that needed to be done on the road in relation to the construction site?
A:      The actual portion was from about 100 yards west pf the tracks, on.  There was some brush there that we had to go through and the road was very uneven.  And there were some—yeah, it was just mainly uneven.  It was mainly like a wash area where water would wash out on flooding.  The road had actually been washed out, I guess, from a flood or something.
Q:      And this, you said, was 100 yards west of the tracks?
A:      Yeah, about 100 yards, I would say.
Q:      Was it on the other side of the gate that is just west of the tracks?
A:      Yes.

[Doc. 424; Exh. G, Ordonez depo. at 21-22].

that the Court concludes that EPNG did not assume a duty to make safe the road leading to the crossing, nor was it obligated to notify BNSF of its work in the area.

## III. CONCLUSION

On the basis of the foregoing, the Court concludes that EPNG owed Ms. Duran and Mr. Valencia no duty of care.  Accordingly, EPNG's motion for summary judgment will be granted.  The Duran parties' motion for summary judgment with respect to the issue of EPNG's negligence will be denied, and EPNG's summary-judgment motions on the issues of (1) punitive damages, and (2) the public status of Laguna Tribal Road Route 548 will be denied as moot.

**IT IS, THEREFORE, ORDERED** that *The Duran Parties' Motion for Summary Judgment on the Negligence of Mike Taft d/b/a/ Taft Construction and El Paso Natural Gas Co.* [Doc. 361] is **DENIED**;

**IT IS FURTHER ORDERED** that *EPNG's Motion for Summary Judgment on Negligence* [Doc. 373] is **GRANTED**;

**IT IS FURTHER ORDERED** that *EPNG's Motion for Summary Judgment on Punitive Damages* [Doc. 374] is **DENIED as MOOT**;

**IT IS FURTHER ORDERED** that *EPNG's Motion for Summary Judgment on the Public Status of Laguna Tribal Road Route 548* [Doc. 375] is **DENIED as MOOT**.

**SO ORDERED** this 12th day of December, 2008, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge

23