# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

BNSF RAILWAY COMPANY,

    Plaintiff,                                       CIVIL NO. 06-1076 MCA/LFG

vs.

LAFARGE SOUTHWEST, INC.; STELLA
R. VALENCIA, Personal Representative of the
Estate of Robert J. Valencia; and GREGORY
MARTINEZ and DARLENE COLEMAN,
Personal Representatives of the Estate of
Carol E. Duran,

    Defendants.

========================================

STELLA R. VALENCIA, individually, and as
Personal Representative of the Estate of Robert J.
Valencia, JOHN KELLY VALENCIA, DESIREE
RICHELLE VALENCIA, STEPHANIE ESTELLE
VALENCIA, and LILLIAN S. VALENCIA,

    Counter Claimants/Cross-Claimants/
    Third-Party Plaintiffs,

vs.

BNSF RAILWAY COMPANY, and DARLENE
COLEMAN, Personal Representative of the
Estate of Carol E. Duran,

    Counter-Defendants/Cross-Defendants,

MIKE TAFT, d/b/a Taft Construction;
and EL PASO NATURAL GAS COMPANY

    Third-Party Defendants.

========================================

LAFARGE SOUTHWEST, INC.

    Third-Party Plaintiff/Cross-Plaintiff

vs.

DARLENE COLEMAN, individually, and as Personal
Representative of the Estate of Carol E. Duran; GREG
GUTIERREZ and MATTHEW RAY DURAN, individually,

    Plaintiffs,

vs.

BNSF RAILWAY COMPANY; LAFARGE SOUTHWEST,
INC.; STELLA VALENCIA, Personal Representative of the
Estate of Robert J. Valencia; MIKE TAFT, d/b/a Taft
Construction; and EL PASO NATURAL GAS CO.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on (1) *BNSF Railway Company's Sixth Motion for Partial Summary Judgment, Dismissing Certain Claims for Damages* [Doc. 358] and (2) *BNSF Railway Company's Seventh Motion for Partial Summary Judgment, to Dismiss Hedonic Damages Claims Brought Against BNSF Under the Common Carrier Wrongful Death Act* [Doc. 354], both of which were filed August 7, 2008.  Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants in part and otherwise defers its ruling as to *BNSF Railway Company's Sixth Motion* and denies *BNSF Railway Company's Seventh Motion*.

2

**I. BACKGROUND**

This action arises from a fatal collision between an eastbound freight train operated by Plaintiff BNSF Railway Company (through its engineer, Marlin Ray, and its conductor, Brian Owens) and a commercial dump truck that was being driven by decedent Carol Duran. On November 1, 2006, Ms. Duran, a contractor for Defendant/Third-Party Plaintiff Lafarge Southwest, Inc., was delivering gravel to a construction site adjacent to railroad tracks when, at the apparent direction of her supervisor, Lafarge employee and decedent Robert Valencia, she stopped her truck on a crossing on the tracks in order to speak with him. Both Ms. Duran and Mr. Valencia were killed as a result of the train colliding with Ms. Duran's fully loaded truck. The accident occurred at approximately 7:30 a.m., in sunny conditions. Despite the shining sun, Conductor Owens was wearing the clear-lens safety glasses that BNSF had provided him; he was not, at the time of the accident, wearing tinted sunglasses.

Eastbound trains, such as the one involved in this accident, negotiate a series of curves in the final miles leading to the crossing at which Ms. Duran and Mr. Valencia were struck. The last of these curves is a left-hand curve approximately 4,000 feet west of the crossing. There is an escarpment at this final curve, but once the escarpment is passed and the final curve negotiated, the stretch of track between this point (4,000 feet west of the crossing) and the actual crossing is straight, and the view between the two points unobstructed. A whistle board (a sign with a black "W" to alert the train crew to activate the whistle) sits 1,320 (one-quarter of a mile) west of the crossing.

It is undisputed that the crew in this matter sounded the train's horn when the train, which was traveling at a speed of approximately 64 to 65 miles per hour, was 1,445 feet west of the crossing, and again when it was 687 feet west of the crossing. At 1,445 feet away from the crossing, the horn was sounded for 4/10 of a second; at 687 feet away, the horn was sounded for one second. It also is undisputed that the crew engaged the train's emergency brakes when the train was 496 feet (the equivalent of five or six seconds) away from the crossing. Finally, it is undisputed that the stopping distance for this train from the point of emergency-brake application until point of rest was 3,429 feet. Approximately 63 seconds elapsed from the time the crew engaged the emergency brakes until the train came to a stop.

On November 3, 2006, BNSF filed a *Complaint for Property Damage* against the estates of Ms. Duran and Mr. Valencia and Lafarge Southwest, Inc., alleging that it sustained property damage in an amount in excess of $75,000 as a proximate result of the negligent acts and omissions of Ms. Duran and Mr. Valencia. [See generally Doc. 1]. On November 16, 2006, BNSF amended its complaint to add a cause of action for negligence *per se* and on January 22, 2007, filed its *Second Amended Complaint for Property Damage*. [Docs. 3, 13].

On February 5, 2007, the Valencia parties[1] filed a wrongful-death counterclaim against BNSF, alleging that as a proximate result of BNSF's actions, Mr. Valencia sustained damages in connection with the following:

---

[1] This group of litigants includes the estate of Robert Valencia and individual relatives of Mr. Valencia and is referred to here as "the Valencia parties."

> (1) reasonable expenses of necessary medical care and treatment;
> (2) pain and suffering experienced between the time of injury and death;
> (3) funeral expenses;
> (4) lost earnings and lost earning capacity and value of lost household services;
> (5) the value of life, apart from earning capacity;
> (6) aggravating circumstances attending the alleged wrongful act;
> (7) loss of enjoyment of life;
> (8) emotional distress to his wife, children, and mother;
> (9) loss of consortium with his wife, children, and mother; and
> (10) loss of guidance and counseling and close familiar relationship with his children.

[Doc. 15 at 11; see also Doc. 91 at 6-7]. Mr. Valencia's widow seeks to recover damages based upon:

> (1) Mr. Valencia's pain and suffering;
> (2) loss of consortium shared between husband and wife;
> (3) loss of enjoyment of life shared with Mr. Valencia;
> (4) lost earnings and lost earning capacity and value of lost household services;
> (5) the value of life, apart from earning capacity;
> (6) aggravating circumstances attending the alleged wrongful act;
> (7) emotional distress; and
> (8) loss of enjoyment of life.

[Id.].

On February 26, 2007, the Duran parties[2] filed a wrongful-death counterclaim against BNSF, seeking recovery of the following non-exhaustive list of damages:

---

[2] This group of litigants includes the estate of Carol Duran and individual relatives of Ms. Duran and is referred to here as "the Duran parties."

5

>    (1) reasonable expenses of medical care and treatment;
>    (2) lost earnings
>    (3) pain and suffering;
>    (4) loss of enjoyment of life;
>    (5) value of life;
>    (6) loss of consortium with children; and
>    (7) punitive damages

[Doc. 21 at 13; see also Doc. 160 at 11-12]. The Duran and Valencia parties also seek to recover punitive damages. [See Doc. 91 at 7; Doc. 160 at 12].

BNSF now moves, for a variety of reasons set forth more fully below, for partial summary judgment with respect to the Duran and Valencia parties' damages claims. [See Docs. 353, 354, 358].

## II. ANALYSIS

### Standard of Review: Fed.R.Civ.P. 56

Summary judgment under Fed.R.Civ.P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed.R.Civ.P. 56(e). Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Id. Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477

U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

Apart from these limitations, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the Court assumes the admissible evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all admissible evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

### A.  *BNSF Railway Company's Sixth Motion for Partial Summary Judgment, Dismissing Certain Claims for Damages* **[Doc. 358]**

Through this motion, BNSF seeks dismissal of the Duran and Valencia parties' claims for damages related to medical care and treatment expenses, as well as damages sought in connection with the decedents' alleged pain and suffering. It is the position of BNSF that these damages are not recoverable because "[t]here is no genuine issue as to any material fact that both Mrs. Duran and Mr. Valencia were killed on impact and Claimants cannot prove that they suffered any conscious pain and suffering." [Doc. 358 at 2].

#### 1. Claims for cost of medical care and treatment

As an initial matter, the Court notes that the Duran parties (and, through their *Notice of Joinder*,[3] the Valencia parties) have failed to respond to BNSF's assertion that claims for expenses related to medical care and treatment must be dismissed. [See Doc. 417]. The Court therefore treats this claim as abandoned and will enter partial summary judgment in

---

[3] [See Doc. 422].

7

BNSF's favor.  See, e.g., State ex rel. Children, Youth and Families Dept., 999 P.2d 1045, 1052 (N.M.App. 2000) (claim for which no argument or authority is presented in briefs is deemed abandoned).

### 2. Claims for pain and suffering

BNSF next asserts that neither the Duran nor the Valencia parties are entitled to recover damages for pain and suffering because such damages are awardable for *conscious* pain and suffering only, and both Ms. Duran and Mr. Valencia were killed immediately upon impact of train with truck. [See Doc. 358 at 2, 4, 6-9].  In response, the Duran and Valencia parties contest that the undisputed evidence demonstrates that death was instantaneous, and further argue, at least with respect to Ms. Duran, that damages are recoverable to compensate for the "emotional distress[] that [she] endured prior to her death [and as a result of] the terror that must [have] accompan[ied] the realization that a speeding train [was] about to smash into [her] truck." [Doc. 417 at 3, 9].

In New Mexico, a decedent's personal representative is entitled to recover damages for a decedent's conscious pain and suffering experienced between the time of injury and the time of death.  Stang v. Hertz Corp., 463 P.2d 45, 53 (N.M.App. 1969); see also Haceesa v. United States, 309 F.3d 722, 734 (10th Cir. 2002) ("Damages may be awarded in [an action brought pursuant to the New Mexico Wrongful Death Act] for, among other things, the decedent's *conscious* pain and suffering. . . .") (emphasis added); NMRA Civ. UJI 13-1830 (instructing jury that wrongful-death measure of damages includes, among other things, "[t]he pain and suffering experienced by the deceased between the time of injury and

8

death.").

A ruling as to whether Ms. Duran and/or Mr. Valencia experienced pain and suffering between the time of injury and the time of death, however, must be deferred, as the Court cannot say at this point in the proceedings, as a matter of law, that Ms. Duran and Mr. Valencia died instantaneously.  BNSF relies primarily on the testimony of its proposed expert, G. Theodore Davis, M.D., in support of its position that the deaths of Ms. Duran and Mr. Valencia occurred immediately upon their being struck by the train, and therefore they experienced no conscious pain and suffering.  Through his deposition, Dr. Davis (whose opinions are the subject of a pending motion in limine) testified that the heart, spine, and brain of both Ms. Duran and Mr. Valencia were "for sure" injured the moment they were struck. [Doc. 358; Exh. 2, Davis depo. at 54-55].  He also testified, however, that both Ms. Duran and Mr. Valencia sustained injuries to those three organs as a result of having been thrown or carried some distance after the initial impact.  Dr. Davis did not believe that Ms. Duran's brain was avulsed at the moment of impact, and he also testified to his opinion that her spine was transected—and her body ripped apart—as she was carried down the track. Dr. Davis could not tell at what point Ms. Duran's lungs, spleen, and kidneys were lacerated. [Id.; Exh. 2, Davis depo. at 56-57].  Additionally, aortic injuries were sustained in the collision, but Dr. Davis testified that aortic injuries do not always result in instantaneous death. [Doc. 417; Exh. A, Davis depo. at 41].[4]  It is Dr. Davis' opinion that "Ms. Duran and

---

[4] At Dr. Davis's deposition, the following colloquy took place:

Q:     Do all aortic injuries that result from lateral impacts result

9

Mr. Valencia ceased to be conscious and *essentially* died on impact. . . ."  [Doc. 358; Exh. 1, Davis affidavit at 4 (emphasis added)].  Because the Court is presently unable to conclude as a matter of law that Ms. Duran and Mr. Valencia experienced no pain and suffering between the time they were struck and the time they died, and because Dr. Davis's opinions are the subject of a pending motion in limine, the Court will defer its ruling on BNSF's motion for partial summary with respect to the issue of the decedents' pain and suffering.

In addition, in this case, the Duran and Valencia parties appear also to argue that they can maintain a claim for pre-injury "emotional and psychological pain, terror and suffering." [Doc. 417 at 9].  The Court notes that neither the Duran nor the Valencia parties have directed the Court to any New Mexico case law allowing or approving of the recovery of damages for pre-injury emotional distress, mental anguish, fear, or apprehension, and the Court's independent research similarly has failed to reveal any such authority.  Moreover, while there may be some situations supporting, and a limited number of jurisdictions

---

|     | in instantaneous death? |
| --- | --- |
| A:  | No. |
| Q:  | Does an aortic injury result in instantaneous death? |
| A:  | In and of itself, it would depend on what you mean by instantaneous.  I would say death could occur within a few seconds with transection of the aorta because you're basically eliminating the body's capacity to provide oxygen to the brain and the vital organs. |
|     | . . . |
| Q:  | When someone has an aortic injury, isn't it true that they can suffer over a number of minutes and hours prior to death? |
| A:  | If they're conscious, that's possible. |

[Doc. 417; Exh. A, Davis depo. at 41-42].

apparently allowing, such damages,[5] it is not the role of this Court, exercising its diversity jurisdiction, to expand the law of New Mexico beyond the bounds already set by the state courts. See Proctor & Gamble Co. v. Haugen, 222 F.3d 1262, 1280 (10th Cir. 2000) (*quoting* Taylor v. Phelan, 9 F.3d 882, 887 (10th Cir. 1993) ("As a federal court, we are generally reticent to expand state law without clear guidance from its highest court. . . .")). Accordingly, to the extent that the Duran and Valencia parties seek to recover damages stemming from any emotional distress, fright, fear, or mental anguish their decedents may have experienced prior to being struck by the train, BNSF is entitled to entry of partial summary judgment.

### B. *BNSF Railway Company's Seventh Motion for Partial Summary Judgment, to Dismiss Hedonic Damages Claims Brought Against BNSF Under the Common Carrier Wrongful Death Act* [Doc. 354]

Through this motion, BNSF seeks dismissal of the Duran and Valencia parties' claims for hedonic damages on the ground that the common carrier section of New Mexico's

---

[5] See, e.g., Cook v. Ross Island Sand and Gravel Co., 626 F.2d 746, 748 (9th Cir. 1980) (mental pain and suffering compensable under Jones Act where decedent was conscious for up to two and one half minutes before drowning); Haley v. Pan American World Airways, Inc., 746 F.2d 311, 315 (5th Cir. 1984) (with respect to decedent killed in airline crash, predicting that "Louisiana would recognize a cause of action for pre-impact fear experienced by a decedent in apprehension of impending death."); Beynon v. Montgomery Cablevision Ltd., P'ship, 718 A.2d 1161, 1169 (Md. 1998) (affirmatively answering specific question whether damages for "pre-impact fright" suffered by tort victim who dies upon impact are compensable in survival action); Thrailkill v. Patterson, 879 S.W.2d 836, 839-840 (Tenn. 1994) (jury correctly instructed that damages awardable for decedent's mental suffering); Missouri Pacific R. Co. v. Lane, 720 S.W.2d 830, 833 (Tex.App. 1986) (notwithstanding that driver of pickup truck that had stalled on railroad tracks was killed immediately when train struck vehicle, mental-anguish damages properly assessed in consideration of "the terror and consequent mental anguish [decedent] suffered for the six to eight seconds while he faced imminent death."); see also Thomas D. Sydnor, II, Damages for a Decedent's Pre-Impact Fear: An Element of Damages Under Alaska's Survivorship Statute, 7 ALASKA L. REV. 351 (1990).

Wrongful Death Act, N.M. STAT. ANN. § 41-2-4 (1978), which provides the Duran and Valencia parties' exclusive remedy, does not allow for the recovery of such damages. [See generally Doc. 354]. According to BNSF, § 41-2-4 differs from § 41-2-1 inasmuch as § 41-2-1 specifically allows, in a wrongful death action, the injured party to recover such damages as would be allowed "if death had not ensued[,]" whereas § 41-2-4 does not include that quoted phrase. Compare N.M. STAT. ANN. § 41-2-4 (1978) with § 41-2-4. Therefore, asserts BNSF, the common carrier section does not "measure[] the damages relative to the losses incurred by the decedent, but only by qualifying survivors. . . ." [Doc. 354 at 8].

Hedonic damages represent "the economic value of damages for the loss of enjoyment of life. . . ." Sena v. New Mexico State Police, 892 P.2d 604, 610 (N.M.App. 1995). In Romero v. Byers, the New Mexico Supreme Court held that the Wrongful Death Act permits a personal representative to recover an award of damages both for the value of the loss of earnings of a decedent and for the non-pecuniary value of the decedent's life itself, the measure being "all damages that are fair and just." Romero v. Byers, 872 P.2d 840, 846 (N.M. 1994). It is worth noting that, procedurally, the issue was before the Romero court upon the following certified question from the federal district court:

> Does the New Mexico Wrongful Death Act, NMSA 1978 §§ 41-2-1 *through 41-2-[4]* . . . permit Plaintiff to introduce expert testimony by an economist for establishing a non-pecuniary value of life itself of the decedent and be awarded damages for non-pecuniary value of decedent's life itself?

12

Id. at 845 (emphasis added).  In other words, the certified question did not limit itself (nor, apparently, did the answer) to the "general" subsection of the Act (§ 41-2-1).

New Mexico's Wrongful Death Act was taken from the State of Missouri.  See De Moss, State ex rel., v. District Court of the Sixth Judicial Dist., 227 P.2d 937, 938 (N.M. 1951).  As such, absent a compelling reason not to do so, this Court should follow the rule of adopted construction, which holds:

> It is a general rule based upon a presumed intent, that the adoption of a statute from another state includes its prior construction by the courts of that state, and the presumption is strong that the legislature did so intend. While the rule is not absolute, it should be followed unless the strong presumption is overthrown by stronger reasons or evidence that it was not adopted.

In re Estate of Sumler, 62 P.3d 776, 781 (N.M.App. 2002) (*quoting* White v. Montoya, 126 P.2d 471, 473 (N.M. 1942)); see also Hogsett v. Hanna, 63 P.2d 540, 542-543 (N.M. 1936) (construing Missouri case law for purpose of determining whether New Mexico's Wrongful Death Act created new cause of action in survivor, or simply transmitted to survivor the cause of action decedent would have had, had death not ensued).

In 1866, Section 2 of Chapter 147 of the General Statutes of the State of Missouri provided, in pertinent part, that

> [w]henever any person shall die from any injury, resulting from or occasioned by the negligence . . . of any employee, whilst running, conducting or managing any locomotive, car or train of cars . . . the corporation . . . in whose employ any such . . . employee . . . shall be at the time such injury is committed, or who owns any such railroad . . . shall forfeit and pay . . . the sum of five thousand dollars.

13

MO. STAT. CH. 147, § 2 (1866).  Section 3 read:

> Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover in damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured.

MO. STAT. CH. 147, § 3 (1866). In Proctor v. Hannibal & St. J.R. Co., a case in which the widow of an engineer sued to recover the $5,000 provided for in Section 2 following the death of her husband in a locomotive collision, the Supreme Court of Missouri held that Section 3 transmitted to the decedent's representative the right to sue to which the decedent would have been entitled had the decedent not died. Proctor v. Hannibal & St. J.R. Co., 64 Mo. 112, 1876 WL 9853, at *4 (Mo. 1876). The court explained that

> the third section of the act was only designed to transmit a right of action, which but for the section would have ceased to exist, or would have died with the person; in other words, that under section three whenever a person dies from such wrongful act of another as would have entitled the party to sue had he lived, such cause of action may be maintained by certain representatives of the deceased, notwithstanding the death of the party receiving the injury. It creates no new cause of action but simply continues or transmits the right to sue, which the party whose death is occasioned would have had, had he lived. . . .

Id. The Supreme Court of New Mexico relied upon Proctor—and quoted from and cited the case approvingly—when, in Hogsett, it agreed that Section 3 "transmit[ted] to the designated persons a cause of action when the injured person would have had one had death not ensued[,]" and rejected the idea that "the cause of action . . . abate[d] by reason of the death

14

of the person injured." Hogsett, 63 P.2d at 543; see also Tauch v. Ferguson-Steere Motor Co., 312 P.2d 83, 86 (N.M. 1957) (noting "survivorship of causes of action for death by wrongful act by common carriers"). In sum, this Court can discern nothing in the New Mexico Wrongful Death Act that would prevent a decedent's survivors from pursuing any claim the decedent would have had had the decedent lived, regardless of whether the alleged wrongdoer is or is not a common carrier. Consequently, BNSF's motion for partial summary judgment with respect to the availability of hedonic damages under the circumstances will be denied.[6]

## III. CONCLUSION

On the basis of the foregoing, the Court will grant in part and otherwise defer a ruling with respect to *BNSF Railway Company's Sixth Motion for Partial Summary Judgment, Dismissing Certain Claims for Damages*, and deny *BNSF Railway Company's Seventh Motion for Partial Summary Judgment, to Dismiss Hedonic Damages Claims Brought Against BNSF Under the Common Carrier Wrongful Death Act*.

**IT IS, THEREFORE, ORDERED** that *BNSF Railway Company's Sixth Motion for Partial Summary Judgment, Dismissing Certain Claims for Damages* [Doc. 358] is **GRANTED IN PART** and a ruling is **DEFERRED IN PART**;

---

[6] In this regard, the Court finds persuasive the November 2, 2007 *Order Denying BNSF Railway Company's Eleventh Motion for Partial Summary Judgement* [sic] *Concerning Plaintiffs' Claims for Hedonic Damages and All Claims Brought by Serviano Garcia as "Next Friend,"* entered by the Honorable Robert E. Robles in Garcia v. BNSF Co., CV-2005-1728, Third Judicial District Court, Dona Ana New Mexico. [See Doc. 388; Exh. F].

**IT IS FURTHER ORDERED** that *BNSF Railway Company's Sixth Motion for Partial Summary Judgment, Dismissing Certain Claims for Damages* is **GRANTED** with respect to claims for costs of medical care and treatment;

**IT IS FURTHER ORDERED** that *BNSF Railway Company's Sixth Motion for Partial Summary Judgment, Dismissing Certain Claims for Damages* is **GRANTED** to the extent that the Duran and Valencia parties seek to recover damages for their decedents' pre-injury emotional and psychological pain, terror, and suffering;

**IT IS FURTHER ORDERED** that a ruling is **DEFERRED** on *BNSF Railway Company's Sixth Motion for Partial Summary Judgment, Dismissing Certain Claims for Damages* with respect to claims for pain and suffering;

**IT IS FURTHER ORDERED** that *BNSF Railway Company's Seventh Motion for Partial Summary Judgment, to Dismiss Hedonic Damages Claims Brought Against BNSF Under the Common Carrier Wrongful Death Act* [Doc. 354] is **DENIED**;

**SO ORDERED** this 8th day of January, 2009, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge