# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

BNSF RAILWAY COMPANY,

       Plaintiff,                                         CIVIL NO. 06-1076 MCA/LFG

vs.

LAFARGE SOUTHWEST, INC.; STELLA
R. VALENCIA, Personal Representative of the
Estate of Robert J. Valencia; and GREGORY
MARTINEZ and DARLENE COLEMAN,
Personal Representatives of the Estate of
Carol E. Duran,

       Defendants.
========================================

STELLA R. VALENCIA, individually, and as
Personal Representative of the Estate of Robert J.
Valencia, JOHN KELLY VALENCIA, DESIREE
RICHELLE VALENCIA, STEPHANIE ESTELLE
VALENCIA, and LILLIAN S. VALENCIA,

          Counter Claimants/Cross-Claimants/
          Third-Party Plaintiffs,

vs.

BNSF RAILWAY COMPANY, and DARLENE
COLEMAN, Personal Representative of the
Estate of Carol E. Duran,

          Counter-Defendants/Cross-Defendants,

MIKE TAFT, d/b/a Taft Construction;
and EL PASO NATURAL GAS COMPANY

       Third-Party Defendants.
========================================

LAFARGE SOUTHWEST, INC.

       Third-Party Plaintiff/Cross-Plaintiff

vs.

DARLENE COLEMAN, individually, and as Personal
Representative of the Estate of Carol E. Duran; GREG
GUTIERREZ and MATTHEW RAY DURAN, individually,

       Plaintiffs,

vs.

BNSF RAILWAY COMPANY; LAFARGE SOUTHWEST,
INC.; STELLA VALENCIA, Personal Representative of the
Estate of Robert J. Valencia; MIKE TAFT, d/b/a Taft
Construction; and EL PASO NATURAL GAS CO.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *BNSF Railway Company's First Motion for Partial Summary Judgment, that Carol Duran and Robert Valencia were Negligent and Negligent Per Se* [Doc. 363], filed August 7, 2008. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants the motion in part, denies it in part, and defers a ruling in part.

## I. BACKGROUND

This action arises from a fatal collision between an eastbound freight train operated by Plaintiff  BNSF Railway Company (BNSF) and a commercial dump truck that was being

2

driven by decedent Carol Duran.  At the time of the accident, Ms. Duran was an independent commercial truck driver under contract with Defendant/Third-Party Plaintiff Lafarge Southwest, Inc. (Lafarge).  Lafarge is a supplier of construction materials, such as concrete, cement, gravel, and aggregate.

On November 1, 2006, Ms. Duran was delivering a load of gravel on behalf of Lafarge to a construction site owned by El Paso Natural Gas Company (EPNG).  EPNG had contracted with Taft Construction (Taft) to, among other things, install a Capstone cathodic protection station along one of EPNG's pipelines to prevent corrosion.  To access the area where the station was being constructed, vehicles and people were required to cross of a set of railroad tracks.  On November 1, 2006, Ms. Duran was crossing the tracks at milemarker 14.[1]  Her delivery ticket instructed her to "look for Robert in Lafarge trk." [Doc. 410; Exh. C].  "Robert" was decedent Robert Valencia, who was employed by Lafarge as a gravel salesman.  On November 1, 2006, Mr. Valencia had stationed himself at the milemarker 14 railroad-track crossing for the purpose of directing materials deliveries.

Gerardo Ortiz is another commercial truck driver who, on November 1, 2006, was delivering a load of base course to the site in question.  He reached milemarker 14 ahead of Ms. Duran. While the milemarker 14 crossing itself is flat, the approach leading to it is inclined.  There is a stop sign and a crossbucks (a sign with a black "X" indicating a railroad crossing) bordering the tracks at the milemarker 14 crossing but, according to Mr. Ortiz,

---

[1]  It is undisputed that this crossing is located on land that is within the Laguna Indian Reservation.

neither he nor Ms. Duran stopped at the stop sign.  Mr. Ortiz explained that he did not stop because his truck was fully loaded, and a fully loaded truck risks stalling on an incline.  In any event, as Mr. Ortiz approached the milemarker 14 crossing, Mr. Valencia signaled to him in a manner that caused Mr. Ortiz to believe he was being asked to stop his truck on the tracks.  For safety reasons, Mr. Ortiz did not stop on the tracks but, instead, fully crossed over before stopping.  According to Mr. Ortiz, he had no problem crossing the tracks.  Once across, Mr. Ortiz looked back and saw Ms. Duran approaching.

As Ms. Duran approached, Mr. Valencia signaled at her in the same manner as he had signaled at Mr. Ortiz.  Ms. Duran accordingly stopped on the crossing.  Mr. Valencia then came to Ms. Duran's driver-side window to speak with her.   For at least 43 seconds, Ms. Duran remained, in her truck, on the tracks.[2]  Both Ms. Duran and Mr. Valencia were killed as a result of the BNSF train colliding with Ms. Duran's fully loaded truck.[3]  An autopsy performed on Mr. Valencia revealed the presence of tetrahydrocannabinol (THC) in his blood.  THC is the active ingredient in marijuana.

On November 3, 2006, BNSF filed a *Complaint for Property Damage* against the

---

[2]  This is the position of the group of litigants referred to herein as "the Duran parties," who have asserted that Ms. Duran's "truck was present and, thus, clearly visible to the [BNSF train] crew for a distance of some 4,000 feet and 43 seconds." [Doc. 459 at 8].

[3]  Eastbound trains, such as the one involved in this accident, negotiate a series of curves in the final miles leading to the crossing at which Ms. Duran and Mr. Valencia were struck.  The last of these curves is a left-hand curve approximately 4,000 feet west of the crossing.  There is an escarpment at this final curve, but once the escarpment is passed and the final curve negotiated, the stretch of track between this point (4,000 feet west of the crossing) and the actual crossing is straight, and the view between the two points unobstructed.

estates of Ms. Duran and Mr. Valencia (as well as Lafarge), alleging that it sustained property damage in an amount in excess of $75,000 as a proximate result of the negligent acts and omissions of Ms. Duran and Mr. Valencia. [See generally Doc. 1].  On November 16, 2006, BNSF amended its complaint to add a cause of action for negligence *per se* and on January 22, 2007, filed its *Second Amended Complaint for Property Damage*.  [Docs. 3, 13]. On November 1, 2007, the Valencia parties[4] responded with their *First Amended Counterclaim and Cross Claim and Third Party Complaint*, and on March 3, 2008, the Duran parties filed their *First Amended Complaint for Wrongful Death*.  [Docs. 91 and 160].

BNSF now seeks summary judgment with respect to its contention that Ms. Duran was negligent and negligent per se for (1) failing to stop her truck at the stop sign and crossbucks before driving onto the crossing; (2) stopping on the crossing and remaining there; and (3) failing to keep a lookout.  BNSF contends that Mr. Valencia was negligent and negligent per se for (1) directing commercial truck traffic while under the influence of marijuana; and (2) failing to keep a lookout. [Doc. 363 at 5].  The scope of BNSF's motion is narrow and expressly does *not* request a determination as to whether the alleged negligence of Ms. Duran and/or Mr. Valencia was a proximate cause of the collision, nor does it seek the allocation of fault. [See id.].

---

[4] This group of litigants includes the estate of Robert Valencia and individual relatives of Mr. Valencia and is referred to here as "the Valencia parties."

5

## II. ANALYSIS

### A. Standard of Review: Fed.R.Civ.P. 56

Summary judgment under Fed.R.Civ.P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ."  Fed.R.Civ.P. 56(e).  Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."  Id.  Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

When, as here, the movant is also the party bearing the burden of persuasion with regard to the claim on which a summary judgment is sought, the movant must show that the record as a whole satisfies each essential element of its case and negates any affirmative defenses in such a way that no rational trier of fact could find for the non-moving party.  See 19 Solid Waste Dep't Mechanics v. City of Albuquerque, 156 F.3d 1068, 1071 (10th Cir. 1998); Newell v. Oxford Mgmt., Inc., 912 F.2d 793, 795 (5th Cir. 1990); United Missouri Bank of Kansas City, N.A. v. Gagel, 815 F. Supp. 387, 391 (D.Kan. 1993).  The admissions in a party's answer to a complaint are binding for purposes of determining whether the

movant has made such a showing.  See Missouri Housing Dev. Comm'n v. Brice, 919 F.2d 1306, 1314-15 (8th Cir. 1990).  Similarly, the Court may consider any undisputed material facts set forth in the motion papers which are deemed admitted by operation of D.N.M. LR-Civ.56.1.  See LaMure v. Mut. Life Ins. Co. of N.Y., 106 F.3d 413, 1997 WL 10961, at *1 (10th Cir. 1997) (unpublished disposition); Smith v. E.N.M. Med. Ctr., 72 F.3d 138, 1995 WL 749712, at *4 (10th Cir. 1995) (unpublished disposition); Waldridge v. American Hoechst Corp., 24 F.3d 918, 920-24 (7th Cir.1994) (approving use of local rule similar to D.N.M. LR-Civ. 56.1(b)).

Apart from these limitations, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment.  Rather, the Court assumes the admissible evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all admissible evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

Finally, "[u]nder the Federal Rules of Civil Procedure, even if summary judgment is not granted on a whole action the Court should, to the extent possible, determine what material facts are not genuinely at issue by examining the pleadings and evidence before it." Hummingbird USA Inc. v. Texas Guaranteed Student Loan Corp., 2008 WL 2922783, at *5 (S.D.N.Y. July 25, 2008) (unpublished opinion).  Specifically,

> [i]f summary judgment is not rendered on the whole action, the [C]ourt should, to the extent practicable, determine what material facts are not genuinely at issue. The [C]ourt should so

> determine by examining the pleadings and evidence before it
> and by interrogating the attorneys. It should then issue an order
> specifying what facts—including items of damages or other
> relief—are not genuinely at issue. The facts so specified must be
> treated as established in the action.

Fed.R.Civ.P. 56(d)(1).

### B. *BNSF Railway Company's First Motion for Partial Summary Judgment, that Carol Duran and Robert Valencia were Negligent and Negligent Per Se* [Doc. 363]

As previously noted, BNSF contends that Ms. Duran and Mr. Valencia were both negligent and negligent per se for what they did (and failed to do) on November 1, 2006. According to BNSF, Ms. Duran breached duties established by tribal, state, and federal law in (1) failing to stop at the stop sign and crossbucks bordering the railroad tracks in question; (2) stopping on the tracks and remaining there; and (3) failing to keep a proper lookout for oncoming trains. BNSF opines that Mr. Valencia similarly failed to keep a proper lookout, and also was negligent in directing traffic while being under the influence of marijuana. [Doc. 363 at 4-5].

In response, the Duran parties argue that Ms. Duran did not violate the statutes and regulations she is alleged to have violated but, even if she did, summary judgment is inappropriate because material factual issues exist as to whether any violations were excused or justified under the circumstances. [See generally Doc. 410]. The Valencia parties maintain that there is no evidence that Mr. Valencia failed to stop, look and listen for oncoming trains and that, absent any such evidence, he is presumed to have done so. They

also dispute that Mr. Valencia had consumed marijuana[5] and that he was impaired as a result.[6]

### 1. Negligence Per Se

"In New Mexico, 'a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages.'" Chavez v. Desert Eagle Distrib. Co. of N.M., 151 P.3d 77, 80 (N.M.App. 2006) (*quoting* Herrera v. Quality Pontiac, 73 P.3d 181 (1964)).  However, under the legal doctrine known as "negligence per se," a court may, if certain criteria are met, adopt a statutory standard as an expression of the standard of conduct for a reasonable person.  See 57A AM. JUR. 2D *Negligence* § 701.  The doctrine holds that the "violation of a statute constitutes negligence per se and when, as a proximate result thereof, a person is injured, damages may be recovered if the statutory provision violated was for the benefit of the person injured." Hayes v. Hagemeier, 400 P.2d 945, 947 (N.M. 1965); see also Johnstone v. City of Albuquerque, 145 P.3d 76, 82 (N.M.App. 2006) ("Duties imposed by statutes exist to

---

[5]  It is unclear whether the Valencia parties are disputing that Mr. Valencia consumed marijuana *at all*, or whether they are disputing the allegation that he did so within an hour of the collision. [Compare Doc. 420 at 15 ("Plaintiff disputes that Robert Valencia ingested marijuana. . . .") with id. at 21 ("There is a material fact dispute as to whether or not Mr. Valencia . . . consumed marijuana within the hour of the collision.")].

[6]  The Valencia parties also submit that summary judgment is inappropriate because "BNSF has not produced any evidence that conclusively establishes that any negligence of Mr. Valencia proximately caused the collision." [Doc. 420 at 23].  As previously explained, BNSF's motion expressly *does not* seek a determination as to whether the alleged negligence of Ms. Duran and/or Mr. Valencia was a proximate cause of the accident. [See Doc. 363 at 2-3].

establish a standard of care, the violation of which constitutes negligence per se.").  As has

been explained,

> [t]he distinction between "negligence" and "negligence per se"
> is the means and method of ascertainment, in that the former
> must be found by a factfinder from the evidence, while the latter
> results from violation of the specific requirement of law or
> ordinance; and the only fact for the determination of the
> factfinder is the commission or omission of the specific act
> inhibited or required.

Heath v. La Mariana Apartments, 180 P.3d 664, 667 (N.M. 2008) (*quoting* Watkins v.

Hartsock, 783 P.2d 1293, 1297 (1989)).

Even where it has been determined that an actor's conduct amounted to negligence

per se, however, "there w[ill] still be the questions of proximate cause and independent

intervening cause." Archuleta v. Johnston, 492 P.2d 997, 999 (N.M.App. 1971).  To be sure,

"'[n]egligence resulting from a violation of a[n] [statute] [or] [ordinance] is no different in

effect from that resulting from other acts or omissions constituting negligence. In each case

the negligence is of no consequence unless it was a cause of or contributed to, an injury

found by [the jury] to have been suffered by the plaintiff.'" Rimbert v. Eli Lilly and Co., 577

F.Supp.2d 1174, 1205 (D.N.M. 2008) (*quoting* N.M.R.A. CIV. UJI 13-1503)).

Most claims for negligence per se are brought against defendants; however, "plaintiffs

and plaintiffs' decedents can be found comparatively at fault under the doctrine of negligence

per se." Vigil v. Burlington N. and Santa Fe Ry. Co., 521 F.Supp.2d 1185, 1214 (D.N.M.

2007) (*citing* Apodaca v. AAA Gas Co., 73 P.3d 215, 231 n.2 (N.M.App. 2003)).

Accordingly, as pertains to this case, the doctrine of negligence per se may apply to the

actions of Ms. Duran and Mr. Valencia.  See Vigil, 521 F.Supp.2d at 1214.

Courts in New Mexico apply the following four-part test to determine the applicability of the negligence-per-se doctrine: (1) there must be a statute prescribing certain actions or defining a standard of conduct, either explicitly or implicitly; (2) the defendant or plaintiff must violate the statute; (3) the plaintiff must be in the class of persons sought to be protected by the statute; and (4) the harm or injury sustained must generally be of the type the legislature through the statute sought to prevent.  Heath, 180 P.3d at 666.  The statute (or regulation or ordinance) in question must define duty with specificity.  Abeita v. N. Rio Arriba Elec. Co-op., 946 P.2d 1108, 1116 (N.M.App. 1997).  Indeed,

> [w]here a specific requirement is made by statute and an absolute duty thereby imposed, no inquiry is to be made whether the [actor] acted as a reasonably prudent man, or was in the exercise of ordinary care. . . . But, where duties are undefined, or defined only in abstract or general terms, leaving to the jury the ascertainment and determination of reasonableness and correctness of acts and conduct under the proven conditions and circumstances, the phrase "negligence per se" has no application.

Id. (quoting Swoboda v. Brown, 196 N.E. 274, 278-79 (Ohio 1935)).  In other words, a statute must do "more than restate the common law standard of ordinary care [to] form the basis for a negligence per se" claim.  Heath, 180 P.3d at 669.  Additionally, under New Mexico law, the violation of a federal statute—just like the violation of a state statute—can constitute negligence per se.  See F.D.I.C. v. Schuchmann, 235 F.3d 1217, 1224-25 (10th Cir. 2000).

11

Still, "'[t]he presumption of negligence which arises from the violation of a statute is rebuttable and may be overcome by evidence of justification or excuse.'" <u>Jackson v. Southwestern Pub. Serv. Co.</u>, 349 P.2d 1029, 1038 (N.M. 1960) (*quoting* <u>Alarid v. Vanier</u>, 327 P.2d 897, 898 (Cal. 1958)).  This justifiable-violation doctrine "recognizes that there are circumstances in which it is unfair to base negligence on the violation of a statute so that an excused violation of a statute is not negligence."  <u>Spencer v. Health Force, Inc.</u>, 107 P.3d 504, 508 (N.M. 2005) (internal quotations omitted).  Some of the more common situations in which courts will ordinarily recognize an excuse for a statutory violation include—but are not limited to—those situations when:

> (a) the violation is reasonable because of the actor's incapacity;
> (b) the actor neither knows nor should know of the occasion for compliance;
> (c) the actor is unable after reasonable diligence or care to comply;
> (d) the actor is confronted by an emergency not due to his or her own misconduct;
> (e) compliance would involve a greater risk of harm to the actor or to others.

RESTATEMENT (SECOND) OF TORTS § 288A(2) (1965).  "'[T]he correct test is whether the person who has violated a statute has sustained the burden of showing that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law.'" <u>Hayes</u>, 400 P.2d at 949 (*quoting* <u>Jackson</u>, 349 P.2d at 1038).

## 2. Whether the Actions of Ms. Duran Constituted Negligence Per Se

BNSF maintains, in pertinent part, that Ms. Duran was "negligent per se for stopping her vehicle on the railroad tracks at the subject crossing. . . ." [Doc. 363 at 4].  It is undisputed that, on the morning of November 1, 2006, Carol Duran drove her truck onto the railroad crossing at milemarker 14 and stopped. [See Doc. 160 (*First Amended Duran Complaint*) at 5 ("As Carol Duran approached the crossing, Robert Valencia directed her to stop."); Doc. 410 (*Duran Parties' Response to BNSF's First Motion for Partial Summary Judgment*) at 3 ("Ms. Duran was simply following orders when she stopped on the railroad tracks. . . ."), at 11 ("[Robert Valencia] told [Ms. Duran] to stop and she stopped."), at 17 ("Valencia motioned to her and she stopped.  She would not have felt free to ignore him.  He was her supervisor. . . ."), and at 18 ("Whatever the reason, Robert Valencia signaled Duran to stop and she did.")].

In New Mexico, "it is a misdemeanor for any person to do any act forbidden . . . in Article 7 of Chapter 66 NMSA 1978."  N.M. STAT. ANN. § 66-7-3 (1978).  Section 66-7-341, captioned "Railroad-highway grade crossing violations; all drivers[,]" *expressly* states that "[a] person shall not . . . drive onto the railroad-highway grade crossing and stop. . . ."  N.M. STAT. ANN. § 66-7-341(B) (1978).  Moreover, § 66-7-351 which, unlike § 66-7-341, is not specific to railroad crossings but nonetheless prohibits the stopping of a vehicle within their vicinity, provides, in pertinent part, that "[n]o person shall stop, stand or park a vehicle, except when necessary to avoid conflict with other traffic or in compliance with law or the directions of a police officer or traffic-control device . . . *within fifty feet of the nearest rail*

13

*of a railroad crossing*." N.M. STAT. ANN. § 66-7-351(A)(9) (emphasis added). Accordingly, the first requirement for the application of the negligence-per-se doctrine (*i.e.*, a statute prescribing certain actions or defining a standard of conduct) is satisfied by the existence of §§ 66-7-341 and 66-7-351. The second requirement (*i.e.*, the defendant or plaintiff has violated the statute) is satisfied by the undisputed facts which, as recited above, demonstrate that Ms. Duran stopped her truck on the tracks.

As for the third and fourth requirements (*i.e.,* that the plaintiff be in the class of persons sought to be protected by the statute and that the harm be of a type the legislature through the statute sought to prevent ) the Court concludes that *both* Ms. Duran and BNSF come within the class of persons sought to be protected by §§ 66-7-341 and 66-7-351 and that the harm suffered was of a type sought by the legislature to be prevented by the statutes' enactment. See Vigil, 521 F.Supp.2d at 1215 (where it was undisputed that driver did not stop at stop sign and crossbucks, and also failed to yield right-of-way to oncoming train, court held that driver was negligent per se for having violated § 66-7-341 and further explained that "[t]he Decedents and Defendants [railroad] were in the class of persons sought to be protected by the traffic statutes [and that t]he harm suffered by the Decedents and Defendants was of the type the legislature through the statute sought to prevent."); see also Kelly v. Brown, 260 S.W.3d 212, 219 (Tex.App. 2008).[7]

_____

[7] In Kelly, a motorist was injured when her vehicle struck the side of a moving freight train at a railroad crossing. In its summary-judgment motion, the railroad argued, among other things, that the motorist was negligent per se for having violated § 545.251(c) of the Texas Transportation Code, which governs operators of vehicles approaching certain railroad crossings. Kelly , 260 S.W.3d at 215. The court of appeals affirmed the district court's entry of

Still, an actor "can rebut an allegation of negligence per se with proof of an excuse for the violation," Heath, 180 P.3d at 670 n.3, and it is the position of the Duran parties that any violation Ms. Duran may have committed in stopping on the tracks was justified and/or excused because "Ms. Duran was simply following orders when she stopped on the railroad tracks, orders that she would not feel free to ignore. Robert Valencia was the Lafarge employee in charge of aggregate deliveries and the person to whom Ms. Duran . . . answered." [Doc. 410 at 3]. Thus, in addition to stopping to allow Mr. Valencia an opportunity to direct her to the area where she was to dump the gravel she was hauling, the Duran parties assert that Ms. Duran stopped because her supervisor instructed her to, and she "would not [have been] comfortable ignoring Valencia." [Id.] at 16.

New Mexico's Uniform Jury Instruction governing justification or excuse as a defense to a charge of negligence per se provides that "[t]o legally justify or excuse a violation of [an] ordinance, the violator must sustain the burden of showing that [s]he did that which might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law." NMRA Civ. UJI 13-1502; see also Hayes, 400 P.2d at 949. To trigger charging a jury with Instruction 13-1502, the proffered justification or excuse must amount to "a force beyond anyone's control." Bachicha v. Lewis, 737 P.2d 85, 88 (N.M.App. 1987).

---

summary judgment for the railroad, commenting that it had "no trouble concluding that . . . the legislative purposes of § 545.251(c) include[d] the prevention of railroad crossing accidents between motor vehicles and moving trains. Thus, it appear[ed] that the class of persons to be protected by the statute include[d] both the operators or motor vehicles and operators of trains. . . ." Id. at 219.

In <u>Bachica</u>, the New Mexico Court of Appeals held that it was reversible error for the trial court to have provided the jury with an excuse/justification instruction where the defendant-driver had argued that the reason she rear-ended the plaintiff-driver's vehicle at a red light was that she was wearing new shoes that caused her foot to slip off the brake pedal, constituting "'a sudden, unexpected incident that left her without a way to control the vehicle once it had occurred.'" <u>Bachica</u>, 737 P.2d at 87.  The appellate court specifically determined that "[t]he slipping of defendant's foot [did] not constitute a 'force beyond anyone's control.'" <u>Id.</u> at 88.

<u>Bachicha</u> stands in contrast to <u>Whitfield Tank Lines, Inc. v. Navajo Freight Lines, Inc.</u>, where the Court of Appeals held that it was reversible error *not* to provide the jury with an excuse/justification instruction.  <u>Whitfield Tank Lines, Inc. v. Navajo Freight Lines, Inc.</u>, 564 P.2d 1336 (N.M.App. 1977).  In <u>Whitfield</u>, two tractor trailers collided when the southbound truck (Navajo) entered a snowdrift and suddenly jackknifed, sliding across the lanes and into the path of the northbound truck (Whitfield).  At the time of the collision, it was dark; snowing heavily; and the wind was blowing.  The evidence at trial demonstrated that (1) the snowdrift in question appeared to the driver of the southbound truck to be identical to other snowdrifts he had successfully negotiated; (2) an expert driver would have attempted to drive through the snowdrift; and (3) not even an expert driver could have avoided a jackknife under the circumstances.  <u>Id.</u> at 1339-40.  Concluding that the jury should have been charged with an excuse/justification instruction, the appellate court explained:

> The [trial] court should have submitted the instructions with the excuse or justification provision because there was evidence that Navajo's presence in the wrong lane might have been caused by snow, wind and *forces beyond anyone's control*. These facts could very well have excused a violation of a statute, or at least make the violation it [sic] jury question. Reasonable minds could differ as to whether [Navajo could] be excused from the statutory requirement of driving on the right side of the road; therefore, Navajo was entitled to the requested instructions because a party is entitled to an instruction on a particular theory of the case if supported by the evidence.

Id. at 1340 (emphasis added).

Finally, it is worth noting commentary by the Supreme Court of New Mexico in Jackson v. Southwestern Pub. Serv. Co., in which the plaintiff, already walking with the assistance of crutches, was injured when he lost his footing and fell into a hole that had been dug and left in the street by the defendant-public utility company.  Applicable ordinances covering water and power required the utility company, when work was done in the streets, "to restore the street within a reasonable time to its original condition as nearly as possible, and provided that such work was to be done subject to the approval and supervision of the town or such person as it designated."  Jackson, 349 P.2d at 1037.  At trial, the utility company unsuccessfully attempted to introduce evidence that it was following instructions of the mayor to report the opening of a hole in the street to the State Highway Department, which would then repair the hole when the materials to do so became available.  Id.  It was the utility company's position that because the ordinances in question provided that

> restoring the streets to their previous condition must give way to the provision that it [was] to be done subject to the supervision and approval of the town[, . . . ] if it did what the mayor directed

17

> . . . it would not be liable, even though the mayor failed to
> instruct it to restore the street to its previous condition, or
> consented that someone else could do this work.

Id. at 1037-38.

Recognizing the general rule that the "violation of an ordinance may be excused or justified in certain cases[,]" the Court nevertheless held that the trial court had properly excluded testimony of the mayor's directive.  Jackson, 349 P.2d at 1038.  It explained:

> It is apparent that the [utility company] did not comply with the
> ordinance by restoring the street as nearly as possible to its
> original condition within a reasonable time. The question is
> whether or not evidence of the statement of the mayor should
> have been submitted to the jury as justification or excuse on the
> part of the [utility company]. *This should have been submitted
> unless men of reasonable minds would agree that it did not
> constitute a justification or excuse so that the court could
> declare, as a matter of law, that it was not a justification or
> excuse*. In our opinion, as a matter of law, the fact that the
> mayor might have told the [utility company] to leave a hole in
> the street until the Highway Department filled it up did not
> constitute justification or excuse for leaving the hole there. *We
> do not feel that the statement of some town official to leave a
> hole in the street should be considered by the ordinary man
> using reasonable care as a proper excuse or justification for
> doing this particular act. There was no emergency. There was
> ample time for thought and deliberation.* It was not an isolated
> case, but a practice of long standing. There was no reason why
> the [utility company] could not restore the street, except
> inconvenience. We do not consider the testimony as any excuse
> or justification for leaving a hole in the street contrary to the
> plain terms and provisions of the ordinance, and we do not
> believe that such testimony could bring the [utility company]
> within the exception noted.

Id. (emphasis added).

In the instant case, the Duran parties do not contest that Ms. Duran stopped her dump

18

truck on the tracks at the milemarker 14 crossing.  They contend, however, that her conduct

was excused or justified.  [See Doc. 410 at 16].  As previously explained, the burden is on

the Duran parties to show that Ms. Duran did what "might reasonably be expected of a

person of ordinary prudence, acting under similar circumstances, who desired to comply with

the law." NMRA Civ. UJI 13-1502; see also Hayes, 400 P.2d at 949.

As an initial matter, the Court notes that there is no allegation or suggestion that the

physical condition of the crossing was such that Ms. Duran was forced to stop on it, rather

than proceed across, as Mr. Ortiz had done just before.  [See Doc. 373; Exh. G, Ortiz depo.

at 44 (Q: "[D]id you have any problems crossing the railroad crossing?" A: "No, none."); see

also Doc. 410; Exh. E, Ortiz depo. at 127 ("Were you also having to slow down because you

were coming up to a landing and there is a lot of pot holes and you are going to be going over

a rough terrain with a heavy truck, fully loaded, over the railroad tracks, over the crossing?"

A: "Not exactly because of that.")].  Nor is there any allegation or suggestion that there

existed any of the more commonly recognized reasons for which a court might excuse or

justify a statutory violation.[8]  Instead, the Duran parties, contrasting the behavior of Ms.

Duran with that of Mr. Ortiz, contend that

> Robert Valencia attempted to stop Mr. Ortiz in the crossing, but
> Mr. Ortiz continued driving through the crossing.  Gerardo Ortiz
> knew Robert Valencia fairly well and was comfortable not

---

[8]  For example, there is no allegation that: (1) Ms. Duran was incapacitated; (2) Ms. Duran neither know nor should have known of the occasion for compliance; (3) Ms. Duran was unable, with reasonable diligence or care, to comply; (4) Ms. Duran was confronted by an emergency not due to her own misconduct; or (5) compliance would have involved a greater risk of harm to Ms. Duran or to others.  See RESTATEMENT (SECOND) OF TORTS § 288A(2) (1965).

> stopping.  He knew Valencia would not get mad at him.  Carol
> Duran, on the other hand, did not enjoy the same relationship
> with Mr. Valencia.  Mr. Valencia was her supervisor.  Ortiz
> testified that she would not be comfortable ignoring Valencia.
> *Valencia told her to stop and she did*.

[Doc. 410 at 16 (emphasis added)].  Thus, the Duran parties maintain that Ms. Duran was

justified in stopping her truck on the crossing (where she remained for at least 43 seconds)[9]

because Mr. Valencia directed her to do so.

It was similarly the case in <u>Jackson</u> that the defendant-public utility attempted to

justify its violation of the ordinance requiring it to fill in the hole it had made in the street by

pointing to evidence that the mayor had instructed it to leave the hole there until the State

Highway Department filled it in.  <u>See</u> <u>Jackson</u>, 349 P.2d at 1038.  The argument that the

statutory violation in <u>Jackson</u> should have been excused by—or was justified in light of—the

mayor's directive failed, the New Mexico Supreme Court holding that "*as a matter of law*,

*the fact that the mayor might have told the [utility company] to leave a hole in the street until*

*the Highway Department filled it up did not constitute justification or excuse for leaving the*

hole there."  <u>Id.</u> (emphasis added).  The Court added that it did

> not feel that the statement of some town official to leave a hole
> in the street should be considered by the ordinary man using
> reasonable care as a proper excuse or justification for doing this
> particular act. There was no emergency. There was ample time
> for thought and deliberation. It was not an isolated case, but a
> practice of long standing. There was no reason why the
> appellant could not restore the street, except inconvenience.

_____

[9] <u>See</u> <u>supra</u> note 2.

Id.

So too in this case, this Court concludes that the Duran parties' argument that Ms. Duran's conduct was excused by—or justified in light of—Mr. Valencia's directive that she stop on the tracks must fail as a matter of law, since there is no allegation that an emergency forced Ms. Duran to stop on the tracks, where she remained for at least 43 seconds, nor any evidence that she could not have stopped elsewhere, as Mr. Ortiz had just done. Moreover, even if reluctance to ignore Mr. Valencia's instruction could constitute a valid excuse or justification for stopping on the railroad tracks, it is not at all clear to this Court that, as the Duran parties maintain, "Mr. Ortiz testified that [Ms. Duran] would not be comfortable ignoring Valencia." [Doc. 410 at 16]. While it is true that Mr. Ortiz testified that *he* felt sufficiently comfortable with Mr. Valencia to disregard his order to stop on the tracks, the section of deposition testimony cited by the Duran parties in support of this statement reads as follows:

> Q:    Do you agree that she could have [crossed the tracks and stopped her truck on the other side] if she decided to?
> A:    Well, if Roberto had told her or if he had waited for her at another place.
> Q:    There was nothing physically stopping her from continuing on across the track rather than stopping?
>       . . .
> A:    No, the thing is that—they told us that Roberto was going to tell us where to unload, so that is why we were waiting for Roberto to tell us where we were to unload.

[Id.; Exh. E, Ortiz depo. at 179-180]. Mr. Ortiz also testified:

> Q:    You also told us that you knew Robert pretty well?
> A:    Yes.

21

> Q:   And you were comfortable with him?
> A:   I believe so, because he tried to help me.
> Q:   And you decided to go ahead and just pull right over the
>      track and tell him to come see you?
> A:   Yes.
> Q:   Is that because you knew that—because you knew him so
>      well, you knew he wouldn't get mad at you?
> . . .
> A:   Uh-huh, yes.

[Id.; Exh. E, Ortiz depo. at 176].   This Court concludes that the argument that Ms.

Duran—who was negligent per se in stopping her truck on the railroad tracks and remaining

there—was justified in doing so because Mr. Valencia had instructed her to stop, fails as a

matter of law.   See Jackson, 349 P.2d at 1038.   As a matter of law, Mr. Valencia's instruction

cannot be said to have constituted "a force beyond anyone's control[,]" Bachicha, 737 P.2d

at 88, nor have the Duran parties sustained their burden of showing that Ms. Duran "did that

which might reasonably be expected of a person of ordinary prudence, acting under similar

circumstances, who desired to comply with the law."   NMRA Civ. UJI 13-1502; see also

Hayes, 400 P.2d at 949.   For these reasons, the Court will grant BNSF's motion for partial

summary to the extent that BNSF alleges that Carol Duran was negligent per se for stopping

and remaining on the tracks at the milemarker 14 crossing on November 1, 2006.[10]

---

[10]   Because state law is dispositive as to the issue of Ms. Duran's negligence per se, the
Court does not address whether, as BNSF contends, Ms. Duran was also negligent per se for
having violated tribal and federal law.   However, if it did, it would not be able to say at this stage
of the proceedings that Ms. Duran was negligent per se for violating regulations and/or codes
prohibiting the driving upon a railroad crossing without first using due caution to ascertain that
the course is clear. [See Doc. 363 at 16 ("Mrs. Duran undisputedly violated the federal
regulation, which has been adopted as New Mexico law, and the two Laguna Traffic Code
provisions.   She 'drove upon the crossing' without using 'due caution' ' to ascertain that the
course is clear,' in violation of 49 C.F.R. § 392.11.")].   Given that there exist material factual
issues as to whether the train would have been visible to Ms. Duran as she came onto the

## 2. Whether Ms. Duran was Negligent for Failure to Maintain a Proper Lookout for Oncoming Trains

BNSF also argues that Ms. Duran breached her common law duty of care "to stop and maintain a lookout for an approaching train 'in such a manner as to make it reasonably effective.'" [Doc. 363 at 17, *quoting* Blewett v. Barnes, 309 P.2d 976, 977-979 (N.M. 1957)]. BNSF further argues that Ms. Duran's conduct "was negligence as a matter of law." [Doc. 363 at 19].

The elements of a negligence claim include (1) the existence of a duty from a defendant to a plaintiff; (2) a breach of that duty, which is typically based upon a standard of reasonable care; and (3) the breach being a proximate cause and cause in fact of the plaintiff's damages. See Herrera, 73 P.3d at 185-186. The existence of a duty is a question of law for the Court to decide. Id. at 186. On the other hand,

> the responsibility for determining whether the defendant has breached a duty owed to the plaintiff entails a determination of what a reasonably prudent person would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all the surrounding circumstances.

Bober v. New Mexico State Fair, 808 P.2d 614, 621 (N.M. 1991). It is for the finder of fact to determine whether a breach occurred, because the question of whether a defendant acted

---

crossing (which would be the case if, as BNSF contends, Ms. Duran's truck was on the tracks for only 10-14 seconds before impact, see Doc. 414 at 2), or whether Ms. Duran came onto the tracks before the train emerged from behind the escarpment (which is the position of the Duran parties, see Doc. 360 at 3 ("As it cleared the last curve over 4,000 feet west of the crossing, the crossing and Carol Duran's truck would have been clearly visible to the train crew.")), the Court is unable to say as a matter of law that Ms. Duran "drove upon the crossing without using due caution to ascertain that the course was clear."

reasonably or negligently "involv[es] . . . the application of precepts of duty to the historical facts as found by the fact finder." Id.

In addition to prohibiting the stopping of a vehicle on railroad tracks, § 66-7-341 provides, in pertinent part, that "[a] person driving a vehicle approaching a railroad-highway grade crossing shall . . . obey traffic control devices [and] proceed through the railroad-highway grade crossing only if it is safe to completely pass through the entire railroad-highway grade crossing without stopping." Section 66-7-341 embodies what has been called the "stop, look, and listen" rule. See Vigil, 521 F.Supp.2d at 1211. Moreover,

> [i]n an unbroken line of decisions, the New Mexico Supreme Court has established a course of conduct for a traveler approaching an open, unguarded railroad crossing which requires him to stop, look and listen for trains using the tracks, and the act of looking and listening must be performed in such manner as to make it reasonably effective.

Chicago, R. I. & P. Ry. Co. v. McFarlin, 336 F.2d 1, 2 (10th Cir. 1964).

The Court cannot say as a matter of law that Ms. Duran breached her duty to stop, look, and listen for oncoming trains, and to do so in an effective manner, because it is not "perfectly clear" that as she was approaching the tracks, there was a train for Ms. Duran to observe. See Pierce v. Ford Motor Co., 190 F.2d 910, 915 (4th Cir. 1951) ("It is only where it is perfectly clear that there are no issues in the case that a summary judgment is proper."). According to the Duran parties, Ms. Duran was already on the tracks (and, therefore, necessarily beyond the adjacent stop sign and crossbucks) when the train cleared the escarpment 4,000 feet west of the crossing where she and Mr. Valencia were struck. They

24

maintain that "[a]s it cleared the last curve over 4,000 feet west of the crossing, the crossing

and Carol Duran's truck would have been clearly visible to the train crew.  This gave the

crew 43 seconds . . . prior to the crossing to take action. . . ." [Doc. 360 at 3].  Were the jury

to accept this version of the events, it could reasonably infer that there was no train for Ms.

Duran to have perceived while approaching the tracks.  By contrast, BNSF posits that Ms.

Duran's truck was on the tracks for only 10 to 14 seconds before it was struck. [Doc. 414 at

3].  Were the jury to accept this version of the events, it could reasonably infer that Ms.

Duran should have seen and heard the train as she approached the tracks, since the train

would have been nearing the crossing for as many as 33 seconds before Ms. Duran drove

onto it.  BNSF's motion for partial summary judgment with respect to its allegation that Ms.

Duran breached her duty to maintain a proper lookout for oncoming trains will be denied.

### 3. Whether Mr. Valencia was Negligent for Failure to Maintain a Proper Lookout for Oncoming Trains

With respect to Mr. Valencia, BNSF argues that he

> was negligent for failing to keep a proper lookout for
> approaching trains, in violation of his common law duties [as
> well as for] consuming marijuana shortly before the accident,
> thereby becoming impaired while acting within the course and
> scope of his duty as an employee of Lafarge, directing
> commercial dump truck drivers near railroad tracks. . . .

[Doc. 363 at 4].  As the party moving for summary judgment with respect to Mr. Valencia's

alleged failure to maintain a proper lookout, BNSF bears the burden of "show[ing] that the

record as a whole satisfies each essential element of its case and negates any affirmative

defenses in such a way that no rational trier of fact could find for the non-moving party.  See

19 Solid Waste Dep't Mechanics, 156 F.3d at 1071.  For purposes of this motion, then, BNSF bears the burden of demonstrating that Mr. Valencia failed to keep a proper lookout for oncoming trains.

However, the sum of BNSF's summary-judgment proof on this point is that "[t]here is no evidence that . . . Mr. Valencia ever looked for or toward the train." [Doc. 363 at 12]. Conversely, there is no evidence that Mr. Valencia *did not* look for or toward the train.[11]  "In the absence of any evidence as to what the deceased did just prior to the accident, it is never to be presumed that he was negligent."  De Padilla v. Atchison, T. & S. F. Ry. Co., 120 P. 724, 729 (N.M.Terr. 1911).  To be sure, in the context of railways, "in the absence of evidence to the contrary, there [is] a presumption that the deceased stopped, looked, and listened."  Baltimore & P.R. Co. v. Landrigan, 191 U.S. 461, 473-474 (1903).[12]  Because

---

[11]   There is, for example, no cited testimony from Gerardo Ortiz, the only eyewitness to the collision, as to whether he observed Mr. Valencia look (or fail to look) toward the train, nor does he appear to have been questioned on that point. [See Doc. 363; Exh. 14, Ortiz depo; Doc. 410; Exh. E, Ortiz depo.; Doc. 420; Exh. 2, Ortiz depo.].

[12]   The Landrigan Court further commented:

> In the absence of all evidence tending to show whether the plaintiff's intestate stopped, looked, and listened before attempting to cross the . . . track, the presumption would be that he did. But that presumption may be rebutted by circumstantial evidence, and it is a question for the jury whether the facts and circumstances proved in this case rebut that presumption, and if they find that they do, they should find that he did not stop and look and listen; but if the facts and circumstances fail to rebut such presumption, then the jury should find that he did so stop and look and listen. In order to justify them in finding that he did not, all the evidence tending to show that should be weightier in the minds of the jury than that tending to show the contrary.

Landrigan, 191 U.S. at 471-472.

BNSF has not satisfied its summary-judgment burden with respect to its claim that Mr. Valencia failed to keep a proper lookout for oncoming trains, its motion will be denied on this point.

### 4. Whether the Actions of Mr. Valencia Constituted Negligence Per Se

BNSF's final argument with respect to Mr. Valencia is that he owed—but breached—a duty "to perform [his] work duties free from the effects of 'a depressant, stimulant or hallucinogenic drug.'" [Id. at 20]. In support of this argument, BNSF cites two New Mexico workers' compensation statutes.[13]

_____

[13]  Section 52-1-12 provides, in pertinent part, that

> [n]o compensation is payable from any employer under the provisions of the Workers' Compensation Act if the injury to the person claiming compensation was occasioned solely by the person being under the influence of a depressant, stimulant or hallucinogenic drug as defined in the New Mexico Drug, Device and Cosmetic Act or under the influence of a narcotic drug as defined in the Controlled Substances Act. . . .

N.M. STAT. ANN. § 52-1-12 (1978).  Section 52-1-12.1 provides, in pertinent part, that

> [t]he compensation otherwise payable a worker pursuant to the Workers' Compensation Act shall be reduced ten percent in cases in which the injury to or death of a worker is not occasioned by the intoxication of the worker as stated in Section 52-1-11 NMSA 1978 or occasioned solely by drug influence as described in Section 52-1-12 NMSA 1978, but voluntary intoxication or being under the influence of a depressant, stimulant or hallucinogenic drug as defined in the New Mexico Drug, Device and Cosmetic Act or under the influence of a narcotic drug as defined in the Controlled Substances Act . . . is a contributing cause to the injury or death.

N.M. STAT. ANN. § 52-1-12.1 (1978).

27

Assuming without deciding that the statutes cited by BNSF establish the applicable standard of care, material factual issues exist as to whether, as BNSF maintains, Mr. Valencia was impaired by marijuana at the time of the collision.  The issue is, in fact, hotly contested and is the subject of a "battle of the experts" between the Duran parties' proposed expert, Steven B. Karch, M.D., and BNSF's proposed expert, Don C. Fisher, M.D., both of whose proffered testimony is sought to be excluded through pending motions in limine. [See Docs. 394, 491, and 514].  Because of the outstanding motions in limine, the Court will defer its ruling with respect to BNSF's allegation that Mr. Valencia violated both common law and statutory obligations "to perform his duties free from the effects of [marijuana] intoxication." [Doc. 363 at 20].

## III. CONCLUSION

On the basis of the foregoing, the Court will grant in part, deny in part, and defer its ruling in part with respect to *BNSF Railway Company's First Motion for Partial Summary Judgment, that Carol Duran and Robert Valencia were Negligent and Negligent Per Se* [Doc. 363].

**IT IS, THEREFORE, ORDERED** that *BNSF Railway Company's First Motion for Partial Summary Judgment, that Carol Duran and Robert Valencia were Negligent and Negligent Per Se* [Doc. 363] is **GRANTED in PART, DENIED in PART, and RULING DEFERRED in PART**;

**IT IS FURTHER ORDERED** that *BNSF Railway Company's First Motion for Partial Summary Judgment, that Carol Duran and Robert Valencia were Negligent and Negligent Per Se* [Doc. 363] is **GRANTED** with respect to BNSF's allegation that Carol Duran was negligent per se in driving her truck onto the railroad-track crossing at milemarker 14 and stopping;

**IT IS FURTHER ORDERED** that a ruling is **DEFERRED** on *BNSF Railway Company's First Motion for Partial Summary Judgment, that Carol Duran and Robert Valencia were Negligent and Negligent Per Se* [Doc. 363] with respect to BNSF's allegation that Robert Valencia violated both common law and statutory obligations to perform his duties free from the effects of marijuana intoxication.

**IT IS FURTHER ORDERED** that, in all other respects, *BNSF Railway Company's First Motion for Partial Summary Judgment, that Carol Duran and Robert Valencia were Negligent and Negligent Per Se* [Doc. 363] is **DENIED**.

**SO ORDERED** this 22nd day of January, 2009, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge

29