**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

BNSF RAILWAY COMPANY,

      Plaintiff,                                               CIVIL NO. 06-1076 MCA/LFG

vs.

LAFARGE SOUTHWEST, INC.; STELLA
R. VALENCIA, Personal Representative of the
Estate of Robert J. Valencia; and GREGORY
MARTINEZ and DARLENE COLEMAN,
Personal Representatives of the Estate of
Carol E. Duran,

      Defendants.
========================================

STELLA R. VALENCIA, individually, and as
Personal Representative of the Estate of Robert J.
Valencia, JOHN KELLY VALENCIA, DESIREE
RICHELLE VALENCIA, STEPHANIE ESTELLE
VALENCIA, and LILLIAN S. VALENCIA,

      Counter Claimants/Cross-Claimants/
      Third-Party Plaintiffs,

vs.

BNSF RAILWAY COMPANY, and DARLENE
COLEMAN, Personal Representative of the
Estate of Carol E. Duran,

      Counter-Defendants/Cross-Defendants,

MIKE TAFT, d/b/a Taft Construction;
and EL PASO NATURAL GAS COMPANY

      Third-Party Defendants.
========================================

LAFARGE SOUTHWEST, INC.

    Third-Party Plaintiff/Cross-Plaintiff

vs.

DARLENE COLEMAN, individually, and as Personal
Representative of the Estate of Carol E. Duran; GREG
GUTIERREZ and MATTHEW RAY DURAN, individually,

    Plaintiffs,

vs.

BNSF RAILWAY COMPANY; LAFARGE SOUTHWEST,
INC.; STELLA VALENCIA, Personal Representative of the
Estate of Robert J. Valencia; MIKE TAFT, d/b/a Taft
Construction; and EL PASO NATURAL GAS CO.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Duran parties' *Motion in Limine to Exclude Fact of Settlements with Other Parties* [Doc. 523], filed November 10, 2008. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies the motion.

## I. BACKGROUND

This action arises from a fatal collision between an eastbound freight train operated by Plaintiff BNSF Railway Company and a commercial dump truck that was being driven by decedent Carol Duran. On November 1, 2006, Ms. Duran, a contractor for Defendant/Third-Party Plaintiff Lafarge Southwest, Inc., was delivering gravel to a

2

construction site near the railroad tracks when, at the apparent direction of her supervisor, Lafarge employee and decedent Robert Valencia, she stopped her truck on a crossing on the tracks in order to speak with him.  Both Ms. Duran and Mr. Valencia were killed as a result of the train colliding with Ms. Duran's fully loaded truck.

On November 3, 2006, BNSF filed a *Complaint for Property Damage* against the estates of Ms. Duran and Mr. Valencia and Lafarge Southwest, Inc., alleging that it sustained property damage in an amount in excess of $75,000 as a proximate result of the negligent acts and omissions of Ms. Duran and Mr. Valencia. [See generally Doc. 1].  On November 16, 2006, BNSF amended its complaint to add a cause of action for negligence *per se* and on January 22, 2007, filed its *Second Amended Complaint for Property Damage*.  [Docs. 3, 13]. On February 5, 2007 and February 26, 2007, the Valencia parties[1] and the Duran parties,[2] respectively, filed wrongful-death counterclaims against BNSF.

Among the pretrial motions filed in this matter is the one currently before the Court, whereby the Valencia parties and the Duran parties move the Court, pursuant to Rule 408 of the Federal Rules of Evidence, to exclude the fact that they have settled with some of the other parties in this litigation, including Lafarge Southwest, Inc., the Estate of Robert Valencia, the Estate of Carol Duran, and Mike Taft d/b/a/ Taft Construction.

---

[1] This group of litigants includes the estate of Robert Valencia and individual relatives of Mr. Valencia and is referred to here as "the Valencia parties."

[2] This group of litigants includes the estate of Carol Duran and individual relatives of Ms. Duran and is referred to here as "the Duran parties."

In May 2008, several of the parties entered into a "Settlement Agreement, Mutual Release and Indemnity Agreement" (the "Settlement Agreement"). These "Settling Parties" are Lafarge,[3] the Valencia parties, the Duran parties, and the two insurance parties, EMC and HUB.[4]

The Settlement Agreement provides that each of the Settling Parties all release each other from any claims related to this lawsuit. [Doc. 554-2 at 2–3 (Settlement Agreement ¶ 1.0).] The Settlement Agreement provides that, as consideration for the releases, EMC (on its own behalf on behalf of its insured, Gregory Gutierrez as Personal Representative of the Estate of Carol Duran), Lafarge and HUB shall make payments into an attorney trust account and that the Valencia parties and the Duran parties shall receive these payments. [Id. at 4 (Settlement Agreement ¶ 2.0).] In return, the Valencia parties and the Duran parties "agree to defend, indemnify and hold harmless Lafarge, the Estate of Carol Duran, and the Estate of Robert Valencia, through their personal representatives, against any property damage claim that was brought or that could have been brought or that may be brought in the future by BNSF[.]" [Id. at 5 (Settlement Agreement ¶ 2.2).]

With respect to the funds in the attorney trust account, the Settlement Agreement requires the Duran parties and the Valencia parties to preserve a sufficient amount of the settlement proceeds deposited into the attorney trust account "to satisfy any award of

---

[3]"Lafarge" as referred to here consists of Lafarge Southwest, Inc. and Lafarge North America, Inc.

[4]The Settlement Agreement indicates that EMC's insured is Gregory Gutierrez as Personal Representative of the Estate of Carol Duran. [Doc. 554-2 at 4.]

damages, costs, fees and expenses that may be awarded to BNSF in [this lawsuit]." [Id. (Settlement Agreement ¶ 2.2).] Furthermore, the Valencia parties agree to assume the defense of Defendant Stella Valencia as Personal Representative of the Estate of Robert Valencia, and the Duran parties agree to assume the defense of Defendant Gregory Gutierrez as Personal Representative of the Estate of Carol Duran. [Id. at 5–6 (Settlement Agreement ¶¶ 2.4, 2.5).] The Duran parties also agree to assume Lafarge's defense. [Id. at 6 (Settlement Agreement ¶ 2.6).]

## II. ANALYSIS

Rule 408 of the Federal Rules of Evidence prohibits the use of evidence of compromise when it is "offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction." Fed.R.Evid. 408. Evidence of compromise need not be excluded if it is not offered for a prohibited purpose. Id. An example of a permissible purpose is "proving a witness's bias or prejudice." Id.

The Valencia parties and the Duran parties argue that evidence of the Settlement Agreement is inadmissible under Rule 408 of the Federal Rules of Evidence because the real purpose for which it would be offered would be "to make an end run around Rule 408 and to suggest that the settlements indicate fault on the part of the settling parties." [Doc. 523 at 4.] They also assert that disclosure of the settlements would be prejudicial because it "would allow the jury to speculate improperly on any number of irrelevant matters including the purpose of the settlements, the amount of the settlements, the nature of the claims

5

resolved by the settlements and other matters that have absolutely nothing to do with either damages, liability or comparative fault." [Id.] They also claim that it would violate the public policy in favor of settlements if "the fact of settlement were then allowed to contaminate the remainder of the case." [Id.] As an alternative to exclusion, they request that, should the Court conclude that a reference to the settlement agreements is permitted, the Court itself, rather than the opposing parties instruct the jury on the fact of the settlements and include a limiting instruction specifically informing the jury that it is to draw no conclusions or inferences therefrom. [Id. at 4–5.]

In response, BNSF argues that the Settlement Agreement is admissible to show bias. According to BNSF, the settlement has transformed the Duran, Valencia, and Lafarge parties from adversaries to allies against BNSF. [Doc. 554 at 2.]

The Court concludes that the fact of settlement is admissible for the limited purpose of showing bias. In reaching this conclusion, the Court notes that the Duran and Valencia parties have agreed to indemnify Lafarge against any judgment that BNSF may obtain against it. Furthermore, the money to satisfy an award of damages against Lafarge apparently is to come out of the settlement proceeds, thereby potentially reducing the amount available to be distributed to the Duran and Valencia parties.

The Court is not persuaded by the Duran and Valencia parties' arguments that admitting evidence of the settlement is akin to an "end run" around Rule 408 and that it is against the public policy favoring settlement. "Rule 408 is inapplicable when compromise evidence is offered for a purpose other than to prove the validity, invalidity, or amount of a

disputed claim." Fed.R.Evid. 408 advisory committee's note. Evidence relating to a settlement is admissible to show that the parties are in a non-adverse relationship to the extent it tends to make their respective positions less credible. Brocklesby v. United States, 767 F.2d 1288, 1292–93 & n.2, n.3 (9th Cir. 1985); see also Shaw v. Mast Adver. & Publ'g, Inc., 715 F.Supp. 1503, 1505 (D. Kan. 1989) (evidence of settlement admissible to show potential bias of witness).

The Court is also unpersuaded that a statement by the Court simply informing the jurors of the bare fact of settlement is sufficiently adequate to permit the jury to evaluate a determination of alleged witness bias. The structure of the settlement in the case appears equally as relevant as the fact of settlement. The "importance of informing the jurors fully so that they can carefully judge the credibility of each witness in making their fact determination may in some situations outweigh the desire to encourage settlements." Reichenbach v. Smith, 528 F.2d 1072, 1075 (5th Cir. 1976).

Because the structure of the Settlement Agreement may bear significantly on the issue of witness bias and credibility, the Court concludes that evidence of the settlement should not be excluded. In light of the complexity of this case, the Court cannot predict how the issue of settlement may arise and specific rulings will have to await the context of trial. However, at this time, the Court will permit counsel to cross exam—on the subject of settlement—those witnesses who arguably may exhibit bias on account of the settlement, for the purpose of examining the witness's credibility. Counsel must request to approach the bench and seek direction from the Court prior to cross-examining a witness on the subject

of settlement.

In deciding the extent of evidence of settlement to permit, the Court balances the policy of encouraging settlements with the need for evaluating the credibility of the witness. See Reichenbach, 528 F.2d at 1076 (holding that when the existence of a settlement agreement goes directly to the issue of credibility, the better approach is to permit the evidence and allow cross-examination). The relevance of any such testimony also is weighed against "the danger of unfair prejudice, confusion of the issues, or misleading the jury" as well as "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. In order to minimize the danger of unfair prejudice and the risk of jury confusion of the issues, the Court will not permit the wholesale admission of the Settlement Agreement document, even in redacted form. The Court also will entertain proposed limiting instructions from the parties, if requested. Furthermore, the Court will not allow, in any event, any testimony relating to the value or dollar amount of settlement.

Finally, in its response, BNSF points to evidence and prior statements by the Duran, Valencia, and Lafarge parties that allegedly demonstrates that their positions prior to settlement contradict the positions these parties assumed after settlement. However, Rule 408 prohibits the use of evidence of compromise to impeach witnesses "through a prior inconsistent statement or contradiction." Fed.R.Evid. 408(a); see also EEOC v. Gear Petroleum, Inc., 948 F.2d 1542, 1545–46 (10th Cir. 1991). Accordingly, the Court will not permit witnesses to be impeached through prior inconsistent statements or contradictions.

## III. CONCLUSION

On the basis of the foregoing, the Court will deny the *Motion in Limine to Exclude Fact of Settlements with Other Parties* [Doc. 523], filed November 10, 2008. As always, this pretrial evidentiary ruling is subject to reconsideration in the event that unforeseen circumstances or a change in context should arise during the trial.

**IT IS, THEREFORE, ORDERED** that the *Motion in Limine to Exclude Fact of Settlements with Other Parties* [Doc. 523], filed November 10, 2008, is **DENIED**.

**SO ORDERED** this 26th day of January, 2009, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge