**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

BNSF RAILWAY COMPANY,

      Plaintiff,                                        CIVIL NO. 06-1076 MCA/LFG

vs.

LAFARGE SOUTHWEST, INC.; STELLA
R. VALENCIA, Personal Representative of the
Estate of Robert J. Valencia; and GREGORY
MARTINEZ and DARLENE COLEMAN,
Personal Representatives of the Estate of
Carol E. Duran,

      Defendants.
========================================

STELLA R. VALENCIA, individually, and as
Personal Representative of the Estate of Robert J.
Valencia, JOHN KELLY VALENCIA, DESIREE
RICHELLE VALENCIA, STEPHANIE ESTELLE
VALENCIA, and LILLIAN S. VALENCIA,

      Counter Claimants/Cross-Claimants/
      Third-Party Plaintiffs,

vs.

BNSF RAILWAY COMPANY, and DARLENE
COLEMAN, Personal Representative of the
Estate of Carol E. Duran,

      Counter-Defendants/Cross-Defendants,

MIKE TAFT, d/b/a Taft Construction;
and EL PASO NATURAL GAS COMPANY

      Third-Party Defendants.
========================================

LAFARGE SOUTHWEST, INC.

    Third-Party Plaintiff/Cross-Plaintiff

vs.

DARLENE COLEMAN, individually, and as Personal Representative of the Estate of Carol E. Duran; GREG GUTIERREZ and MATTHEW RAY DURAN, individually,

    Plaintiffs,

vs.

BNSF RAILWAY COMPANY; LAFARGE SOUTHWEST, INC.; STELLA VALENCIA, Personal Representative of the Estate of Robert J. Valencia; MIKE TAFT, d/b/a Taft Construction; and EL PASO NATURAL GAS CO.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *The Duran Parties' Motion in Limine to Exclude Opinions of Lewis Grill as Inadmissible Under the Rules of Evidence and Daubert* [Doc. 520], filed November 10, 2008. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies the motion.

## I. BACKGROUND

This action arises from a fatal collision between an eastbound freight train operated by Plaintiff BNSF Railway Company and a commercial dump truck that was being driven by decedent Carol Duran. On November 1, 2006, Ms. Duran, a contractor for

Defendant/Third-Party Plaintiff Lafarge Southwest, Inc., was delivering gravel to a construction site near the railroad tracks when, at the apparent direction of her supervisor, Lafarge employee and decedent Robert Valencia, she stopped her truck on a crossing on the tracks in order to speak with him.  Both Ms. Duran and Mr. Valencia were killed as a result of the train colliding with Ms. Duran's fully loaded truck.

On November 3, 2006, BNSF filed a *Complaint for Property Damage* against the estates of Ms. Duran and Mr. Valencia and Lafarge Southwest, Inc., alleging that it sustained property damage in an amount in excess of $75,000 as a proximate result of the negligent acts and omissions of Ms. Duran and Mr. Valencia. [See generally Doc. 1].  On November 16, 2006, BNSF amended its complaint to add a cause of action for negligence *per se* and on January 22, 2007, filed its *Second Amended Complaint for Property Damage*.  [Docs. 3, 13]. On February 5, 2007 and February 26, 2007, the Valencia parties[1] and the Duran parties,[2] respectively, filed wrongful-death counterclaim against BNSF.

Among the pretrial motions filed in this matter is the one currently before the Court, whereby the Duran parties challenge the admissibility of opinions offered by BNSF's proffered witness, Lewis Grill.  Mr. Grill is a commercial trucking expert who may be called to testify "primarily to Carol Duran's acts and omissions and the practices that apply to her duties as a commercial truck driver." [Doc. 556 at 2].  The Duran parties have moved to

---

[1] This group of litigants includes the estate of Robert Valencia and individual relatives of Mr. Valencia and is referred to here as "the Valencia parties."

[2] This group of litigants includes the estate of Carol Duran and individual relatives of Ms. Duran and is referred to here as "the Duran parties."

exclude Mr. Grill's opinions on the ground that he is not qualified to testify with respect to the opinions he offers. [See generally Doc. 520].

## II. ANALYSIS

Rule 702 of the Federal Rules of Evidence imposes a special gatekeeping obligation on this Court to ensure that expert testimony is not admitted at trial unless it is both relevant and reliable. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert v. Merrell-Dow Pharm., Inc., 509 U.S. 579, 592-93 (1993). The relevance of such testimony also must be weighed against "the danger of unfair prejudice, confusion of the issues, or misleading the jury" as well as "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. While the Court is not required to consider any particular set of factors or utilize a particular procedure in making such determinations with respect to expert testimony, the Court must make *some* kind of determination on the record in order to demonstrate that it has performed its gatekeeping function. See United States v. Velarde, 214 F.3d 1204, 1209 (10th Cir. 2000); Goebel v. Denver & Rio Grande W. R.R. Co., 215 F.3d 1083, 1088 (10th Cir. 2000). As part of its gatekeeping function, and in addition to determining whether the proposed expert is qualified to offer an opinion, the Court must also determine whether (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case. Reliability under Daubert is determined by looking at whether the reasoning or methodology underlying the testimony is scientifically valid, and relevance is determined by whether that

reasoning or methodology properly can be applied to the facts in issue.  Smith v. Sears Roebuck and Co., 232 Fed.Appx. 780, 781 (10th Cir. 2007).

The Court concludes that Mr. Grill qualifies as an expert in the field of commercial trucking.  Mr. Grill possesses 40 years' of experience as a truck driver, owner operator, truck driver training instructor, truck driver training program director, safety director, and trucking consultant. He is licensed as a commercial driver and has logged approximately 2 million miles driving tractor-trailers in the United States, Canada, Mexico, and Central America.  He is a founder of and currently serves as director of the SAGE Corporation, a Pennsylvania business that operates truck driver training programs at 32 nationwide locations.  Mr. Grill has published books and articles and spoken on the subject of commercial trucking, in general, and driver standards, in particular.  From 1983 to 1988, Mr. Grill served as Director of Operations at the United States Truck Driving School (Denver), in which position he was responsible for the development and design of the school's truck driver training programs. Mr. Grill has provided trial or deposition testimony in numerous state and federal court cases. [See Doc. 367; Exh. 9, Affidavit of Lew Grill].  On the basis of the foregoing, the Court concludes that Mr. Grill qualifies by education, training, and experience as an expert in the field of commercial trucking.

### a. Lewis Grill's opinions concerning maintenance issues in Ms. Duran's vehicle

The Duran parties seek to exclude testimony from Mr. Grill "that the tires on Ms. Duran's vehicle looked badly worn, and there may have been maintenance issues with her vehicle." [Doc. 520 at 6].  BNSF responds, however, that "Mr. Grill has not purported to

provide, and is not providing, any opinion concerning maintenance (or lack of maintenance) of Ms. Duran's truck [and that] "in neither Mr. Grill's reports nor in his deposition testimony does he suggest he would be offering any opinions 'with regard to whether the truck, overall, was below the maintenance required by CFRs' or on any other maintenance issue." [Doc. 556 at 3, 4]. As Mr. Grill's opinions regarding the maintenance of Carol Duran's truck is a non-issue, the Court will deny this part of the motion as moot.

### b. Lewis Grill's testimony that the diesel fuel in Ms. Duran's truck was like a "bomb"

The Duran parties seek to exclude Mr. Grill's testimony that the fuel in Ms. Duran's vehicle was "like a 'bomb' as it sits in a fuel tank and had the train hit the fuel tanks, the train crew could have been killed." [Doc. 520 at 6]. To the extent that Mr. Grill has an opinion with respect to the train crew, and what they knew or did not know, the Duran parties' motion will be granted. However, Mr. Grill's testimony about the fuel being "like a bomb," and the possibility that a fire could have resulted from a direct strike upon Ms. Duran's fuel tank is relevant to the issue of the foreseeable risk that Ms. Duran's vehicle posed to others, and of which the driver is required to be aware. Because Mr. Grill is qualified to testify on this topic, the Duran parties' motion will be denied on this point.

### c. Lewis Grill's opinion concerning what gear Ms. Duran would have been driving on the road that approaches the crossing

The Duran parties seek to exclude testimony from Mr. Grill as to what gear Ms. Duran would have been using upon her approach to the crossing on the ground that Mr. Grill "did nothing to assure himself that the road and the road up to the rails was in substantially the

6

same condition as it was in November 2006." [Doc. 520 at 6]. Mr. Grill's testimony is relevant.

Mr. Grill, driving a dump truck loaded with gravel, conducted three reenactments of Ms. Duran's approach to the crossing at which she was struck in order to "verify the information that [he] had put in [his] Responsive Report with regards to [his] opinions on what gear that [he] felt someone would drive that road on." [Doc. 520; Exh. A, Grill depo. at 26]. He also reviewed a video taken shortly after the accident in which Gerardo Ortiz, a truck driver who preceded Ms. Duran across the tracks on November 1, 2006, stands near, around, and on the crossing and explains what he observed of Ms. Duran's approach to the tracks and Robert Valencia's gesturing toward her. With proper foundation, Mr. Grill may offer such testimony. The Duran parties' challenge goes to the weight of the evidence, not its admissibility. Accordingly, their motion will be denied on this point.

### d. Lewis Grill's opinions concerning alleged violations of 49 CFR 390 *et seq.*

The Duran parties next seek to exclude Mr. Grill's opinions with respect to Ms. Duran's duties and obligations under federal regulations concerning commercial motor vehicle drivers on the ground that the regulations apply to interstate commerce, but Ms. Duran did not conduct interstate business with her one dump truck. [See Doc. 520 at 7].

Ms. Duran was an independent contractor for Lafarge. Lafarge *is* an interstate carrier and subject to federal regulations. Moreover, Regulatory Guidance (Interpretations) provide, in pertinent part, that

7

> "[t]he term 'employee' as defined in § 390.5, specifically includes an independent contractor employed by a motor carrier. The existence of operating authority has no bearing on the issue. *The motor carrier is, therefore, responsible for compliance with the [Federal Motor Carrier Safety Regulations] by its driver employees, including those who are owner-operators.*

[Doc. 556; Exh. B at 2]. Because the Court is not persuaded by the Duran parties' argument that the federal regulations do not apply to Carol Duran, the motion will be denied inasmuch as it relates to excluding Mr. Grill's opinions concerning alleged violations of 49 CFR 390 *et seq.*

### e. Lewis Grill's opinions concerning the operation of the train by the train crew

Finally, the Duran parties seek to exclude Mr. Grill's opinions regarding train operations and the conduct of the crew in this case. [Doc. 520 at 8]. As previously explained in Section II.b., Mr. Grill will not be permitted to testify regarding train operations and/or the conduct of the crew in this case. Importantly, however, Mr. Grill is not being offered to provide opinions on this topic. For that reason, this topic is a non-issue and the Court will deny this part of the motion as moot.

### III. CONCLUSION

On the basis of the foregoing, the Court will deny *The Duran Parties' Motion in Limine to Exclude Opinions of Lewis Grill as Inadmissible Under the Rules of Evidence and Daubert*. As always, these pretrial evidentiary rulings are subject to reconsideration in the event that unforeseen circumstances or a change in context should arise during the trial.

**IT IS, THEREFORE, ORDERED** that *The Duran Parties' Motion in Limine to Exclude Opinions of Lewis Grill as Inadmissible Under the Rules of Evidence and Daubert* [Doc. 520] is **DENIED**.

**SO ORDERED** this 27th day of January, 2009, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge