# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

BNSF RAILWAY COMPANY,

      Plaintiff,　　　　　　　　　　　　　　　CIVIL NO. 06-1076 MCA/LFG

vs.

LAFARGE SOUTHWEST, INC.; STELLA
R. VALENCIA, Personal Representative of the
Estate of Robert J. Valencia; and GREGORY
MARTINEZ and DARLENE COLEMAN,
Personal Representatives of the Estate of
Carol E. Duran,

      Defendants.
========================================

STELLA R. VALENCIA, individually, and as
Personal Representative of the Estate of Robert J.
Valencia, JOHN KELLY VALENCIA, DESIREE
RICHELLE VALENCIA, STEPHANIE ESTELLE
VALENCIA, and LILLIAN S. VALENCIA,

      Counter Claimants/Cross-Claimants/
      Third-Party Plaintiffs,

vs.

BNSF RAILWAY COMPANY, and DARLENE
COLEMAN, Personal Representative of the
Estate of Carol E. Duran,

      Counter-Defendants/Cross-Defendants,

MIKE TAFT, d/b/a Taft Construction;
and EL PASO NATURAL GAS COMPANY

      Third-Party Defendants.
========================================

LAFARGE SOUTHWEST, INC.

     Third-Party Plaintiff/Cross-Plaintiff

vs.

DARLENE COLEMAN, individually, and as Personal
Representative of the Estate of Carol E. Duran; GREG
GUTIERREZ and MATTHEW RAY DURAN, individually,

     Plaintiffs,

vs.

BNSF RAILWAY COMPANY; LAFARGE SOUTHWEST,
INC.; STELLA VALENCIA, Personal Representative of the
Estate of Robert J. Valencia; MIKE TAFT, d/b/a Taft
Construction; and EL PASO NATURAL GAS CO.,

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *The Valencia Parties' Motion in Limine to Exclude Certain Evidence at Trial* [Doc. 513], filed November 10, 2008. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants the motion in part, denies the motion in part and defers a ruling in part.

## I. BACKGROUND

This action arises from a fatal collision between an eastbound freight train operated by Plaintiff BNSF Railway Company and a commercial dump truck that was being driven

by decedent Carol Duran.  On November 1, 2006, Ms. Duran, a contractor for Defendant/Third-Party Plaintiff Lafarge Southwest, Inc., was delivering gravel to a construction site near the railroad tracks when, at the apparent direction of her supervisor, Lafarge employee and decedent Robert Valencia, she stopped her truck on a crossing on the tracks in order to speak with him.  Both Ms. Duran and Mr. Valencia were killed as a result of the train colliding with Ms. Duran's fully loaded truck.

On November 3, 2006, BNSF filed a *Complaint for Property Damage* against the estates of Ms. Duran and Mr. Valencia and Lafarge Southwest, Inc., alleging that it sustained property damage in an amount in excess of $75,000 as a proximate result of the negligent acts and omissions of Ms. Duran and Mr. Valencia. [See generally Doc. 1].  On November 16, 2006, BNSF amended its complaint to add a cause of action for negligence *per se* and on January 22, 2007, filed its *Second Amended Complaint for Property Damage*.  [Docs. 3, 13]. On February 5, 2007 and February 26, 2007, the Valencia parties[1] and the Duran parties,[2] respectively, filed wrongful-death counterclaims against BNSF.  The Valencia parties seek damages to compensate for, among other things: lost earnings, lost earning capacity, and value of lost household services; the value of life, apart from earning capacity; and loss of enjoyment of life. [Doc. 91 at 6-7].

---

[1] This group of litigants includes the estate of Robert Valencia and individual relatives of Mr. Valencia and is referred to here as "the Valencia parties."

[2] This group of litigants includes the estate of Carol Duran and individual relatives of Ms. Duran and is referred to here as "the Duran parties."

In the pretrial motion that is currently before the Court, the Valencia parties seek to exclude from trial any evidence regarding Robert Valencia's (a) medical history; (b) alleged marijuana use; and (c) criminal record, on the ground that this evidence constitutes impermissible character evidence. They also seek the exclusion of any and all evidence of a videotape of Gerardo Ortiz, another truck driver who preceded Carol Duran across the tracks, that was made at the crossing approximately one month after the collision. [See generally Doc. 513].

## II. ANALYSIS

"Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. All relevant evidence is generally admissible, whereas irrelevant evidence is not admissible. Fed.R.Evid. 402. Character evidence has been defined as "'[e]vidence of [a] person's moral standing in [the] community based on reputation." Phillips v. General Motors Corp., 2000 WL 1407896, at *3 (E.D.La. 2000) (*quoting* BLACK'S LAW DICTIONARY 158 (abr. 6th ed.1991)). Additionally, the term "'character trait' refers to elements of one's disposition, 'such as honesty, temperance, or peacefulness.'" United States v. West, 670 F.2d 675, 682 (7th Cir. 1982), *overruled* by United States v. Green, 258 F.3d 683 (7th Cir. 2001). Because of "the high degree of prejudice that inheres in character evidence[,]" Perrin v. Anderson, 784 F.2d 1040, 1044 (10th Cir. 1986), such evidence is not admissible "for the purpose of proving action in conformity therewith on a particular occasion. . . ." Fed.R.Evid. 404(a).

4

## A. The Valencia Parties' Request to Exclude Evidence of Robert Valencia's Medical History

The Valencia parties do not specify the precise "medical history" they maintain is inadmissible, but they ask the Court to exclude "any and all evidence" of Mr. Valencia's medical history because it amounts to "impermissible character evidence" under Rule 404. [Doc. 513 at 4]. In response, BNSF submits that Mr. Valencia's medical history reveals that he suffered from hearing problems, was a life-long smoker, had mild emphysema and heart disease, and was overweight. [Doc. 562 at 3-4].

As an initial matter, this Court notes its agreement with other courts that have determined that evidence of an individual's medical history is not excludable under Rule 404 because such evidence does not constitute character evidence. See, e.g., Phillips, 2000 WL 1407896, at *3 (denying Rule 404-based motion in limine to exclude medical records and testimony regarding individual's history of hypoglycemic episodes, since "neither [that individual's] physical condition nor his medical records constitute[d] character evidence. . . ."); Bemben v. Hunt, 1995 WL 27223, at *2 (N.D.Ill. 1995) (denying Rule 404(a)-based motion in limine seeking to exclude evidence of a medical and psychiatric history that included, among other things, plaintiff's treatment and hospital admission for depression, since "medically diagnosed ailments[] are not generally thought of as character traits.").

The Court determines that evidence of some of Mr. Valencia's medical history is relevant, and its probative value not substantially outweighed by the danger of unfair

5

prejudice, where the Valencia parties are seeking damages to compensate for, among other things, the loss of Mr. Valencia's enjoyment of life, as well as the loss of the value of his life. [See Doc. 91 at 6-7]; see also Romero v. Byers, 872 P.2d 840, 846 (N.M. 1994) (in action brought pursuant to Wrongful Death Act, noting that juries have "long been instructed that, '[i]n determining the monetary worth of the life of the deceased, you should consider the age, earning capacity, health, habits and life expectancy of the deceased.'"). Additionally, the Court agrees with BNSF that evidence of Mr. Valencia's hearing problems may be relevant to the issue of his failure to move from the railroad tracks as the train approached.

### B. The Valencia Parties' Request to Exclude Evidence of Robert Valencia's Alleged Marijuana Use

The Scientific Laboratory Division of the Office of the Medical Investigator issued a toxicology report following the autopsy that was performed on Mr. Valencia. That report reveals that Delta-9-Tetrahydrocannabinol (THC), the principal psychoactive constituent of marijuana, was found in an amount of 23 ng/ml in a sample of Mr. Valencia's pleural blood, and that 11-Nor-9-Carboxy-Delta-9-Tetrahydrocannabinol (Carboxy-THC), a metabolite of THC that is the major psychoactive constituent of marijuana, was found in an amount of 12 ng/ml. [See Doc. 491; Exh. 1, Valencia Toxicology Report at 1]. The Valencia parties seek to exclude "any and all evidence of Robert Valencia's alleged marijuana use" as inadmissible character evidence because "[t]here is no question that Mr. Valencia was not using marijuana at the time of this collision[, n]or is there any eyewitness testimony that suggested that Mr. Valencia was using marijuana and/or under the influence of marijuana shortly prior to or at

the time of this incident." [Doc. 513 at 4].

BNSF does not appear to suggest that Mr. Valencia was actively (literally) smoking marijuana at the time of the collision, but it points to the toxicology report as evidence that Mr. Valencia had marijuana in his system at the time of his death. [See Doc. 562 at 4]. Expert testimony, which is the subject of several separate motions *in limine*, conflicts as to what the information and numbers in the toxicology report mean with respect to when Mr. Valencia consumed marijuana and if he was impaired at the time of the collision. That marijuana was present in Mr. Valencia's system at the time of death is relevant for the purpose of assisting the jury in understanding why Mr. Valencia may have been standing on the railroad tracks and why he apparently signaled Mr. Ortiz and Ms. Duran to stop their trucks thereon. The Court concludes that this evidence is not relevant for any other purpose. The Court, at the request of the parties, will give a limiting instruction as to its use. Finally, while evidence of Mr. Valencia's marijuana use is inherently prejudicial, the Court concludes that, under the circumstances, its probative value not substantially outweighed by the danger of unfair prejudice.[3]

### C. The Valencia Parties' Request to Exclude Evidence of Robert Valencia's Criminal Record

Without elaborating, the Valencia parties seek to exclude "any and all evidence regarding Robert Valencia's criminal record because it is impermissible character evidence."

---

[3] The Valencia parties' argument that "all eyewitness testimony regarding Mr. Valencia's actions on the day of this incident[] was that he was acting normal[ly,]" is one going to the weight of the evidence, not its admissibility. [See Doc. 513 at 4].

[Doc. 513 at 5]. BNSF responds that

> [p]olice and court records demonstrate that Mr. Valencia was charged and found guilty of the misdemeanor crime of marijuana possession under an ounce. The records indicate that marijuana was found in Mr. Valencia's possession in Otero County, New Mexico on November 1, 1997. Mr. Valencia's criminal records are relevant to establish his use of marijuana as well as his habit in using marijuana.

[Doc. 562 at 5].

The Court grants the Valencia parties' motion in limine inasmuch as it is related to the exclusion of a single misdemeanor conviction for marijuana possession in 1997. The fact of such conviction, standing alone, is not sufficient to establish Mr. Valencia's habitual or regular use of marijuana. It remains unclear what, if any, other criminal history is relevant.

### D. The Valencia Parties' Request to Exclude the DVD/Videotaped Interview of Gerardo Ortiz

Gerardo Ortiz is a commercial truck driver who was delivering a load of base course to the site in question on November 1, 2006. Mr. Ortiz has explained that as he approached the railroad tracks, Mr. Valencia signaled to him in a manner that caused Mr. Ortiz to believe he was being asked to stop his truck on the tracks. For safety reasons, Mr. Ortiz did not stop on the tracks but, instead, crossed over before stopping. Once across, Mr. Ortiz looked back and saw Ms. Duran approaching. According to Mr. Ortiz, he observed Mr. Valencia signal Ms. Duran in the same manner as he had signaled at Mr. Ortiz. Mr. Ortiz has described then hearing a "blow," and looking back to see the train carrying Ms. Duran's truck.

On December 3, 2006, Gerardo Ortiz, through an interpreter, gave a DVD/videotaped

8

interview in which he describes the events of November 1, 2006. In the interview, Mr. Ortiz explains, among other things, how Mr. Valencia (1) walked into the middle of the tracks and held up his hand to signal Mr. Ortiz, before moving off of the tracks to speak with Mr. Ortiz, and (2) returned to the middle of the tracks where he signaled Ms. Duran in the same way he had signaled Mr. Ortiz. The DVD shows Mr. Ortiz extending his right arm and hand, palm facing out, above his head to demonstrate Mr. Valencia's signaling. [Doc. 513; Exh. 1; Ortiz interview (DVD)]. Mr. Ortiz also describes experiencing shock and disbelief after the collision; jumping out of his truck and calling Mr. Valencia's name; seeing "part of Carol's truck on top of Robert's pickup;" and running to Mr. Valencia, who was non-responsive. [Id.; Exh. 1; Ortiz interview (DVD)].

The interview was conducted on and around the crossing where Mr. Valencia and Ms. Duran were struck. Thus, the resulting videotape shows the tracks, a stop sign at the tracks, the crossing where the collision occurred, and the crossing itself (a dirt and gravel road that runs perpendicular to the tracks on either side of the crossing). An expansive view of the landscape also is visible on the DVD.

The Valencia parties seek the exclusion of this DVD on grounds that it (1) constitutes hearsay; (2) is cumulative; and (3) was not taken under oath. [Doc. 513]. BNSF counters that the DVD should be admitted because it includes physical demonstrations by Mr. Ortiz (for example, showing where Mr. Valencia stationed himself on the tracks and how Mr. Valencia signaled Mr. Ortiz and Ms. Duran) that cannot be duplicated in a courtroom, and also shows unique images of the crossing and the surrounding area that will be helpful to the jury's

9

understanding of the site. [Doc. 562 at 7].

BNSF cites <u>Robinson v. Missouri Pacific R. Co.</u> for the proposition that "[c]ourts in appropriate circumstances may permit demonstrative use of audio or visual presentations which may assist the jury." <u>Robinson v. Missouri Pacific R. Co.</u>, 16 F.3d 1083, 1088 (10th Cir. 1994) (concluding that it was not abuse of discretion for district court to admit video animation depicting collision between train and automobile, but stressing that, "[b]ecause of its dramatic power, trial judges should carefully and meticulously examine proposed animation evidence for proper foundation, relevancy and the potential for undue prejudice."). <u>Robinson</u>, however, dealt with the admissibility of an animated "staged reproduction of facts[,]" <u>id.</u>, whereas in the instant case, BNSF seeks to introduce a DVD of an interview with a trial witness who will be available and testifying at trial.

In this case, Mr. Ortiz will be called as a witness. As a preliminary matter, it is clear that the videotaped interview that he gave constitutes an out-of-court statement. It can be used, for example, for impeachment purposes should Mr. Ortiz testify at trial in a manner inconsistent with his videotaped statement. Also, as a prior statement, the videotape interview could be used to refresh his recollection. (Obviously, if such use is made, the procedure utilized will have to be carefully handled, given that it is the video that will have to be reviewed, as opposed to a written statement. The Court will offer further guidance to counsel on this matter within the context of trial.)

With respect to the matter at hand, BNSF seeks to offer the video tape affirmatively, under the residual hearsay rule, Fed. R. Evid. 807. The Court concludes that the videotaped

interview given by Mr. Ortiz has circumstantial guarantees of trustworthiness. Mr. Ortiz confirmed at his deposition (which was taken under oath) that he gave the interview and that he was truthful in responding to the questions asked during the interview and in the statements that he gave. The statements made in the videotape are offered as evidence of material facts, those facts relating to what the only eye-witness to the accident saw and observed at or about or near the railroad tracks, with respect to the actions of Mr. Valencia and Ms. Duran. The Court further concludes that the statements made on the videotape given in the context of the witness' presence at the site of the accident, and the tape's portrayal of the scene of the accident, the tracks, the road, and the general landscape surrounding the site of the accident, are more probative that any other evidence that BNSF could procure through reasonable efforts. Finally, the Court concludes that the general purposes of these rules and the interests of justice will best be served by admission of the video tape into evidence, with proper foundation. The Court will not, however, permit the use of the videotape as a substitute for, or in lieu of, the testimony of Mr. Ortiz at trial.

### III. CONCLUSION

On the basis of the foregoing, the Court will deny in part *The Valencia Parties' Motion in Limine to Exclude Certain Evidence at Trial* and defer its ruling in part. As always, this pretrial evidentiary ruling is subject to reconsideration in the event that unforeseen circumstances or a change in context should arise during the trial.

**IT IS, THEREFORE, ORDERED** that *The Valencia Parties' Motion in Limine to Exclude Certain Evidence at Trial* [Doc. 513] is **GRANTED in PART, DENIED in PART,**

**and DEFERRED in PART;**

**IT IS FURTHER ORDERED** that *The Valencia Parties' Motion in Limine to Exclude Certain Evidence at Trial* [Doc. 513] is **DENIED** to the extent the Valencia parties seek to exclude evidence of Robert Valencia's medical history;

**IT IS FURTHER ORDERED** that *The Valencia Parties' Motion in Limine to Exclude Certain Evidence at Trial* [Doc. 513] is **DENIED** to the extent the Valencia parties seek to exclude evidence of Robert Valencia's alleged marijuana use prior to his death;

**IT IS FURTHER ORDERED** that *The Valencia Parties' Motion in Limine to Exclude Certain Evidence at Trial* [Doc. 513] is **GRANTED** to the extent the Valencia parties seek to exclude evidence of Robert Valencia's criminal history, represented by the 1997 misdemeanor conviction for possession of marijuana;

**IT IS FURTHER ORDERED** that *The Valencia Parties' Motion in Limine to Exclude Certain Evidence at Trial* [Doc. 513] is **DENIED** to the extent the Valencia parties seek to exclude the DVD of Gerardo Ortiz's December 3, 2006 interview;

**IT IS FURTHER ORDERED** that the Court **DEFERS** its ruling on the admissibility of Mr. Valencia's additional criminal history, if any, until such time as a specific proffer is made to the Court;

**IT IS FURTHER ORDERED** that the pretrial evidentiary rulings set forth herein are subject to reconsideration in the event that unforeseen circumstances or a change in context should arise during the trial.

**SO ORDERED** this 27th day of January, 2009, in Albuquerque, New Mexico.

```
_____
```
                                            **M. CHRISTINA ARMIJO**
                                            United States District Judge