# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

BNSF RAILWAY COMPANY,

      Plaintiff,                              CIVIL NO. 06-1076 MCA/LFG

vs.

LAFARGE SOUTHWEST, INC.; STELLA
R. VALENCIA, Personal Representative of the
Estate of Robert J. Valencia; and GREGORY
MARTINEZ and DARLENE COLEMAN,
Personal Representatives of the Estate of
Carol E. Duran,

      Defendants.

======================================

STELLA R. VALENCIA, individually, and as
Personal Representative of the Estate of Robert J.
Valencia, JOHN KELLY VALENCIA, DESIREE
RICHELLE VALENCIA, STEPHANIE ESTELLE
VALENCIA, and LILLIAN S. VALENCIA,

      Counter Claimants/Cross-Claimants/
      Third-Party Plaintiffs,

vs.

BNSF RAILWAY COMPANY, and DARLENE
COLEMAN, Personal Representative of the
Estate of Carol E. Duran,

      Counter-Defendants/Cross-Defendants,

MIKE TAFT, d/b/a Taft Construction;
and EL PASO NATURAL GAS COMPANY

      Third-Party Defendants.

======================================

LAFARGE SOUTHWEST, INC.

      Third-Party Plaintiff/Cross-Plaintiff

vs.

DARLENE COLEMAN, individually, and as Personal
Representative of the Estate of Carol E. Duran; GREG
GUTIERREZ and MATTHEW RAY DURAN, individually,

      Plaintiffs,

vs.

BNSF RAILWAY COMPANY; LAFARGE SOUTHWEST,
INC.; STELLA VALENCIA, Personal Representative of the
Estate of Robert J. Valencia; MIKE TAFT, d/b/a Taft
Construction; and EL PASO NATURAL GAS CO.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *The Duran Parties' Motion in Limine to Exclude Certain Evidence at Trial* [Doc. 519], filed November 10, 2008.  Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants the motion in part, denies the motion in part and defers its ruling in part.

## I. BACKGROUND

This action arises from a fatal collision between an eastbound freight train operated by Plaintiff  BNSF Railway Company and a commercial dump truck that was being driven

by decedent Carol Duran.   On November 1, 2006, Ms. Duran, a contractor for Defendant/Third-Party Plaintiff Lafarge Southwest, Inc., was delivering gravel to a construction site near the railroad tracks when, at the apparent direction of her supervisor, Lafarge employee and decedent Robert Valencia, she stopped her truck on a crossing on the tracks in order to speak with him.  Both Ms. Duran and Mr. Valencia were killed as a result of the train colliding with Ms. Duran's fully loaded truck.

On November 3, 2006, BNSF filed a *Complaint for Property Damage* against the estates of Ms. Duran and Mr. Valencia and Lafarge Southwest, Inc., alleging that it sustained property damage in an amount in excess of $75,000 as a proximate result of the negligent acts and omissions of Ms. Duran and Mr. Valencia. [See generally Doc. 1].  On November 16, 2006, BNSF amended its complaint to add a cause of action for negligence *per se* and on January 22, 2007, filed its *Second Amended Complaint for Property Damage*.  [Docs. 3, 13]. On February 5, 2007 and February 26, 2007, the Valencia parties[1] and the Duran parties,[2] respectively, filed wrongful-death counterclaims against BNSF.  Among the damages sought by the Duran parties are: lost earnings; loss of enjoyment of life; and value of life. [See Doc. 160 at 11-12; see also Doc. 354 (wherein the Duran parties oppose BNSF's motion to dismiss hedonic-damages claims).

In the pretrial motion that is currently before the Court, the Duran parties seek to

---

[1]  This group of litigants includes the estate of Robert Valencia and individual relatives of Mr. Valencia and is referred to here as "the Valencia parties."

[2]  This group of litigants includes the estate of Carol Duran and individual relatives of Ms. Duran and is referred to here as "the Duran parties."

3

exclude from trial any evidence regarding Carol Duran's (a) medical history; (b) drinking; (c) criminal record; (d) having been referred to as "dingy;" and (e) financial difficulties. They also seek the exclusion of (f) any and all evidence of domestic violence between Ms. Duran and her former husband, Ray Duran; and (g) any and all evidence regarding Ray Duran. [Doc. 519 at 4-8].  According to the Duran parties, any such evidence amounts to inadmissible character evidence or "bad act" evidence, or would prove to be substantially more prejudicial than probative. [See generally id.].

## II. ANALYSIS

"Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed.R.Evid. 401.  All relevant evidence is generally admissible, whereas irrelevant evidence is not admissible.  Fed.R.Evid. 402.  Character evidence has been defined as "'[e]vidence of [a] person's moral standing in [the] community based on reputation."  Phillips v. General Motors Corp., 2000 WL 1407896, at *3 (E.D.La. 2000) (quoting BLACK'S LAW DICTIONARY 158 (abr. 6th ed.1991)).  Additionally, the term "'character trait' refers to elements of one's disposition, 'such as honesty, temperance, or peacefulness.'"  United States v. West, 670 F.2d 675, 682 (7th Cir. 1982), overruled by United States v. Green, 258 F.3d 683 (7th Cir. 2001).  Because of "the high degree of prejudice that inheres in character evidence[,]" Perrin v. Anderson, 784 F.2d 1040, 1044 (10th Cir. 1986), such evidence normally is not admissible "for the purpose of proving action in conformity therewith on a particular occasion. . . ."  Fed.R.Evid. 404(a).

4

### a. The Duran Parties' Request to Exclude All Evidence of Carol Duran's Medical History

Although the Duran parties do not specify the precise "medical history" they maintain is inadmissible, there is evidence in the record that, on at least two occasions, Ms. Duran checked herself into the University of New Mexico's Behavioral Health Center because she felt depressed and suicidal. [Doc. 552; Exh. 1, Coleman depo. at 60]. Additionally, not long before the collision giving rise to the instant litigation, Ms. Duran's children were called to Ms. Duran's home because "she was having feelings of suicide. . . ." [Id., Exh. 1, Coleman depo. at 61]. The adult children arrived to find Ms. Duran scared, crying, "very distraught," and sitting with a gun to her side. [Id., Exh. 1, Coleman depo. at 61].

As an initial matter, this Court notes its agreement with other courts that have determined that evidence of an individual's medical history is not excludable under Rule 404 because such evidence does not constitute character evidence. See, e.g., Phillips, 2000 WL 1407896, at *3 (denying Rule 404-based motion in limine to exclude medical records and testimony regarding individual's history of hypoglycemic episodes, since "neither [that individual's] physical condition nor his medical records constitute[d] character evidence. . . ."); Bemben v. Hunt, 1995 WL 27223, at *2 (N.D.Ill. 1995) (denying Rule 404(a)-based motion in limine seeking to exclude evidence of a medical and psychiatric history that included, among other things, plaintiff's treatment and hospital admission for depression, since "medically diagnosed ailments[] are not generally thought of as character traits.").

5

The Court determines that evidence of Ms. Duran's medical history is relevant, and its probative value not substantially outweighed by the danger of unfair prejudice, where the Duran parties are seeking damages to compensate for, among other things, the loss of Ms. Duran's enjoyment of life.  [See Doc. 160 at 11-12; see also Doc. 354 (Duran parties' opposition to BNSF's motion to dismiss hedonic-damages claims)]; see also Romero v. Byers, 872 P.2d 840, 846 (N.M. 1994) (in action brought pursuant to Wrongful Death Act, noting that juries have "long been instructed that, '[i]n determining the monetary worth of the life of the deceased, you should consider the age, earning capacity, health, habits and life expectancy of the deceased.'").  The Court defers a ruling on whether such evidence is admissible as to Ms. Duran's mental state on the day of the accident.

### b. The Duran Parties' Request to Exclude Evidence of Evidence of Carol Duran's Drinking

BNSF maintains that "[t]here is evidence that Ms. Duran was a long-term heavy drinker." [Doc. 552 at 4].  However, the Duran parties seek to exclude evidence of Ms. Duran's drinking as impermissible character evidence, arguing that "there is [no] suggestion that her drinking was related in any manner to this collision." [Doc. 519 at 5].  While BNSF agrees that Ms. Duran's "drinking habits are not relevant to the collision[,] her drinking history is relevant to the Duran Claimants' hedonic damages claim." [Doc. 552 at 4 (emphasis in original)].

The Court concludes that the probative value of evidence of Ms. Duran's drinking its not substantially outweighed by the danger of unfair prejudice and, moreover, is relevant and

admissible for the purpose of assisting the jury in understanding her health, habits, and life expectancy which, in turn, would help the jury assess damages to which the Duran parties may be entitled.  See De La O v. Bimbo's Restaurant, Inc., 558 P.2d 69, 74 (N.M.App. 1976) (holding evidence of, among other things, plaintiff's drinking was "relevant to plaintiff's life expectancy and the number of years for which damages for permanent injury and pain and suffering should be assessed.").

### c. The Duran Parties' Request to Exclude Evidence of Carol Duran's Criminal Record

The Duran parties have moved to "exclude any and all evidence regarding Carol Duran's criminal record because it is impermissible character evidence." [Doc. 519 at 5]. The Duran parties are no more specific in their motion, but with its response BNSF has submitted deposition testimony of Ms. Duran's daughter.  According to Ms. Duran's daughter, Carol Duran's former husband, Ray Duran, was charged in October 2003 with multiple counts of criminal sexual penetration of, and criminal sexual contact with, a minor. He pled guilty to one count of criminal sexual penetration.  The victim was Carol Duran's mentally disabled teenage niece. [See Doc. 552; Exh. 1, Coleman depo. at 67-68, 72-73]. Although it is not entirely clear from the pleadings what transpired, it appears that this incident may have led to an altercation between Ms. Duran and a relative, as a result of which both women were taken to jail.  Ms. Duran's daughter testified through her deposition that charges against Ms. Duran were eventually dismissed.  [See Doc. 552; Exh. 1, Coleman depo. at 72].  Without additional specification, the Duran parties have moved to "exclude any

and all evidence regarding Carol Duran's criminal history because it is impermissible character evidence [and] not relevant to any issue before the jury. . . ." [Doc. 519 at 5].

The Court grants the Duran parties' motion in limine on this point inasmuch as evidence of one fight or altercation, for which charges were later dismissed, does not constitute a "criminal record."  The Court will not permit a "mini-trial" of the events leading up to the alleged altercation.

### d. The Duran Parties' Request to Exclude Evidence of Carol Duran Having Been Referred to as "Dingy"

BNSF submits that "Lafarge dispatcher Veronica Gurule provided a statement to the Valencia Claimants' private investigator in which she described Mrs. Duran as 'dingy.'  *Ms. Gurule stated that Mrs. Duran was considered dingy because she was often inattentive when performing her job*."  [Doc. 552 at 5 (emphasis added)].  The Duran parties seek to exclude evidence of this reference as inadmissible character evidence or, alternatively, as substantially more prejudicial than probative. [See Doc. 519 at 5-6].

There is a difference between character evidence and evidence of one's habits:

> Character is a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance or peacefulness.  Habit, in the present context, is more specific. It denotes one's regular response to a repeated situation.  If we speak of a character for care, we think of the person's tendency to act prudently in all the varying situations of life—in business, at home, in handling automobiles and in walking across the street. A habit, on the other hand, is the person's regular practice of responding to a particular kind of situation with a specific type of conduct.  Thus, a person may be in the habit of bounding down a certain stairway two or three steps at a time, of patronizing a particular pub after each day's

8

work, or of driving his automobile without using a seatbelt.

1 MCCORMICK ON EVID. § 195 (6th ed.).

While an assertion that Ms. Duran was generally "dingy" would not be admissible "for the purpose of proving action in conformity" with that trait on November 1, 2006, evidence that Ms. Duran was habitually inattentive while on the job could be admissible under Rule 406.  Rule 406 provides  that "[e]vidence of the habit of a person . . . , whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person . . . on a particular occasion was in conformity with the habit or routine practice."  Fed.R.Evid. 406.  Evidence of Ms. Duran's inattentiveness may also become admissible should the Duran parties attempt to demonstrate that Ms. Duran was a careful driver.  Because the Court is unable presently to issue a definitive ruling on this part of the Duran parties' motion, ruling will be deferred pending the development of the evidence at trial.  However, the Court will not permit use of the descriptive word "dingy" as applied to Ms. Duran.

### e. The Duran Parties' Request to Exclude Evidence of Carol Duran's Financial Difficulties

The Duran parties contend that evidence of Carol Duran's financial difficulties is inadmissible character evidence. [Doc. 519 at 6].  Although the Duran parties do not elaborate on Ms. Duran's financial difficulties, BNSF responds that "[r]elevant financial records, as well as the testimony of Darlene Coleman, Mrs. Duran's daughter, demonstrate that Mrs. Duran was making a small income driving her truck and she [was] experiencing

financial difficulties around the time of the subject collision." [Doc. 552 at 6].  The Court concludes that evidence of Ms. Duran's financial difficulties is relevant to such issues as damages, particularly where the Duran parties have sought damages for lost wages.  The Court also determines that the probative value of evidence of Ms. Duran's financial difficulties is not substantially outweighed by the danger of unfair prejudice.

### f. The Duran Parties' Request to Exclude Evidence of Domestic Violence Between Carol Duran and her Former Husband, Ray Duran

**and**

### g. The Duran Parties' Request to Exclude Evidence Regarding Ray Duran

According to her daughter, Ms. Duran endured "ongoing" mistreatment from her ex-husband, Raymond Duran, such that she had sought restraining orders and filed domestic-violence charges against him. [Doc. 552; Exh. 1, Coleman depo at 53, 67].  Through her deposition, Ms. Duran's daughter testified that Ray Duran (1) threatened to kill Ms. Duran if she ever left him (which is why, according to Ms. Duran's daughter, Ray and Carol Duran continued to live in the same house); (2) called Ms. Duran "horrible" names; and (3) abused Ms. Duran's pets.  [Id.; Exh. 1, Coleman depo at 51, 53]. The Duran parties seek to exclude evidence of domestic violence between Mr. and Ms. Duran on grounds that it is irrelevant and, even if relevant, substantially more prejudicial than probative. [Doc. 519 at 6]

The Court disagrees.  Evidence that Ms. Duran suffered domestic abuse at the hands of her former husband is relevant to the issue of hedonic damages, since it pertains to the issues of Ms. Duran's health and habits, as well as her life expectancy and earning capacity.

See, e.g., Ziegler v. Ziegler, 28 F.Supp.2d 601, 609-610 (E.D.Wash. 1998) (citing evidence presented in congressional hearings that domestic violence results in tardiness; poor job performance; increased medical claims; interpersonal conflicts at work; depression; stress; and substance abuse, and noting former Surgeon General C. Everett Koop's estimation that domestic violence is the number one health problem for women).   Such evidence is relevant and necessary to provide the jury a fuller understanding of the circumstances of Carol Duran's life.  Finally, the Court is not persuaded that evidence of domestic abuse (or Mr. Duran's alleged role in it) will be substantially more prejudicial than probative.  The Court will provide the jury with a limiting instruction if requested to do so.

## III. CONCLUSION

On the basis of the foregoing, the Court will grant in part and deny in part *The Duran Parties' Motion in Limine to Exclude Certain Evidence at Trial*, and defer its ruling in part. As always, these pretrial evidentiary rulings are subject to reconsideration in the event that unforeseen circumstances or a change in context should arise during the trial.

**IT IS, THEREFORE, ORDERED** that *The Duran Parties' Motion in Limine to Exclude Certain Evidence at Trial* [Doc. 519] is **GRANTED in PART, DENIED in PART** and a ruling is **DEFERRED in PART;**

**IT IS FURTHER ORDERED** that *The Duran Parties' Motion in Limine to Exclude Certain Evidence at Trial* [Doc. 519] is **DENIED** to the extent the Duran parties seek to exclude evidence of Carol Duran's medical history;

**IT IS FURTHER ORDERED** that *The Duran Parties' Motion in Limine to Exclude Certain Evidence at Trial* [Doc. 519] is **DENIED** to the extent the Duran parties seek to exclude evidence of Carol Duran's drinking;

**IT IS FURTHER ORDERED** that *The Duran Parties' Motion in Limine to Exclude Certain Evidence at Trial* [Doc. 519] is **GRANTED** to the extent the Duran parties seek to exclude evidence of Carol Duran's criminal record;

**IT IS FURTHER ORDERED** that the Court **DEFERS** its ruling on *The Duran Parties' Motion in Limine to Exclude Certain Evidence at Trial* [Doc. 519] to the extent the Duran parties seek to exclude evidence of Carol Duran's having often been inattentive while performing her job.  The Court **GRANTS** the motion with respect to the use of the term "dingy;"

**IT IS FURTHER ORDERED** that *The Duran Parties' Motion in Limine to Exclude Certain Evidence at Trial* [Doc. 519] is **DENIED** to the extent the Duran parties seek to exclude evidence of Carol Duran's financial difficulties;

**IT IS FURTHER ORDERED** that *The Duran Parties' Motion in Limine to Exclude Certain Evidence at Trial* [Doc. 519] is **DENIED** to the extent the Duran parties seek to exclude evidence of domestic violence between Carol Duran and her former husband, Ray Duran;

**IT IS FURTHER ORDERED** that *The Duran Parties' Motion in Limine to Exclude Certain Evidence at Trial* [Doc. 519] is **DENIED** to the extent the Duran parties seek to exclude evidence regarding Ray Duran in the context of the domestic violence**;**

**IT IS FURTHER ORDERED** that the pretrial evidentiary rulings set forth herein are subject to reconsideration in the event that unforeseen circumstances or a change in context should arise during the trial.

**SO ORDERED** this 27th day of January, 2009, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge

13