# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

BNSF RAILWAY COMPANY,

    Plaintiff,

vs.

LAFARGE SOUTHWEST, INC.; STELLA
R. VALENCIA, Personal Representative of the
Estate of Robert J. Valencia; and GREGORY
MARTINEZ and DARLENE COLEMAN,
Personal Representatives of the Estate of
Carol E. Duran,

    Defendants.

CIVIL NO. 06-1076 MCA/LFG

========================================

STELLA R. VALENCIA, individually, and as
Personal Representative of the Estate of Robert J.
Valencia, JOHN KELLY VALENCIA, DESIREE
RICHELLE VALENCIA, STEPHANIE ESTELLE
VALENCIA, and LILLIAN S. VALENCIA,

    Counter Claimants/Cross-Claimants/
    Third-Party Plaintiffs,

vs.

BNSF RAILWAY COMPANY, and DARLENE
COLEMAN, Personal Representative of the
Estate of Carol E. Duran,

    Counter-Defendants/Cross-Defendants,

MIKE TAFT, d/b/a Taft Construction;
and EL PASO NATURAL GAS COMPANY

    Third-Party Defendants.

========================================

LAFARGE SOUTHWEST, INC.

    Third-Party Plaintiff/Cross-Plaintiff

vs.

DARLENE COLEMAN, individually, and as Personal
Representative of the Estate of Carol E. Duran; GREG
GUTIERREZ and MATTHEW RAY DURAN, individually,

    Plaintiffs,

vs.

BNSF RAILWAY COMPANY; LAFARGE SOUTHWEST,
INC.; STELLA VALENCIA, Personal Representative of the
Estate of Robert J. Valencia; MIKE TAFT, d/b/a Taft
Construction; and EL PASO NATURAL GAS CO.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *BNSF Railway Company's Motion for Reconsideration of Order [Doc. 624] Deferring Ruling on BNSF's Sixth Motion for Partial Summary Judgment, Dismissing Certain Claims for Damages Based on Pain and Suffering* [Doc. 632], filed January 21, 2009.  A response was filed on January 29, 2009, and a reply on January 31, 2009. [See Docs. 649, 651].  Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants the motion.

2

**I. BACKGROUND**

This action arises from a fatal collision between an eastbound freight train operated by Plaintiff BNSF Railway Company (through its engineer, Marlin Ray, and its conductor, Brian Owens) and a commercial dump truck that was being driven by decedent Carol Duran. On November 1, 2006, Ms. Duran, a contractor for Defendant/Third-Party Plaintiff Lafarge Southwest, Inc., was delivering gravel to a construction site adjacent to railroad tracks when, at the apparent direction of her supervisor, Lafarge employee and decedent Robert Valencia, she stopped her truck on a crossing on the tracks in order to speak with him. Both Ms. Duran and Mr. Valencia were killed as a result of the train colliding with Ms. Duran's fully loaded truck.

On November 3, 2006, BNSF filed a *Complaint for Property Damage* against the estates of Ms. Duran and Mr. Valencia and Lafarge Southwest, Inc., alleging that it sustained property damage in an amount in excess of $75,000 as a proximate result of the negligent acts and omissions of Ms. Duran and Mr. Valencia. [See generally Doc. 1]. On November 16, 2006, BNSF amended its complaint to add a cause of action for negligence *per se* and on January 22, 2007, filed its *Second Amended Complaint for Property Damage*. [Docs. 3, 13].

On February 5, 2007, the Valencia parties[1] filed a wrongful-death counterclaim against BNSF, seeking to recover, among other items of damages, damages for pain and suffering experienced between the time of Mr. Valencia's injury and his time of death. [Doc.

---

[1] This group of litigants includes the estate of Robert Valencia and individual relatives of Mr. Valencia and is referred to here as "the Valencia parties."

15 at 11; see also Doc. 91 at 6-7].  Similarly, on February 26, 2007, the Duran parties[2] filed a wrongful-death counterclaim against BNSF, seeking to recover, among other items of damages, damages to compensate for Ms. Duran's pain and suffering.

By *Order* entered January 8, 2009, this Court deferred a ruling on BNSF's request to dismiss the pain-and-suffering claims on the ground that the Court was unable to say, at that time and as a matter of law, that Ms. Duran and Mr. Valencia had died instantaneously. [See Doc. 624 at 9].  Because the Court applied an erroneous legal standard, BNSF's motion for reconsideration will be granted.

## II. ANALYSIS

The Federal Rules of Civil Procedure do not expressly recognize motions for "reconsideration."  Instead, depending on when the motion is filed, it is treated either as a Rule 59(e)[3] motion to alter or amend the judgment or a Rule 60(b)[4] motion for relief from the judgment.  Computerized Thermal Imaging, Inc. 312 F.3d 1292, 1296 n.3 (10th Cir. 2002).  In this case, because BNSF filed its motion on January 21, 2009, more than ten days after the December 8, 2008 entry on the docket of the challenged *Memorandum Opinion and Order*, the motion is treated as having been brought pursuant to Rule 60(b).  See id.; see also

---

[2] This group of litigants includes the estate of Carol Duran and individual relatives of Ms. Duran and is referred to here as "the Duran parties."

[3] A motion filed within ten days of the district court's entry of judgment is treated as a motion to alter or amend the judgment under Rule 59(e).  Computerized Thermal Imaging, Inc. v. Bloomberg, L.P., 312 F.3d 1292, 1296 n.3 (10th Cir. 2002).

[4] A motion filed more than ten days after entry of judgment is treated as a motion for relief from judgment under Rule 60(b).  Computerized Thermal Imaging, Inc., 312 F.3d at 1296 n.3.


Fed.R.Civ.P. 6(a) (explaining computation of time periods under Rules).

The Tenth Circuit "has recognized that Rule 60(b) provides courts with a 'grand reservoir of equitable power to do justice in a particular case[,]'" F.D.I.C. v. United Pacific Ins. Co., 152 F.3d 1266, 1272 (10th Cir. 1998) (*quoting* State Bank of S. Utah v. Gledhill 76 F.3d 1070, 1080 (10th Cir.1996)), and that "[a] district court accordingly has substantial discretion to grant relief as justice requires under Rule 60(b)." F.D.I.C., 152 F.3d at 1272. Still, "[r]elief under Rule 60(b) is extraordinary and may only be granted in exceptional circumstances." Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co., Inc., 909 F.2d 1437, 1440 (10th Cir. 1990).

Factors for the Court to consider in exercising its discretion pursuant to Rule 60(b) include whether there has been (1) an intervening change in the law, (2) new evidence, or (3) the need to correct clear error or to prevent manifest injustice. Id. Thus, a motion for reconsideration may be appropriate where the district court has misapprehended the facts, a party's position, or the controlling law. Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000).

In this case, BNSF contends that the Court applied the wrong legal standard in deferring its ruling on the issue of pain and suffering, focusing on whether Ms. Duran and Mr. Valencia died immediately upon impact of train with truck, rather than on whether there was any evidence of conscious pain and suffering.

In New Mexico, a decedent's personal representative is entitled to recover damages for a decedent's conscious pain and suffering experienced between the time of injury and the

time of death.  Stang v. Hertz Corp., 463 P.2d 45, 53 (N.M.App. 1969); see also Haceesa v. United States, 309 F.3d 722, 734 (10th Cir. 2002) ("Damages may be awarded in [an action brought pursuant to the New Mexico Wrongful Death Act] for, among other things, the decedent's *conscious* pain and suffering. . . .") (emphasis added); NMRA Civ. UJI 13-1830 (instructing jury that wrongful-death measure of damages includes, among other things, "[t]he pain and suffering experienced by the deceased between the time of injury and death.").

The Court provided the following explanation as to its deferred ruling:

> A ruling as to whether Ms. Duran and/or Mr. Valencia experienced pain and suffering between the time of injury and the time of death, however, must be deferred, as the Court cannot say at this point in the proceedings, as a matter of law, that Ms. Duran and Mr. Valencia died instantaneously.  BNSF relies primarily on the testimony of its proposed expert, G. Theodore Davis, M.D., in support of its position that the deaths of Ms. Duran and Mr. Valencia occurred immediately upon their being struck by the train, and therefore they experienced no conscious pain and suffering.  Through his deposition, Dr. Davis (whose opinions are the subject of a pending motion in limine) testified that the heart, spine, and brain of both Ms. Duran and Mr. Valencia were "for sure" injured the moment they were struck. [Doc. 358; Exh. 2, Davis depo. at 54-55].  He also testified, however, that both Ms. Duran and Mr. Valencia sustained injuries to those three organs as a result of having been thrown or carried some distance after the initial impact.  Dr. Davis did not believe that Ms. Duran's brain was avulsed at the moment of impact, and he also testified to his opinion that her spine was transected—and her body ripped apart—as she was carried down the track.  Dr. Davis could not tell at what point Ms. Duran's lungs, spleen, and kidneys were lacerated.  [Id.; Exh. 2, Davis depo. at 56-57].  Additionally, aortic injuries were sustained in the collision, but Dr. Davis testified that aortic injuries do not always result in instantaneous death.  [Doc. 417;

>   Exh. A, Davis depo. at 41].[5]  It is Dr. Davis' opinion that "Ms. Duran and Mr. Valencia ceased to be conscious and *essentially* died on impact. . . ."   [Doc. 358; Exh. 1, Davis affidavit at 4 (emphasis added)].

[Doc. 624 at 9-10].  Thus, while Dr. Davis's testimony might have been equivocal with respect to whether Ms. Duran and Mr. Valencia *died on impact*, the proper focus for the Court should have been whether "[i]t is undisputed that to a medical probability Mrs. Duran and Mr. Valencia *lost consciousness immediately upon impact*." [Doc. 632 at 4] (emphasis added)].

Application of the correct legal standard reveals that there exists no material factual dispute as to whether Ms. Duran and Mr. Valencia lost consciousness immediately upon impact of train with truck.  On the topic of *consciousness*, Dr. Davis explained that at the moment of impact, the heart, spine, and brain of both Ms. Duran and Mr. Valencia were "for

---

[5] At Dr. Davis's deposition, the following colloquy took place:

>   Q:   Do all aortic injuries that result from lateral impacts result in instantaneous death?
>   A:   No.
>   Q:   Does an aortic injury result in instantaneous death?
>   A:   In and of itself, it would depend on what you mean by instantaneous.  I would say death could occur within a few seconds with transection of the aorta because you're basically eliminating the body's capacity to provide oxygen to the brain and the vital organs.
>                                     . . .
>   Q:   When someone has an aortic injury, isn't it true that they can suffer over a number of minutes and hours prior to death?
>   A:   If they're conscious, that's possible.

[Doc. 417; Exh. A, Davis depo. at 41-42].

7

sure" injured, and that Ms. Duran and Mr. Valencia "*ceased to be conscious* and essentially died on impact as a consequence of instantaneous and irreversible trauma to vital organs and tissues, including brain, spinal cord and heart." [Doc. 358; Exh. 2, Davis depo. at 54; Exh. 1, Davis affidavit at 4 (emphasis added)]. On the basis of these conclusions, BNSF argues (as Undisputed Material Fact No. 5) that "Mrs. Duran and Mr. Valencia both ceased to be conscious and essentially died on impact. . . ." [Doc. 358 at 4].

In response, the Duran parties (and, by virtue of their *Notices of Joinder*, the Valencia parties)[6] "dispute Undisputed Material Fact No. 5 . . . [t]o the extent that BNSF relies upon the affidavit[] of Dr. Davis[, a] professional expert witness that makes his living by testifying for defendants in litigation[, but who] has no qualifications to provide testimony concerning physics, biomechanics, or the cause or mechanism of death." [Doc. 417 at 6]. However, this argument merely conflates the issue of Dr. Davis's qualifications with the Duran parties' obligation, as parties opposing summary judgment, to make an adequate showing as to their entitlement to the recovery of damages for pain and suffering. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999)

The Duran parties have presented no evidence tending to show that Carol Duran remained conscious once her truck was struck by the train; instead, they maintain that "Carol

---

[6] [See Doc. 422 at 3 (wherein the Valencia parties join and support, among others, *The Duran Parties' Response to BNSF Railway Company's Sixth Motion for Partial Summary Judgment, Dismissing Certain Claims for Damages*); see also Doc. 553 at 2 (wherein, through their *Second Notice of Joinder*, the Valencia parties join "in each and every motion, motion in limine, and each and every other affirmative or responsive pleading filed by the Duran parties, and adopt[] by reference all such pleadings. . . .")].

8

Duran was conscious *in the moment prior to the impact* between the BNSF train and her truck" and that, because she was conscious at that point in time, "a jury c[ould] reasonably conclude that the last moments of Carol Duran's life involved the terror that must accompany the realization that a speeding train is about to smash into your truck." [Doc. 417 at 6 (emphasis added) and 9]. For reasons explained in the *Memorandum Opinion and Order* that is the subject of BNSF's motion for reconsideration, neither the Duran nor the Valencia parties may recover damages on the basis of pre-injury emotional distress, mental anguish, fear, or apprehension. [See Doc. 624 at 9].

Accordingly, the Court concludes that, while it recognized the correct legal standard for the recovery of pain-and-suffering damages, [see Doc. 624 at 8-9], it nevertheless failed to apply the correct legal standard. When the evidence is analyzed under the proper legal standard, it becomes clear that the Duran and Valencia parties have failed to make an adequate showing with respect to their entitlement to damages for pain and suffering. The Court should have granted BNSF's Sixth Motion for Partial Summary Judgment to the extent BNSF therein sought dismissal of the Duran and Valencia parties' claims for pain-and-suffering damages. For these reasons, BNSF's motion for reconsideration will be granted.

### III. CONCLUSION

On the basis of the foregoing, the Court will grant *BNSF Railway Company's Motion for Reconsideration of Order [Doc. 624] Deferring Ruling on BNSF's Sixth Motion for Partial Summary Judgment, Dismissing Certain Claims for Damages Based on Pain and Suffering*.

**IT IS, THEREFORE, ORDERED** that *BNSF Railway Company's Motion for Reconsideration of Order [Doc. 624] Deferring Ruling on BNSF's Sixth Motion for Partial Summary Judgment, Dismissing Certain Claims for Damages Based on Pain and Suffering* [Doc. 632] is **GRANTED**;

**IT IS FURTHER ORDERED** that *BNSF Railway Company's Sixth Motion for Partial Summary Judgment, Dismissing Certain Claims for Damages* [Doc. 358] is **GRANTED** with respect to claims for claims for pain and suffering;

**SO ORDERED** this 3rd day of February, 2009, in Albuquerque, New Mexico.

_____
 **M. CHRISTINA ARMIJO**
 United States District Judge