# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

BNSF RAILWAY COMPANY,

    Plaintiff,                                                   CIVIL NO. 06-1076 MCA/LFG

vs.

LAFARGE SOUTHWEST, INC.; STELLA
R. VALENCIA, Personal Representative of the
Estate of Robert J. Valencia; and GREGORY
MARTINEZ and DARLENE COLEMAN,
Personal Representatives of the Estate of
Carol E. Duran,

    Defendants.
======================================

STELLA R. VALENCIA, individually, and as
Personal Representative of the Estate of Robert J.
Valencia, JOHN KELLY VALENCIA, DESIREE
RICHELLE VALENCIA, STEPHANIE ESTELLE
VALENCIA, and LILLIAN S. VALENCIA,

    Counter Claimants/Cross-Claimants/
    Third-Party Plaintiffs,

vs.

BNSF RAILWAY COMPANY, and DARLENE
COLEMAN, Personal Representative of the
Estate of Carol E. Duran,

    Counter-Defendants/Cross-Defendants,

MIKE TAFT, d/b/a Taft Construction;
and EL PASO NATURAL GAS COMPANY

    Third-Party Defendants.
======================================

LAFARGE SOUTHWEST, INC.

    Third-Party Plaintiff/Cross-Plaintiff

vs.

DARLENE COLEMAN, individually, and as Personal
Representative of the Estate of Carol E. Duran; GREG
GUTIERREZ and MATTHEW RAY DURAN, individually,

    Plaintiffs,

vs.

BNSF RAILWAY COMPANY; LAFARGE SOUTHWEST,
INC.; STELLA VALENCIA, Personal Representative of the
Estate of Robert J. Valencia; MIKE TAFT, d/b/a Taft
Construction; and EL PASO NATURAL GAS CO.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Plaintiff BNSF Railway Company's Third Motion in Limine to Exclude Photographs of Claimants' Experts Curtis Flynn and Dr. Robert Post and All Related Testimony, and the Visibility Testimony of Claimants' Experts Curtis Flynn, Dr. Robert Post, Jimmy Scott, and Charles Culver Pursuant to the Federal Rules of Evidence and Daubert* [Doc. 494] filed on October 29, 2008. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants the motion for the reasons set forth below.

In its motion, Plaintiff BNSF challenges the admissibility of certain photographic exhibits and related testimony on the grounds that they do not accurately depict the scene they purport to represent and would mislead the jury. Such objections require the Court to examine the authentication requirements of Fed. R. Evid. 901(a) as well as the relevance requirements of Fed. R. Evid. 402 and 403. "To be admissible, evidence must be relevant, and its probative value must not be substantially outweighed by the danger of unfair prejudice or misleading the jury." United States v. Lawson, 494 F.3d 1046, 1052 (D.C. Cir. 2007) (citing Fed. R. Evid. 402, 403). "As a general rule, tangible evidence such as photographs must be properly identified or authenticated before being admitted into evidence at trial." United States v. Blackwell, 694 F.2d 1325, 1329-30 (D.C.Cir.1982) (citing Fed.R.Evid. 901(a)). "Authentication and identification are specialized aspects of relevancy that are necessary conditions precedent to admissibility." Id. at 1330.

To be properly identified and authenticated, there must be competent evidence from which to draw a reasonable inference that the photograph "accurately depicts the scene it purports to represent." Lawson, 494 F.3d at 1052. This inquiry must take into account the particular purpose for which the photograph is being offered, because "[p]hotographic evidence is admissible only if it is relevant to the specific issues at trial." United States v. Ayers, 702 F.2d 1145, 1149 (D.C. Cir. 1983).

In this instance, the photographs in question are not being proffered merely to show a general layout of the accident scene; rather, they are being proffered for the specific purpose of showing how visible a particular vehicle would be from various distances as a

train approached that vehicle while it was parked on the railroad tracks. When offered for this purpose, these photographs do not accurately depict the scene they purport to represent for two basic reasons.

First and foremost, the photographs are distorted because they were taken with a telephoto lens that has the effect of magnifying distant images and narrowing the field of vision in a manner similar to a telescope or binoculars. While use of a telephoto lens may be perfectly acceptable when used to replicate the view of someone looking through binoculars, see Jamison v. Grier, No. 01 CIV 6678 AGS AJP, 2002 WL 100642, at *17 n.3 (S.D.N.Y. Jan. 25, 2002) (unpublished report and recommendation collecting cases), in this instance there is no evidence that Plaintiff BNSF's personnel were viewing the scene with binoculars at the time they approached the vehicle that is the subject of this litigation. Rather, they were viewing the scene with the naked eye. In this context, images taken with a telephoto lens provide a "technically inaccurate representation" of the way the scene would have appeared to the naked eye. United States v. Stearns, 550 F.2d 1167, 1170 (9th Cir. 1977).

The second reason why the photographs at issue here do not meet the authentication requirements of Fed. R. Evid. 901(a) is that they portray "a scene that is materially different from a scene that is relevant to one of the issues at trial." Stearns, 550 F.2d at 1170. Most of the photographs in question depict a light-colored vehicle against a dark background, while others depict a dark-colored vehicle against a light background. These depictions are inaccurate because the vehicle involved in the accident was a significantly darker color and

would have appeared against a dark or shaded background. While the Court acknowledges that minor differences in color and lighting ordinarily go to the weight rather than the admissibility of the evidence, see Jamison, 2002 WL 100642, at *17, in this instance the combination of the differences in the vehicle's color and background with the use of the telephoto lens evinces a clear effort to distort the photographic images in order to enhance the vehicle's visibility to a degree that renders them inaccurate for the purpose for which they are being offered. See Akers, 702 F.2d at 1149 n. 11 (noting that distortions in perspective destroyed the probative value of a photograph and made it misleading).

Further, even if the authentication requirements of Fed. R. Evid. 901(a) did not pose an insurmountable obstacle to the admission of these photographs, the Court would decline to admit them because whatever minimal probative value can be obtained from such distorted images is substantially outweighed by the danger of misleading or confusing the jury. In this regard, the claimants' response briefs allude to the possibility that viewing the photographs in question from a particular distance or in a particular size might compensate to some degree for the distortions occasioned by the telephoto lens; however, they offer no reliable procedure for ensuring that these photographs will be shown to the jury only in the manner needed to accomplish this goal. The Court therefore concludes that the photographs are inadmissible.

Because the photographs in question are misleading and do not accurately depict whether the type of vehicle involved in the accident could be seen with the naked eye from a particular distance, they cannot provide the basis for any relevant or reliable testimony from the claimants' experts. "'When an expert's opinion is based on assumed facts that vary

materially from the actual, undisputed facts, the opinion is without probative value and cannot support a verdict or judgment.'" General Motors Corp. v. Harper, 61 S.W. 3d 118, 130 (Tex. Ct. App. 2001) (quoting Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995)).

This defect cannot be cured by having the claimants' experts ignore the photographs and instead offer opinions about the visibility of the vehicle that are based on their own perception or memory of viewing the scene after the accident. "Testimony is properly characterized as 'expert' only if it concerns matters that the average juror is not capable of understanding on his or her own." United States v. Mejia, 545 F.3d 179, 194 (2nd Cir. 2008). Merely conveying one's perception or memory of viewing a particular scene does not require such "scientific, technical, or other specialized knowledge," Fed. R. Evid. 702, and to cloak such a general observation that anyone could make under the guise of a scientific or technical methodology is unfairly prejudicial because of the misleading implication that the witness' observations should be given more credence merely because of his or her credentials as an expert. For these reasons and for the reasons previously stated in the Court's prior rulings on the motions in limine pertaining to the claimants' experts [Doc. 661, at 7-10; Doc. 708 at 7], all of the photographic exhibits and areas of testimony identified in Plaintiff BNSF's motion [Doc. 494] are inadmissible.

Finally, the Court notes that this motion was filed and briefed before the parties submitted their final lists of exhibits for trial. Accordingly, the parties are directed to identify with specificity each trial exhibit that corresponds to the photographs that are the subject of

this *Memorandum Opinion and Order* and provide that information to the Court in writing by no later than 12:00 noon, Monday, February 16, 2009. The Court will allow the parties to submit their responses via facsimile transmission at 505-348-2315, with copies to be provided to all counsel.

**IT IS, THEREFORE, ORDERED** that *Plaintiff BNSF Railway Company's Third Motion in Limine to Exclude Photographs of Claimants' Experts Curtis Flynn and Dr. Robert Post and All Related Testimony, and the Visibility Testimony of Claimants' Experts Curtis Flynn, Dr. Robert Post, Jimmy Scott, and Charles Culver Pursuant to the Federal Rules of Evidence and Daubert* [Doc. 494] is **GRANTED.**

**IT IS FURTHER ORDERED** that the parties shall identify with specificity each trial exhibit that corresponds to the photographs that are the subject of this *Memorandum Opinion and Order* and provide that information to the Court in writing by no later than 12:00 noon, Monday, February 16, 2009.

**SO ORDERED**, this 15th day of February, 2009, in Albuquerque, New Mexico.

 **M. CHRISTINA ARMIJO**
*United States District Judge*