# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

BNSF RAILWAY COMPANY,

      Plaintiff,                                                                    CIVIL NO. 06-1076 MCA/LFG

vs.

LAFARGE SOUTHWEST, INC.; STELLA
R. VALENCIA, Personal Representative of the
Estate of Robert J. Valencia; and GREGORY
MARTINEZ and DARLENE COLEMAN,
Personal Representatives of the Estate of
Carol E. Duran,

      Defendants.
========================================

STELLA R. VALENCIA, individually, and as
Personal Representative of the Estate of Robert J.
Valencia, JOHN KELLY VALENCIA, DESIREE
RICHELLE VALENCIA, STEPHANIE ESTELLE
VALENCIA, and LILLIAN S. VALENCIA,

      Counter Claimants/Cross-Claimants/
      Third-Party Plaintiffs,

vs.

BNSF RAILWAY COMPANY, and DARLENE
COLEMAN, Personal Representative of the
Estate of Carol E. Duran,

      Counter-Defendants/Cross-Defendants,

MIKE TAFT, d/b/a Taft Construction;
and EL PASO NATURAL GAS COMPANY

      Third-Party Defendants.
========================================

LAFARGE SOUTHWEST, INC.

      Third-Party Plaintiff/Cross-Plaintiff

vs.

DARLENE COLEMAN, individually, and as Personal
Representative of the Estate of Carol E. Duran; GREG
GUTIERREZ and MATTHEW RAY DURAN, individually,

      Plaintiffs,

vs.

BNSF RAILWAY COMPANY; LAFARGE SOUTHWEST,
INC.; STELLA VALENCIA, Personal Representative of the
Estate of Robert J. Valencia; MIKE TAFT, d/b/a Taft
Construction; and EL PASO NATURAL GAS CO.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendant Valencia Claimants' Motion in Limine to Exclude Certain Testimony and Opinions of BNSF Railway's Expert, Foster Peterson Pursuant to the Federal Rules of Evidence and Daubert* [Doc. 512] filed November 10, 2008. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court will grant the motion in part, deny it in part and defer a ruling in part.

.

**I. BACKGROUND**

This action arises from a fatal collision between an eastbound freight train operated by Plaintiff BNSF Railway Company (through its engineer, Marlin Ray, and its conductor, Brian Owens) and a commercial dump truck that was being driven by decedent Carol Duran. On November 1, 2006, Ms. Duran, a contractor for Defendant/Third-Party Plaintiff Lafarge Southwest, Inc., was delivering gravel to a construction site adjacent to railroad tracks when, at the apparent direction of her supervisor, Lafarge employee and decedent Robert Valencia, she stopped her truck on a crossing on the tracks in order to speak with him. Both Ms. Duran and Mr. Valencia were killed as a result of the train colliding with Ms. Duran's fully loaded truck. The accident occurred at approximately 7:30 a.m., in sunny conditions.

Eastbound trains, such as the one involved in this accident, negotiate a series of curves in the final miles leading to the crossing at which Ms. Duran and Mr. Valencia were struck. The last of these curves is a left-hand curve approximately 4,000 feet west of the crossing. There is an escarpment at this final curve, but once the escarpment is passed and the final curve negotiated, the stretch of track between this point (4,000 feet west of the crossing) and the actual crossing is straight, and the view between the two points unobstructed. A whistle board (a sign with a black "W" to alert the train crew to activate the whistle) sits 1,320 feet (one-quarter of a mile) west of the crossing. It is highly contested whether Ms. Duran's truck was already on the crossing at the time the train cleared the escarpment (the Duran parties' position), or whether she came upon the crossing when the train was already past the escarpment and either at or in the area of the whistle board (BNSF's position).

On November 1, 2007, the one-year anniversary of the collision, Curtis Flynn, the Valencia parties' proposed expert witness on accident reconstruction, visited the scene of the accident. Mr. Flynn took photographs meant to establish what Engineer Ray and Conductor Owens should have seen as their train approached the crossing. In a motion in limine separate from the one at issue here, BNSF has moved to exclude a number of Mr. Flynn's photographs as inadmissible on grounds including, but not limited to, that these photographs are "irrelevant, misleading, and unduly prejudicial" because they were taken with a telephoto lens and, therefore, do not accurately portray what could have been seen with the naked eye. [See Doc. 494 at 2-3].[1]

Foster Peterson is BNSF's proposed expert witness on the subject of railroad operations. [See Doc. 555 at 2]. Mr. Peterson visited the scene of the accident and prepared reports on April 30, 2008 and June 2, 2008 memorializing his opinions. Among the materials he reviewed in preparing his June 2, 2008 report were Curtis Flynn's photographs. [See Doc. 555; Exh. C, June 2, 2008 report of Foster Peterson at 3]. In that later report, Mr. Peterson stated the following:

> I have reviewed the photographs of Valencia expert Curtis Flynn, Duran expert Robert Post and BNSF expert Brian Charles. I also visited the site myself on December 17, 2007. I question whether the Flynn photographs in particular accurately

---

[1] That Mr. Flynn used a telephoto lens does not appear to be disputed. The Valencia parties, however, respond that "Mr. Flynn's photographs accurately depict what he saw with his naked eye immediately prior to taking the pictures]" and that "BNSF fails to point out, as Duran expert Dr. Robert Post testified to, there are many different accepted means in which to 'correct' for any alleged deficiencies in the photographs[,"] such as "print[ing] them smaller" or "hold[ing] the print at a slightly further distance." [Doc. 531 at 3-5].

>represent what a train crew could have seen on the day of the accident.

[Id.; Exh. C, June 2, 2008 Peterson report at 4]. As stated, the Valencia parties now seek to exclude Mr. Peterson's opinion that the Flynn photographs fail to present an accurate representation.

## II. ANALYSIS

Rule 702 of the Federal Rules of Evidence imposes a special gatekeeping obligation on this Court to ensure that expert testimony is not admitted at trial unless it is both relevant and reliable. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert v. Merrell-Dow Pharm., Inc., 509 U.S. 579, 592-93 (1993). The relevance of such testimony also must be weighed against "the danger of unfair prejudice, confusion of the issues, or misleading the jury" as well as "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. While the Court is not required to consider any particular set of factors or utilize a particular procedure in making such determinations with respect to expert testimony, the Court must make *some* kind of determination on the record in order to demonstrate that it has performed its gatekeeping function. See United States v. Velarde, 214 F.3d 1204, 1209 (10th Cir. 2000); Goebel v. Denver & Rio Grande W. R.R. Co., 215 F.3d 1083, 1088 (10th Cir. 2000). As part of its gatekeeping function, and in addition to determining whether the proposed expert is qualified to offer an opinion, the Court must also determine whether (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods;

and (3) the witness has applied the principles and methods reliably to the facts of the case. Reliability under Daubert is determined by looking at whether the reasoning or methodology underlying the testimony is scientifically valid, and relevance is determined by whether that reasoning or methodology properly can be applied to the facts in issue. Smith v. Sears Roebuck and Co., 232 Fed.Appx. 780, 781 (10th Cir. 2007).

**1. Mr. Peterson's Qualifications**

Foster Peterson is currently a partner in Full Service Railroad Consulting, Inc., in Tucker, Georgia, as well as the Chief Operating Officer and Supervisor of Engineers with the Hiwassee River Railroad Company in Copperhill, Tennessee. Mr. Peterson also currently serves as the Manager of Training Rules and Safety; Supervisor of Locomotive Engineers; and a Locomotive Engineer with the Tennessee Valley Railroad in Chattanooga, Tennessee.

With Full Service Railroad Consulting, Mr. Peterson conducts operational and safety audits; provides services as a consulting or testifying expert in railroad mechanical, operating, and engineering disciplines; and provides railroad technical and engineering support for accident/incident responses, case analysis, and preparation of reports. He utilizes train dynamics simulation models in accident investigation and analysis. He also deals with event recorders and their interpretation. [Doc. 555; Exh. A, C.V. of Foster Peterson].

In 1995, Mr. Peterson graduated from the Georgia Institute of Technology with a Bachelor's Degree in Mechanical Engineering. From 1986 through 1993 he was in railroad operations as a brakeman and fireman in train service and also learned maintenance practices for cars and locomotives. He then became a certified locomotive engineer qualified to

operate on the Tennessee Valley Railroad and Norfolk Southern (Class I) trackage rights in Tennessee, also operating on mainline Norfolk Southern (Class I) trackage. He was also responsible for maintenance and servicing of locomotives and cars during that period. From 1993 to 1995 he was a locomotive engineer for New Georgia Railroad, operating on CSX (Division 1) tracks and mainline operations on CSX and Norfolk Southern tracks.  [Doc. 555; Exh. A. C.V. of Foster Peterson].

From 1995 to 2001, Mr. Peterson performed railroad consulting work for Rail Sciences, Inc.  While with Rail Sciences, he performed numerous accident and derailment investigations; railroad operational safety studies; vehicle dynamic studies; mechanical inspections; physical testing; and railroad training.  Mr. Peterson has specialized training and experience with event recorders and their interpretation, and has published and presented on that topic.  Mr. Peterson also has performed numerous field investigations where event recorder data was critical, and has extensive experience with simulation tools such as the train operations simulator.  [Doc. 555; Exh. A. C.V. of Foster Peterson].

Mr. Peterson is a member of the International Association of Railway Operating Officers; the Air Brake Association; the American Association of Railroad Superintendents; the American Railway Engineering and Maintenance of Way Association; and the American Society of mechanical Engineers.  In addition to publishing and presenting on the topic of event recorders, Mr. Peterson has published and presented on such topics as locomotive brakes; modern locomotive technology; and the investigation of derailments.  [Doc. 555; Exh. A. C.V. of Foster Peterson].

On the basis of these credentials, the Court concludes that Mr. Peterson qualifies by education, training, and experience as an expert in the field of railroad operations.

**2. Peterson Opinion to be Excluded**

The Valencia parties seek to preclude Mr. Peterson from testifying as to "[v]isibility at the [c]rossing." [Doc. 512 at 6]. The sum of their argument is that

> Mr. Peterson offers the opinion that the Flynn photographs do not accurately represent what a train crew could have seen on the day of the accident.
>
> As stated previously, Mr. Peterson testified he is not an expert in photography and as such this opinion should be excluded for that reason and on numerous other grounds. This opinion should be excluded.

[Id.].

As an initial matter, the Court notes that BNSF responds that "Mr. Peterson does not purport to present that 'question' as an expert opinion, based on his background, education, training, and experience; rather as a 'question' or observation based on his review of the evidence." [Doc. 555 at 9].

However, in light of this Court's previous determination with respect to the Flynn photographs specified in *BNSF's Third Motion in Limine* (*i.e.*, that those photographs are inadmissible because they (1) are distorted from being taken with a telephoto lens and (2) depict a scene that is materially different from a scene that is relevant to one of the issues at trial), [see Doc. 709 at 4], the Court concludes that the Valencia parties' challenge to Mr. Peterson's opinion as to the accuracy of matters depicted in those photographs has been

8

rendered moot.

### 3. The Valencia Parties' "Conclusion"

Notwithstanding the mootness of the Valencia parties' challenge to Mr. Peterson's questioning of the accuracy of the Flynn photographs, in the "Conclusion" section of their motion, the Valencia parties request that Mr. Peterson "be precluded from testifying about matters [on which] he represented in deposition he would not be offering expert testimony, including but not limited to audiology, physics, human factors, traffic engineering, railroad track building, pre-emption and perception/reaction time." [Doc. 512 at 7].

As an initial matter, the Court notes that the Valencia parties have not specified any particular opinions of Mr. Peterson that they seek to exclude, and their general reference to the broad areas or fields listed above prevents the Court from understanding precisely what testimony they seek to preclude.

Still, to the extent that Mr. Peterson testified through his deposition that he is not an expert in the following: (1) audiology, [see Doc. 512; Exh. 1, Peterson depo. at 54]; (2) traffic engineering [see Doc. 553; Exh. B, Peterson depo. at 11]; (3) railroad track building [see Doc. 512; Exh. 1, Peterson depo. at 56]; or (4) federal preemption [id. at 111], Mr. Peterson will not be permitted to offer expert testimony on those areas.

On the other hand, when Mr. Peterson was asked whether he is an expert in physics, he responded: "I wouldn't say I'm a physicist, per [se], but to the extent that physics are something that I certainly studied and are part of my mechanical engineering background, that incorporates into my expertise, *yes*." [Doc. 512; Exh. 1, Peterson depo. at 54-55

9

(emphasis added).  When asked whether he is a human-factors expert, Mr. Peterson responded:

> I think the human factors expertise is kind of a not-well-defined area.  But I guess to me when you think of human factors as in the actual like study of—I guess I would say not in the sense that I think most people define it.  *But as to crew conduct or the way train crews perform, I would say that overlaps somewhat and I'm certainly an expert in that*.

[Doc. 555; Exh. B, Peterson depo. at 11].  Moreover, the field of human factors can involve the study and/or understanding of perception and reaction time. [See Doc. 681 at 15 (noting the expertise of BNSF proposed expert witness Brian Charles in human-factors engineering and further noting that Mr. Charles' expertise in the field involves the application of "principles of human perception and performance in the interaction with the environment and visual displays and machines. . . .")].

Thus, to the extent that the Valencia parties are suggesting that Mr. Peterson may not offer opinions on matters touching on physics or human factors because he is not an expert in those fields, the Court does not agree.  Nevertheless, because the Valencia parties have not identified any specific Peterson opinions they wish to preclude involving physics and human factors, the Court must defer for the present time a ruling as to whether Mr. Peterson is precluded from testifying on matters relating to physics, human factors, and/or perception/reaction time.

### III. CONCLUSION

For the reasons stated more fully herein, the Court will grant in part, deny in part *Defendant Valencia Claimants' Motion in Limine to Exclude Certain Testimony and Opinions of BNSF Railway's Expert, Foster Peterson Pursuant to the Federal Rules of Evidence and Daubert* and defer its ruling in part. As always, these pretrial evidentiary rulings are subject to reconsideration in the event that unforeseen circumstances or a change in context should arise during the trial.

**IT IS, THEREFORE, ORDERED** that *Defendant Valencia Claimants' Motion in Limine to Exclude Certain Testimony and Opinions of BNSF Railway's Expert, Foster Peterson Pursuant to the Federal Rules of Evidence and Daubert* [Doc. 512] is **GRANTED in PART; DENIED in PART as MOOT; and a ruling is DEFERRED in PART**;

**IT IS FURTHER ORDERED** that *Defendant Valencia Claimants' Motion in Limine to Exclude Certain Testimony and Opinions of BNSF Railway's Expert, Foster Peterson Pursuant to the Federal Rules of Evidence and Daubert* [Doc. 512] is **GRANTED** to the extent that the Valencia parties seek to preclude Mr. Peterson from offering expert testimony on the following: (1) audiology; (2) traffic engineering; (3) railroad track building; and (4) federal preemption;

**IT IS FURTHER ORDERED** that *Defendant Valencia Claimants' Motion in Limine to Exclude Certain Testimony and Opinions of BNSF Railway's Expert, Foster Peterson Pursuant to the Federal Rules of Evidence and Daubert* [Doc. 512] is **DENIED** as moot to the extent the Valencia parties seek to prevent Mr. Peterson from testifying that he questions

the accuracy of the challenged Curtis Flynn photographs;

**IT IS FURTHER ORDERED** that a **RULING is DEFERRED** on *Defendant Valencia Claimants' Motion in Limine to Exclude Certain Testimony and Opinions of BNSF Railway's Expert, Foster Peterson Pursuant to the Federal Rules of Evidence and Daubert* [Doc. 512] to the extent the Valencia parties seek to preclude Mr. Peterson from offering expert testimony on the following: (1) physics; (2) human factors; and (3) perception/reaction time.

**SO ORDERED** this 15th day of February, 2009, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge