IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BNSF RAILWAY COMPANY,

      Plaintiff,

  v.     No. CIV 06-1076 MCA/LFG

LAFARGE SOUTHWEST, INC. and STELLA
R. VALENCIA, Personal Representative of the
Estate of Robert J. Valencia;

      Defendants,

  and,

STELLA R. VALENCIA, Individually and as
Personal Representative of the Estate of Robert
J. Valencia, JOHN KELLY VALENCIA,
DESEREE RICHELLE VALENCIA, STEPHANIE
ESTELLE VALENCIA,

      Counter-Claimants/Cross-Claimants/
        Third-Party Plaintiffs,

  v.

BNSF RAILWAY COMPANY,

      Counter-Defendant/Cross-Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants', LaFarge Southwest, Inc. and Stella R. Valencia, *Request for New Trial Or, In The Alternative, Motion For Relief From Judgment*, [Doc 795] filed April 30, 2009. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies the motion.

**I.     BACKGROUND**

This action arises from a fatal collision between an eastbound freight train operated by Plaintiff BNSF Railway Company (BNSF) and a commercial dump truck that was being driven by decedent Carol Duran (Duran). On November 1, 2006, Duran, a contractor for Lafarge Southwest, Inc. (LaFarge), was delivering gravel to a construction site near the railroad tracks when, at the apparent direction of her supervisor, Lafarge employee and decedent Robert Valencia, she stopped her truck on a crossing on the tracks in order to speak with him. Both Duran and Mr. Valencia were killed as a result of the train colliding with Duran's fully loaded truck.

On November 3, 2006, BNSF filed a complaint against LaFarge, and the estates of Duran (Duran Parties) and Mr. Valencia (Valencia Parties). [Doc 1]  The complaint was amended on November 16, 2006 [Doc 3] and again on January 22, 2007. [Doc 13]  The Valencia Parties and the Duran Parties filed wrongful-death counterclaims. [Docs 15, 21]  The Duran Parties settled with BNSF, leaving the Valencia Parties and LaFarge (Defendants) as defendants in the suit with BNSF. Trial began on February 23, 2009 and ended on March 10, 2009, with a jury verdict for BNSF. [Docs 790, 785]

During the trial, the Court provided the jury with two relevant instructions.  First, the jury received Instruction No. 26, which addressed the "negligence on the part of non-party Carol Duran." [Doc 781]  This instruction explained that in order for BNSF to establish Duran's negligence it would need to prove at least one of the following contentions:

1.     Carol Duran failed to stop at the stop sign at the crossing.  OR,
2.     Carol Duran failed to stop within between 15 and 50 feet of the near rail of the crossing.  OR,
3.     Carol Duran failed to exercise ordinary care when she followed Robert Valencia's directions to stop on the railroad tracks.  OR,
4.     Carol Duran failed to keep a lookout for an oncoming train from the west as she pulled up onto the tracks and came to a stop.  OR,

Page 2 of  11

5. Carol Duran failed to exercise ordinary care when she trespassed onto BNSF's railroad crossing and tracks when she knew or should have known there would be trains traveling at high speeds. OR,
6. Carol Duran failed to exercise ordinary care when she drove onto the railroad crossing, stopped, and then remained stopped on the tracks. OR,
7. Carol Duran failed to exercise ordinary care when she when she came to a stop on the crossing with her cab positioned over the rails, and remained there, and placed herself and Robert Valencia and BNSF and its crew in positions of danger. OR,
8. Carol Duran failed to exercise ordinary care when she drove onto the crossing and came to a stop, when she knew or should have known that she would be required to change gears in order to complete her passage over the crossing. OR,
9. Carol Duran failed to yield to the BNSF train before driving onto the crossing. OR,
10. Carol Duran failed to exercise ordinary care when she remained stopped on the tracks. OR,
11. Carol Duran failed to exercise ordinary care when she stopped on the railroad tracks and stayed there with her engine running and radios on, such that the noise would foreseeably interfere with her ability and Robert Valencia's to hear the horn and bell and other train noise from an oncoming train. OR,
12. Carol Duran failed to exercise ordinary care because she failed to keep a proper look out. OR,
13. Carol Duran failed to exercise ordinary care when she failed to lower her passenger's side tinted window so she could better hear the sound of an oncoming train, horn, and bell inside the cab of her truck and so that she more easily could visibly detect and observe an oncoming train from the west. OR,
14. Carol Duran failed to exercise ordinary care when she allowed Robert Valencia to distract her and talk to her and she remained stopped on the tracks. OR,
15. Carol Duran failed to exercise ordinary care when she engaged Robert Valencia in conversations from a position in the truck cab from which neither he nor she would be able to see or hear an oncoming train from the west. OR,
16. Carol Duran failed to exercise ordinary care for her own safety and that of Robert Valencia, BNSF, and BNSF's crew.

[Doc 781 at 29-30] This Court also instructed the jury that "Carol Duran was the owner-operator of her dump truck, transporting gravel products for Lafarge. Carol Duran was required to follow the Federal Motor Carrier Safety Act Regulations applicable to her. Lafarge is liable for any violation by Carol Duran of these Federal Regulations." [Doc 781 at 35]

In addition to these instructions, the jury was provided with a special verdict form. Question 3 on the special verdict form required the jury to consider the following question: "Was any negligence of Carol Duran a cause of damages claimed in this case?" [Doc 784 at 2] The jury answered this question, "Yes." [Id] The special verdict form further asked whether Duran was "acting as an agent of LaFarge at the time and place of the collision," whether Duran was "acting within the scope of that agency at the time and place of the collision," and whether Duran violated "any Federal Motor Carrier Safety Act Regulations applicable to her." [Doc 784 at 3] The jury answered all three of these questions, "Yes." [Id] The special verdict form also asked whether LaFarge was negligent and whether that negligence caused any of the damages claimed in the case. [Doc 784 at 4] The jury answered, "Yes." [Id]

> The final question on the special verdict form directed the jury to
>
> Compare the negligence of the following parties and find a percentage for each. The total percentage must equal 100%, but the percentage for any one or more of the parties named may be zero if you find that such party was not negligent or that any negligence on the part of any party was not a cause of damage.

[Doc 784 at 7] The jury assigned 25% of the fault to Duran and 75% of the fault to LaFarge. [Id] In its *Judgment*, this Court assessed the entire damages claim against LaFarge. [Doc 794 at 1-2]

Defendants filed a *Motion for a New Trial or in the Alternative, Motion for Relief from Judgement*. [Doc 795] The primary argument for requesting a new trial under Rule 59(E) or relief under Rule 60(a) is that it is "unclear from the special verdict if LaFarge's 75% was its vicarious liability for Duran, its independent liability for its own actions, or a combination of the two." [Doc 809 at 3] Defendants contend that this lack of clarity could have been resolved had this Court charged the jury with instructions reflecting LaFarge's theory that Duran was an independent contractor and provided a special verdict form to reflect this theory. [Id] In addition, Defendants

argue that if BNSF may not recover against LaFarge on an agency theory because it entered into a settlement agreement with Duran. [Doc 795 at 2]

BNSF argues that Duran's status as an independent contractor is irrelevant to the question of LaFarge's liability for Duran's actions that were contrary to federal law. [Doc 799 at 2] BNSF also maintains that its settlement with Duran did not release her from liability, and therefore the settlement did not prevent BNSF from recovering for Duran's negligence from LaFarge. [Doc 799 at 2] Finally, BNSF contends that the relief sought by Defendants is not available under Rule 60(a).

**II.    ANALYSIS**

**A.    Rule 59**

Rule 59(a) of the Federal Rules of Civil Procedure provides a "new trial may be granted to all or any of the parties on all or part of the issues . . . in an action in which there has been a trial by jury . . . ." In general, "courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or substantial justice has not been done. A new trial motion may raise errors of law arising out of the giving or refusal of jury instructions." Anthony v. Baker, 808 F. Supp. 1523, 1525 (D. Colo. 1992) (internal quotation marks and citation omitted). When a motion for a new trial is based on a challenge to jury instructions, the court considers the instructions given as a whole. Patty Precision Products Co. v. Brown & Sharpe Mfg. Co., 846 F.2d 1247 (10th Cir. 1988). "A new trial cannot be granted unless the error was prejudicial and affects the party's substantial rights." Henning v. Union Pacific R.R. Co., 530 F.3d 1206, 1217 (10th Cir. 2008).

Defendants make two claims. First, they contend that the special verdict form did not permit the jury to conclude that the collision was the result of the independent action of Duran for which LaFarge is not responsible. [Doc 809 at 2] Second, they argue that it is unclear from the

instructions and the special verdict whether the jury concluded that LaFarge was 75% negligent based on LaFarge's own negligence or on liability for Duran's actions. [Doc 809 at 3] With respect to the first argument, Instruction No. 26 provides sixteen factual bases for which the jury could have found Duran independently negligent. [Doc 781 at 29-30] The special verdict form then asked the jury whether the negligence of Duran caused the damages. [Doc 784 at 2] The next two special verdict questions ask whether Duran was an agent of LaFarge and if so, whether she acted within the scope of the agency. [Doc 784 at 3] Thus, the jury had an opportunity to conclude that Duran was negligent and that she was either not an agent of LaFarge or acted outside the scope of her agency.

The second claim is based on this Court's refusal to instruct the jury on LaFarge's independent contractor theory. Prior to trial, Defendants submitted identical jury instructions that stated

> An independent contractor is one who agrees to do certain work where the person who engages the contractor may direct the result to be accomplished but does not have the right to control the manner in which the details of work are to be performed. One who employs an independent contractor is not liable to others for the wrongful acts or omissions of the contractor.

[Doc 697 at 5; 765 at 5] This Court did not provide that instruction to the jury.

Whether Duran was an independent contractor did not affect whether LaFarge was liable for Duran's failure to abide by the Federal Motor Carrier Safety Regulations (FMCSR). According to the FMCSR, "[e]very motor carrier, its officers, agents, representatives, and employees responsible for the management, maintenance, operation, or driving of commercial motor vehicles, or the hiring, supervising, training, assigning, or dispatching of drivers, shall be instructed in and comply with the rules in this part." 49 C.F.R. § 392.1 The FMCSR define "employee" as

>any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle), a mechanic, and a freight handler.

49 C.F.R. § 390.5. The "rules in this part" include § 392.11, which requires that every commercial motor vehicle to "be driven at a rate of speed which will permit said commercial motor vehicle to be stopped before reaching the nearest rail of such crossing" and that such vehicles "not be driven upon or over such crossing until due caution has been taken to ascertain that the course is clear." Thus, whether Duran was an independent contractor or an employee, these regulations applied to her activities while she was "in the course of operating a commercial motor vehicle." 49 C.F.R. § 390.5.

Defendants contend that not all of Duran's actions subjected LaFarge to liability under the FMSCR. [Doc 809 at 2] They point out that Instruction No. 26 provided 16 bases for Duran's liability, some of which "had nothing to do with approaching the crossing." [Id] Instruction No. 26, however, directed the jury regarding Duran's negligence and not her obligations under FMSCR. Instruction No. 31 laid out the requirements under the FMSCR and explained that LaFarge would be liable for any violations of the FMSCR by Duran. The special verdict form is consistent with this instruction, and the jury specifically found that Duran violated the FMSCR. As a result, LaFarge is still liable for Duran's actions that the jury found were contrary to FMSCR, even if the jury also found Duran's other actions to be negligent according to Instruction No. 26.

It does not matter whether the 25% of fault that the jury attributed to Duran is based on FMSCR liability or on the simple negligence outlined by Instruction 26. In either instance, based on the findings of the jury, LaFarge is ultimately liable for Duran's actions regardless of her status as an independent contractor. As explained above, LaFarge is liable for Duran's violations of

FMSCR.  The jury also determined that Duran was negligent, that she was an agent of LaFarge, and that she was acting within the scope of agency at the time of the collision.  [Doc 784 at 3]  Had the jury answered "No" to the agency question, it would have achieved the same result as if it had answered "Yes" to an independent contractor question—LaFarge would not have been liable for Duran's non-FMSCR negligence.  Therefore, any error in failing to give an independent contractor instruction did not effect Defendants' substantial rights and does not require a new trial.  See Henning, 530 F.3d at 1217.

Defendants also argue that because Duran settled with BNSF, LaFarge—as a principal—cannot be held liable for the actions of Duran—an agent who has settled the claims.  [Doc 795 at 2]  BNSF points out that its settlement with Duran did not release Duran from liability, and as a result, LaFarge's liability as a principal is not extinguished by the settlement.  [Doc 799 at 6]  In their briefing, Defendants cite only to two New Mexico Uniform Jury Instructions to support their theory that once an agent and a claimant settle, "nothing remains for which the principal can be held vicariously liable."  [Doc 795 at 2]  Neither UJI 13-402 NMRA or UJI 13-404 NMRA address the effect of a settlement between an agent and a claimant on the principal's continuing liability.

BNSF cites Seeds v. Lucero, 2005-NMCA-067, 137 N.M. 589, 113 P.2d 859 and Juarez v. Nelson, 2003-NMCA-011, 133 N.M. 168, 61 P.3d 877 overruled on other grounds by Tomlinson v. George, 2005-NMSC-020, ¶ 18, 138 N.M. 34, 116 P.3d 105.  [Doc 799 at 9]  In Juarez, the New Mexico Court of Appeals explained that although "the exoneration of the servant operates in tort to exonerate the principal of vicarious liability," such exoneration "commonly is understood to mean acquittal of the employee or agent following a trial on the merits."  Juarez, 2003-NMCA-011, ¶ 28 (internal quotation marks and citation omitted); see also Seeds, 2005-NMCA-067, ¶ 21 (stating

that if a plaintiff can establish that one defendant conspired with another, the second defendant's actions can be imputed to the first defendant, even where the second defendant is shielded by immunity).  Neither of these cases addresses the present situation, where one defendant settled with the plaintiff but the terms of the settlement did not release that defendant from liability. Nevertheless, Juarez enunciates a "rule . . . of logic."  2003-NMCA-011, ¶ 28 (internal quotation marks and citation omitted).

> The rule underlying cases of this character is that the master is liable for the negligence of the servant on the ground that one who does a thing through another, his servant, does it himself and is responsible for the manner in which it is done. By using reason and common sense in applying this rule of law that, if the servant does the master's work in a negligent manner, the master is liable, we must also say that, if the servant did not do the work negligently, there is nothing for the master to be liable for. All that the master can do is to prove that the servant was not negligent, and, having proved that, as the jury finds, there is no negligence to be imputed to the master.

Id.  Defendants do not dispute that the settlement does not release Duran from liability until after the disposition of the entire litigation.  [Doc 799-2 at 3]  They further do not dispute that the settlement dismissed the claims against Duran without prejudice.  [Id]  They therefore cannot establish by means of the settlement that Duran was not negligent or that the settlement disposed of the claim against Duran on the merits.  See Farmer v. Perrill, 272 F.3d 958, 964 (20th Cir. 2001) (noting that dismissal without prejudice is not an adjudication on the merits).  Accordingly, the fact of the settlement does not release LaFarge as a principal from vicarious liability for Duran's actions that were within the scope of agency.

Defendants have failed to demonstrate error in the jury instructions, and further, they have failed to establish that any error that did exist affected their substantial rights.  See Henning, 530 F.3d at 1217.  As a result, Valencia and LaFarge have not stated grounds on which this Court must grant a new trial under Rule 59.

**B.**     **Rule 60(a)**

Rule 60(a) states that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Defendants also request, pursuant to Rule 60(a), that this Court reform the judgment "to reduce the amount of judgment at 25% to reflect the apportionment assessed to [] Duran and the settlement between Duran and BNSF. [Doc 795 at 3] First, this Court has already concluded that LaFarge is liable for the 25% percent of liability that the jury assessed against Duran. Second, this Court has concluded that the settlement did not release Duran from liability to BNSF.

Third, Rule 60(a) is designed to "correct what is erroneous because the thing spoken, written, or recorded is not what the person intended to speak, write, or record" and "may not be used to change something that was deliberately done even though it was later discovered to be wrong." McNickle v. Bankers Life & Cas. Co., 888 F.2d 678, 682 (10th Cir. 1989). The jury, by special verdict form, indicated that Duran was negligent and that her negligence could be attributed to LaFarge. The judgment reflects the jury's intentions by assessing the entire damages award against LaFarge. There is no justification for reforming the judgment under Rule 60(a) because the judgment was deliberately entered to realize the intent of the jury.

**III.**     **CONCLUSION**

Defendants have failed to establish that a new trial is necessary under Rule 59 or that the judgment should be reformed under Rule 60(a).

**IT IS THEREFORE ORDERED** that *Defendant's Request for New Trial Or, In The Alternative, Motion For Relief From Judgment*, [Doc 795] is **DENIED**.

**SO ORDERED** this 30th day of October, 2009, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge